Case 1:25-cv-04688-JPB   Document 2-2   Filed 08/19/25   Page 1 of 7

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

AUG 18 2025

KEVIN P. WEIMER, Clerk
By: Matthew H  Deputy Clerk

**EXHIBIT 1**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| MATTHEW THOMAS HARVEY ) | |
| ) | |
| Plaintiff, pro se ) | |
| ) | |
| vs. ) | Civil Action No.: **1:25-CV-4688** |
| ) | |
| CLAIRE M. HARVEY, ANGELA Z. ) | |
| BROWN, JASON D. MARBUTT; ) | |
| JEFFREY M. GORE, BRANDY J. ) | |
| DASWANI, KIM C. OPPENHEIMER, ) | |
| KESSLER & SOLOMIANY, LLC, ) | |
| STEFANIE S. POTTER, MOLLY Y. ) | |
| TEPLITZKY, GEORGIA DEPARTMENT ) | |
| OF HUMAN SERVICES, BRIAN P. ) | |
| KEMP, in his official Capacity as ) | |
| Governor of Georgia ) | |
| ) | |
| Defendants. ) | |

## AFFIDAVIT OF KAREN HARVEY AUSTIN

(Submitted as Exhibit 1 to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction)

I, **Karen Harvey Austin,** declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.  My name is Karen Harvey Austin. I am a medical doctor and have worked for the U.S. Department of Veterans Affairs for nearly two decades, treating many patients suffering from trauma, PTSD, and abuse. I am the mother of Matthew Harvey and the grandmother of his son, Wells.

1

2. I have been present by Matthew's side through every stage of this ordeal — every hearing, every court date, including the day he was pressured into a plea deal. I saw him cry and say he didn't want to take it, and I could tell the offer of removing his ankle monitor was being used as powerful leverage. The pressure in that room was undeniable, and I will never forget how it felt to watch him be cornered into an agreement he didn't want.

3. From the beginning, Matthew has always done his best to put Wells first. Even at his lowest points, his only concern was how to see and care for his son. I have seen him fight again and again to keep a strong, loving relationship with Wells while navigating a legal process that seemed determined to separate them and that clearly ignored their needs as individuals with protected disabilities.

4. The most painful part has been watching the very institutions that should have protected my son and grandson — the courts, the judges, and even Matthew's own attorneys at times — fail them at every turn. Instead of finding fairness or solutions, we encountered bias, neglect, and decisions made without proper evidence or due process.

5. Before all this, Wells and Matthew were inseparable. I watched Matthew feed him, bathe him, read him bedtime stories, sleep on the floor by his crib, and comfort him through the night. Their connection was strong and obvious. Wells looked for Matthew's presence in everything he did, running to him for reassurance and joy. It was the kind of bond that every parent hopes for with their

child, built on trust, affection, and the security of knowing his father would always be there for him.

6. After the court orders cut back Matthew's time, the change in Wells was immediate. He became anxious and upset during transitions. If Matthew left the room even briefly, Wells would go looking for him and cry until he returned. When Matthew had to return Wells to Claire, it always ended with Wells melting down in distress.

7. Once, when I watched Wells so Matthew could run an errand, Wells became so angry he began throwing objects — something I had never seen him do before. I recorded it and Matthew sent it to the court-appointed Guardian ad Litem, Brandy Daswani. Nothing came of it.

8. I also spoke directly with Ms. Daswani and told her what I had witnessed — the verbal and emotional abuse from Claire toward Matthew, the distress in Wells, and the strong bond between father and son. I read the emails Matthew sent her, pleading for help, and the dismissive replies he received. Like so many other officials involved, she failed to act when action was desperately needed.

9. While I did not witness any physical abuse by Claire toward Matthew prior to their divorce, I personally witnessed several instances of Claire verbally and emotionally abusing Matthew. I have also seen her allow Matthew to be in her home with her and Wells for extended periods after the divorce started, which made it clear to me she was never truly afraid of him. I do not believe Matthew ever

3

abused Claire. I do believe she has abused the legal process to cut Matthew and our family out of Wells' life, all for control and financial gain.

10.     Before this began, I saw Wells at least once a month, and after the divorce started, twice a month on Matthew's weekends. Since July 18, 2021, I have seen him maybe twice a year. I eventually stopped asking because I was tired of being told "no" with flimsy excuses — including Claire once citing Matthew's child support status as the reason I couldn't see my grandson.

11.     I have also spoken with Matthew's former therapist, who told me she never believed Matthew was a danger to himself or anyone else. I have personally witnessed the debilitating effects of Matthew's PTSD on his daily functioning, and I live with the constant fear of what the ongoing threats of incarceration and legal harassment are doing to his health and safety.

12.     I have read all three of Matthew's psychological evaluations conducted since 2022 and am aware of and agree with the diagnoses. I have also read the factual allegations in my son's complaint in this case. The facts and events described in it match my own observations and knowledge of what has happened to Matthew and to Wells.

13.     I know how much time and effort Matthew has spent trying to resolve this through every other avenue available, only to be met with more obstruction, more indifference, and more failures from the very system meant to deliver justice. I believe he truly has no other remedy left except to seek relief from this Court.

14. If this Court grants the relief Matthew seeks in his emergency Motion for Temporary Restraining Order and Preliminary Injunction, it will be a critical step toward reuniting a father and son and bringing an end to years of needless suffering for both of them. It will create the opportunity for Wells, in time, to grow up surrounded by the love and stability of his entire family, and it will give us the chance to finally have peace, equity, and justice after years of pain.

15. If nothing changes, I fear I have already lost my grandson, and I am deeply afraid of losing my son as well — whether to the unrelenting stress, the toll on his health, or the constant threat of wrongful incarceration. We cannot survive many more years of this.

I, Karen Harvey Austin, hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 12th day of August, 2025.

**Karen Harvey Austin**

Karen Harvey Austin
230 Stonecreek Drive
Franklin, North Carolina 28734
kaustinmd@yahoo.com
(706) 490-2501

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

This certificate pertains to a __6__ page document dealing with/entitled __Affidavit of Karen Harvey Austin__ and signed on __8-12-25__

### Jurat Certificate (Verification on Oath or Affirmation)

State of __NC__

County of __Macon__

Signed and sworn to (or affirmed) before me on __8-12-25__
                                                      Date

by __Karen Harvey Austin__,
   Printed name of individual making statement

who is __✓__ personally known

or ___ proved to me on the basis of satisfactory evidence to be the person who appeared before me.

__Robin L. Scott__
(signature of notary public)

Notary Public, State of __NC__

My commission expires: __5-9-28__

[Notary Seal: ROBIN L SCOTT, NOTARY PUBLIC, MACON COUNTY, NC, Commission Expires 05-09-28]

6

