## UNITED STATE DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| MATTHEW THOMAS HARVEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | FILE NO. 1:25-cv-04688 |
| | ) | |
| CLAIRE M. HARVEY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS ANGELA Z. BROWN, JASON D. MARBUTT, JEFFREY M. GORE, GEORGIA DEPARTMENT OF HUMAN SERVICES, AND BRIAN P. KEMP'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants Angela Z. Brown, Jason D. Marbutt, Jeffrey M. Gore, Georgia Department of Human Services ("DHS"), and Governor Brian P. Kemp (collectively, "State Defendants"), through counsel, submit this brief in support of their motion to dismiss for failure to state a claim and lack of subject matter jurisdiction under Rules 12(b)(1) and (6).

## I.    FACTUAL ALLEGATIONS

In this civil lawsuit, Plaintiff seeks redress against the State Defendants, among others, for judicial and prosecutorial decisions made during the course of state court proceedings regarding his divorce, child support obligations, and related matters, which he alleges amount to constitutional violations. Doc. 1, ¶¶ 1-2, 13-22. Plaintiff's ex-wife, Defendant Claire Harvey, filed for divorce on or about

November 3, 2020. *Id*. at ¶ 27. Defendant Judge Jason D. Marbutt presided over a portion of the divorce case and on July 20, 2021 held Plaintiff in contempt and ordered him incarcerated with the option to purge the contempt by voluntarily admitting himself into inpatient psychiatric treatment. *Id*. at ¶¶ 14, 44, 49-50. Following the contempt order, Plaintiff moved to have Judge Marbutt recused, and Plaintiff's motion was granted in December 2021. *Id*. at ¶ 60. However, the order granting Plaintiff's motion defended Judge Marbutt's conduct. *Id*.

Defendant Judge Angela Z. Brown was assigned to Plaintiff's divorce case following Judge Marbutt's recusal, and she presided over the trial in that case in April and May 2022. Doc. 1, ¶¶ 63, 67. During the trial, Judge Brown allegedly denied a motion in limine filed by Plaintiff, did not intervene in a line of inquiry conducted by counsel for Defendant Harvey, curtailed Plaintiff's testimony, and made other decisions regarding the admission of evidence, decisions Plaintiff now attacks. *Id*. at ¶¶ 67, 69-70. Additionally, Plaintiff alleges Judge Brown took a prosecutorial tone and misstated that name of Plaintiff's son. *Id*. at ¶¶ 70-71. Plaintiff alleges Judge Brown entered a Final Judgment and Decree of Divorce on June 22, 2022 that awarded custody of Plaintiff's son to Defendant Harvey, restricted Plaintiff to supervised visitation with his son, and imposed child support obligations on Plaintiff. *Id*. ¶¶ 73-74.

While his divorce case was pending, Plaintiff alleges he was arrested for a traffic offense and held on other outstanding felony warrants. Doc. 1, ¶ 56. The charges remained pending after Judge Brown entered her final judgment in the divorce case, and Plaintiff alleges he heard the prosecutor, Defendant Jeffrey M. Gore of the Cobb County District Attorney's Office, say he was considering revoking Plaintiff's bond because Plaintiff filed a motion for reconsideration in his divorce case. *Id.* at ¶¶ 15, 75-76. Plaintiff further alleges ADA Gore pursued "aggressive prosecution" to secure a plea deal Plaintiff agreed to in December 2022 to resolve the criminal charges. *Id* at ¶ 77. In January of 2023, Judge Brown denied Plaintiff's motion for reconsideration. *Id.* at ¶ 79.

In March of 2023, Plaintiff learned Defendant DHS initiated a civil contempt action against him to recover unpaid child support. Doc. 1, ¶ 80. Plaintiff received a notice from Defendant DHS in October 2024 regarding additional unpaid child support. *Id.* at ¶ 89.

Plaintiff alleges he submitted a notice to Defendant Governor Kemp in November of 2024 explaining his position that the orders, other judicial decisions, and prosecutorial actions discussed above amounted to constitutional violations. Doc. 1, ¶ 90. Plaintiff alleges no action was taken based on this notice. *Id.* Since then, Plaintiff has been subject to additional enforcement actions and contempt proceedings stemming from his failure to pay child support, including a default

contempt judgment for approximately $59,000 entered by Judge Brown. *Id*. at ¶¶ 91-96.

Based on these allegations, Plaintiff brings claims against some or all of the State Defendants in Counts II-XIV and XVI of the complaint citing various provisions of the United State Constitution, 42 U.S.C. §§ 1983, 1985, and 1986, the Americans with Disabilities Act, and the Georgia Constitution. Additionally, some of the counts, including Counts XI and XIII for negligence and fraud, could sound in state law tort. Plaintiff seeks declaratory and injunctive relief and monetary damages.

## II.    ARGUMENT AND CITATION OF AUTHORITY

Plaintiff's claims against the State Defendants should be dismissed on a number of grounds. Specifically, this Court lacks subject matter jurisdiction over Plaintiff's claims for declaratory and injunctive relief. Additionally, Plaintiff's claims are barred by Eleventh Amendment immunity and the text of section 1983, the *Younger* abstention doctrine, the Anti-Injunction Act, the *Rooker-Feldman* doctrine, absolute judicial and prosecutorial immunity, failure to state a claim, and the Georgia Tort Claims Act ("GTCA"). Each of these grounds for dismissal is discussed in turn below.

**A. The Court lacks subject matter jurisdiction to review Plaintiff's claims for declaratory or injunctive relief.**

Dismissal under Rule 12(b)(1) is appropriate whenever it appears that the court lacks jurisdiction over the subject matter of the suit. *See* Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of establishing that the court has subject matter jurisdiction. *See Dimaio v. Democratic National Committee*, 520 F.3d 1299, 1301 (11th Cir. 2008).

Standing is a threshold jurisdictional question. *Dimaio*, 520 F.3d at 1301. The essential elements of standing are injury in fact, causation, and redressability. *Sicar v. Chertoff*, 541 F.3d 1055, 1059 (11th Cir. 2008); *Elend v. Basham*, 471 F.3d 1199, 1205 (11th Cir. 2006). To establish "injury in fact" in the context of a claim for injunctive and declaratory relief the plaintiff must show a "real and immediate threat of future harm." *Elend*, 471 F.3d at 1207; *accord 31 Foster Children v. Bush*, 329 F.3d 1255, 1265 (11th Cir.), *cert. denied*, 540 U.S. 984 (2003). Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by continuing, present adverse effects. *See Elend*, 471 F.3d at 1207-1208.

Here, the claims against the State Defendants are comprised entirely of Plaintiff's grievances with past judicial and prosecutorial decisions that have occurred in the state court proceedings. There is no plausible allegation or suggestion of continuing or ongoing injury. Plaintiff's claims for declaratory and

injunctive relief fail for lack of subject matter jurisdiction because they do not satisfy the "injury in fact" element of standing.

**B. Eleventh amendment and sovereign immunity and the text of section 1983 bar claims against the State of Georgia, its offices, agencies, divisions, and departments, as well as official capacity claims against Governor Kemp.**

To the extent asserted, all claims against the State of Georgia and its offices, agencies, divisions, and departments and Governor Kemp, who Plaintiff states in his complaint is being sued in his official capacity, are barred by the Eleventh Amendment and the doctrine of sovereign immunity. Such claims also are barred by the text of sections 1983.

First, the Federal Constitution "specifically recognizes the States as sovereign entities," a basic attribute of which is immunity from private suits. *Alden v. Maine*, 527 U.S. 706, 713 (1999). The Eleventh Amendment bars suit against a state or its agencies, departments or officials, absent a waiver by the state or a valid congressional override,[1] when the state is the real party in interest or when monetary recovery would be paid from state funds. *See id.* at 754-57; *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100-101 (1984). "The general test for determining whether the state is

---

[1] There is no waiver or congressional override. The State of Georgia has not consented to being sued under section 1983 and instead has preserved its sovereign immunity in the State constitution. *See* Ga. Const. Art. 1, Sec. II, Par. IX(f). And, the Supreme Court has held that section 1983 does not override the protections of the Eleventh Amendment. *See Quern v. Jordan*, 440 U.S. 332, 342 (1979).

the real party in interest, even though it is not a named defendant, is whether the relief sought against the nominal defendant would in fact operate against the state . . ." *Jackson v. Georgia Dep't of Transp.*, 16 F.3d 1573, 1577 (11th Cir. 1994) (citation omitted). Any monetary relief sought from Defendants in their official capacity would operate against the state, and so any such claims are barred by the Eleventh Amendment and sovereign immunity. *See Zatler v. Wainwright*, 802 F.2d 397, 399-400 (11th Cir. 1986).

Plaintiff's claims for injunctive relief and his official capacity claim against Governor Kemp also are barred. While the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908), provides a limited exception to sovereign immunity for certain suits against individual state officer defendants, it does not apply here. "The Young doctrine permits federal courts to entertain suits against state officers seeking prospective equitable relief to end continuing violations of federal law." *See McClendon v. Ga. Dep't. of Community Health*, 261 F.3d 1252, 1256 (11th Cir. 2001). The doctrine applies only where prospective injunctive relief is sought, whereas here the complaint seeks monetary, declaratory, and injunctive relief to remedy past judicial and prosecutorial decisions Plaintiff alleges were violations of his constitutional rights. The doctrine also does not allow claims against the State.

*Second*, the State of Georgia and its offices, agencies, divisions, and departments, and Governor Kemp in his official capacity, are not "persons" subject

to suit under section 1983. Section 1983 provides a cause of action for violations of federal constitutional or statutory rights by any "person" acting under color of state law. 42 U.S.C. § 1983. The Supreme Court has ruled that the term "person" in this context is to be given its ordinary meaning, and that "a State is not a 'person' within the meaning of § 1983." *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 65 (1989). And the Court has explained that the term "state" includes individual state officers who are sued in their official capacity. *Id.* at 70-71. Thus, Plaintiff's claims addressed in this section also are not cognizable claims and should be dismissed on this additional basis.

**C. The *Younger* abstention doctrine, Anti-Injunction Act, and the *Rooker-Feldman* doctrine prohibit this Court from interfering with any ongoing state proceedings.**

To the extent Plaintiff seeks, as relief in this case, this Court's interference with any ongoing state proceedings, his claims are barred by the *Younger* abstention doctrine and the Anti-Injunction Act. To the extent Plaintiff seeks relief from a final order, his claims are barred by the *Rooker-Feldman* doctrine.

Initially, this case involves one of the three "extraordinary circumstances" delineated by the United States Supreme Court as an appropriate case for *Younger* abstention. *See Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584 (2013); *and see also Dandar v. Church of Scientology Flag Serv. Org.*, 2015 U.S. App. LEXIS 13956, \*\*5 (11th Cir. Aug. 10, 2015). *Younger* abstention is appropriate when

there is: (1) a parallel and pending state criminal proceeding; (2) a state civil enforcement proceeding; or (3) a state civil proceeding involving an order that is 'uniquely in furtherance of the state courts' ability to perform their judicial functions. *See id.* This case plainly meets the third category because orders, rulings, and decisions in state court proceedings involving divorce, parental rights, child custody, child visitation, and/or child support are functions and matters that are uniquely within the province of the state courts.

"In *Younger v. Harris*, the Supreme Court held that absent extraordinary circumstances, federal courts should abstain from interfering with ongoing state proceedings." *Adams v. Georgia*, 2008 U.S. Dist. LEXIS 125136, *7-8 (N.D. Ga. June 30, 2008) (Duffey, J.) (citing *Younger v. Harris*, 401 U.S. 37 (1971)). "*Younger* abstention applies if (i) there are pending state proceedings at the time of the federal action, (ii) the state proceedings implicate important state interests, and (iii) the state proceedings provide an adequate opportunity to raise federal constitutional questions." *Id. Younger* applies to both criminal and civil proceedings. *See id.*; *see also Middlesex County Ethics Comm'n v. Garden State Bar Ass'n,* 457 U.S. 423, 432 (1982). Applying the three-part test in *Adams*, this Court squarely held that *Younger* prohibits its interference with an ongoing state divorce and child custody proceeding. *See id.*, *9-10. The same is true here.

Plaintiff's claims for injunctive relief also are barred by the Anti-Injunction Act. "Federal courts may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." *Jones v. Warren*, 2012 U.S. Dist. LEXIS 67029, *7 (N.D. Ga. Apr. 23, 2012) (Walker, M.J.) (citing 28 U.S.C. § 2283). In *Jones*, this Court squarely held that "[t]he Anti-Injunction Act bars the Court from enjoining further proceedings in [the plaintiff's] state divorce action." *Id.*, *8. The Court noted, among other factors, that "[n]o federal statute expressly authorizes this Court to enjoin the divorce action, and the Court notes that an injunction is not necessary in aid of this Court's jurisdiction or to protect or effectuate its judgments. The Court has not entered any judgments regarding Petitioner or his claims." *Id.* These same considerations are fully applicable in this case. Accordingly, the Anti-Injunction Act also bars Plaintiff's claims to the extent that the relief sought is to stay or enjoin or otherwise interfere with ongoing proceedings.

Finally, if by this action Plaintiff seeks relief from a final order in the state proceedings, then this action is dismissed under Rule 12(b)(1) because this court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine. Plaintiff's complaint apparently seeks relief from this Court regarding alleged constitutional violations regarding, among other things, the Final Judgment and Decree of his

divorce, which also adjudicated custody of his child and child support obligations, a criminal sentence imposed after he entered a plea in a criminal matter, a judgment for attorney's fees, and a default judgment in a contempt motion based on Plaintiff's failure to pay the attorney's fees. Doc. 1, ¶¶ 73-74, 77-78, 81, 86-88. The *Rooker-Feldman* doctrine recognizes that "appellate jurisdiction to reverse or modify a state-court judgment is lodged ... exclusively" in the Supreme Court. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 283 (2005); *see generally Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia v. Feldman*, 460 U.S. 462 (1983). Applying the *Rooker-Feldman* doctrine in *Staley v. Ledbetter*, 837 F.2d 1016 (11th Cir. 1988), the Eleventh Circuit held that the Federal district court "lacked jurisdiction to hear a section 1983 claim that in essence sought to reverse a state court's child custody determination." *Id.* at 1018.

Although it has been limited in its application, the *Rooker-Feldman* doctrine plainly bars a party in state court "from seeking what in substance would be appellate review of the state judgment ... based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Exxon Mobil Corp.*, 544 U.S. at 287 (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-1006 (1994)). In essence, the doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those

judgments." *Nicholson v. State*, 558 F.3d 1266, 1268 (11th Cir. 2009) (quoting

*Exxon Mobile Corp.*, 544 U.S. at 284).

Under the above authorities, issues regarding the propriety of any state court

order and judgment can and should be raised in the state court proceeding, not in

this collateral federal action. Raising these claims now is improper under *Rooker-*

*Feldman*, and dismissal of the claims against the State Defendants is proper on this

additional or alternative basis.

## D. Defendants Brown and Marbutt are entitled to absolute judicial immunity.

Plaintiff bases his claims against Judges Brown and Marbutt on orders and

rulings they made in the course of state proceedings. Accordingly, all of Plaintiff's

claims against them fail under the doctrine of judicial immunity. "Judges are

entitled to absolute judicial immunity from damages for those acts taken while they

are acting in their judicial capacity unless they acted in the clear absence of all

jurisdiction." *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) (internal

quotations omitted) (citing *Stump v. Sparkman*, 435 U.S. 349, 356-357 (1978)).

"This immunity applies even when the judge's acts are in error, malicious, or were

in excess of his or her jurisdiction," *id.* (citing *Stump*, 435 U.S. at 356), and also

even when it is alleged that she conspired with others to bring about a deprivation

of rights. *See Cox v. Mills*, 2012 U.S. App. LEXIS 6579, **3 (11th Cir. April 2,

2012).

In this case, both of the prerequisites for the application of absolute judicial immunity are satisfied. First, the acts challenged are "functions normally performed by a judge," and in connection with those acts Plaintiff "dealt with [Judges Brown and Marbutt] in [their] judicial capacity." *Stump*, 435 U.S. at 361. Indeed, Plaintiff asks this Court to enjoin enforcement of state court orders and judgments and to declare specific acts, rulings, and judicial determinations void. Doc. 1, ¶ 4. Specifically, Plaintiff complains about decisions Judge Marbutt made regarding Plaintiff's testimony in court and a contempt order Judge Marbutt issued. Doc. 1, ¶¶ 47, 49-50. Likewise, Plaintiff attacks Judge Brown for decisions she made regarding testimony in court, statements she made during the course of Plaintiff's divorce trial, and the Final Judgment and Decree of Divorce she entered following the trial. Doc. 1, ¶¶ 69-73, 79. Thus, this case concerns acts taken in a judicial capacity. *See Sibley v. Lando*, 437 F.3d 1067, 1071 (11th Cir. 2005). Second, Judges Brown and Marbutt did not act "in the clear absence of all jurisdiction" because the Superior Courts in Georgia are courts of general jurisdiction, which includes jurisdiction over matters such as divorce, parental rights, child custody, and child visitation. *See* Ga. Const. Art. VI, Sec. I, Par. I; *see also* O.C.G.A. § 15-6-8; and *see Barfield v. Butterworth*, 323 Ga. App. 156, 158 (2013).

As to any claims for injunctive relief, under *Pulliam v. Allen*, 466 U.S. 522 (1984), a state judge does not have absolute immunity from claims for injunctive relief in a section 1983 action. *Id.* at 536. But the reach of *Pulliam* is limited by the amended language of section 1983. As amended after *Pulliam*, section 1983 now forecloses injunctive relief for "judicial" acts. *See* 42 U.S.C. § 1983 (stating "injunctive relief" is not available "for an act or omission taken in such officer's judicial capacity ….."). This case seeks to overturn state trial court orders and decisions which are clearly judicial acts. The statute squarely forecloses such relief.[2]

## E. Plaintiff's claims against Defendant Gore are barred by the doctrine of absolute prosecutorial immunity.

Plaintiff's complaint reflects that Defendant Gore is sued in his capacity as an assistant district attorney. Doc. 1, ¶ 15, 76-77. A prosecutor enjoys absolute immunity for functions that are intimately associated with the judicial phase of the criminal process, and also for acts performed pursuant to his or her prosecutorial functions. *See Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Prosecutorial immunity does not merely extend to the act of initiating a prosecution and to conduct occurring in the court

---

[2] By its terms section 1983 would allow injunctive relief only if "a declaratory decree was violated or declaratory relief was unavailable" and there is no such allegation here.

room; it applies to any actions "which occur in the course of [the prosecutor's] role as an advocate for the State." *Buckley*, 509 U.S. at 272-73; *see also Hart v. Hodges*, 587 F.3d 1288, 1295 (11th Cir. 2009) (stating, "our circuit has emphasized that, 'a prosecutor enjoys absolute immunity from allegations stemming from the prosecutor's function as an advocate") (quoting *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999)). This immunity leaves even "the genuinely wronged" without civil redress against a prosecutor. *Imbler*, 424 U.S. at 427.

Plaintiff is suing Defendant Gore for fulfilling his role as a prosecutor, and so his claims against Defendant Gore are plainly barred and must be dismissed.

## F.  Plaintiff fails to state a claim against Governor Kemp.

In Count XI of the complaint, Plaintiff attempts to plead his sole claim against Governor Kemp, which he brings under 42 U.S.C. § 1986, but his claim fails. Section 1986 provides a cause of action for damages against "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed." 42 U.S.C. § 1986.

The complaint fails to allege any facts that would associate Governor Kemp with any asserted constitutional violation or any conspiracy mentioned in section 1985, and so it fails to state a claim against him.

**G. Any tort claims against the State Defendants are barred by the GTCA.**

Any tort claims brought against a state government entity are subject to the terms of the GTCA. While Plaintiff does not specifically reference the GTCA in his complaint, several of his claims, including in Counts XI and XIII, could be read to sound in tort. Therefore, to the extent Plaintiff alleges any tort claims against the State Defendants, they are governed by the GTCA's terms and conditions, which bar those claims. Specifically, Plaintiff has not complied with the GTCA's mandatory ante litem notice, service of process, and mailing requirements. Additionally, Defendants Brown, Marbutt, Gore, and Kemp are immune from suit in tort.[3] These issues are discussed in turn below, but first, it is helpful to discuss sovereign immunity and the GTCA in more detail.

i.  *Background to the GTCA and Sovereign Immunity.*

The Georgia Constitution expressly preserves the State's sovereign immunity and makes clear that such immunity "can only be waived by an Act of the General

---

[3] If this case proceeds following resolution of this motion, the State Defendants reserve the right to file an additional motion under the GTCA raising defenses including, but not limited to, exceptions to the state's limited waiver of sovereign immunity under O.C.G.A. § 50-21-24.

Assembly which specifically provides that sovereign immunity is waived and the extent of such waiver." Ga. Const. of 1983, Art. I, § II, ¶ IX(e). The General Assembly passed the GTCA in 1992. O.C.G.A. § 50-21-20, et seq.  *See Datz v. Brinson*, 208 Ga. App. 455, 455-56 (1993). By its own terms, the GTCA "constitutes the exclusive remedy for any tort committed by a state officer or employee." O.C.G.A. § 50-21-25(a). In passing the GTCA, the General Assembly recognized the "inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity." O.C.G.A. § 50-21-21(a). It also recognized that due to the unique nature of government, "[t]he exposure of the state treasury to tort liability must therefore be limited." O.C.G.A. § 50-21-21(a). Thus, the General Assembly declared as a matter of public policy that "the state shall only be liable in tort actions within the limitations of this article and in accordance with the fair and uniform principles established in this article." O.C.G.A. § 50-21-21(a). Georgia courts have repeatedly said that the GTCA must be strictly construed. *Ga. Ports Auth. v. Harris*, 274 Ga. 146, 150 (2) (2001); *see also*, *Dempsey v. Bd. of Regents of the Univ. Sys.*, 256 Ga. App. 291, 293 (2002).

In the State of Georgia, "sovereign immunity has constitutional status and cannot be abrogated by the judiciary." *Dollar v. Dalton Public Schools*, 233 Ga. App. 827, 830 (1998). Moreover, as held by the Georgia Supreme Court, "[a]

waiver of sovereign immunity is a mere privilege, not a right, and the extension of that privilege is solely a matter of legislative grace. [cit]." *Riddle v. Ashe*, 269 Ga. 65, 67 (1998), citing *Woodard v. Laurens County*, 265 Ga. 404, 406 (1995).

Sovereign immunity is a threshold issue. *McConnell v. Dep't of Labor*, 302 Ga. 18, 18-19 (2017); *Murray v. Dept. of Transp.*, 240 Ga. App. 285 (1999). Jurisdiction of a court to afford the relief sought, i.e. subject matter jurisdiction, is a matter that should be decided preliminarily. *See McConnell*, 302 Ga. at 19; *Rivera v. Washington*, 298 Ga. 770, 776-78 (2016). Questions of waiver of sovereign immunity are, therefore, appropriately considered in the context of a motion to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b). Sovereign immunity is not an affirmative defense. The party seeking to benefit from the waiver of sovereign immunity, i.e., the Plaintiff, bears the burden of proving the existence of a waiver of sovereign immunity for the claims presented by that party. *Sherin v. Department of Human Resources*, 229 Ga. App. 621, 625 (1997).

ii. *Plaintiff has not complied with the GTCA's ante litem notice requirements.*

Plaintiff did not comply with the GTCA's ante litem notice requirements, and so any tort claims alleged against the State Defendants are barred. Prior to filing a tort action against a state government entity, the GTCA requires a claimant to provide the Risk Management Division of DOAS with an ante litem notice of

claim within 12 months of the date the loss was discovered or should have been

discovered, and to send a copy of this notice to the appropriate state government

entity. Specifically, the statute provides:

> (a)  No person having a tort claim against the state under this article shall bring any action against the state upon such claim without first giving notice of the claim as follows:

> (1)  Notice of a claim shall be given in writing within 12 months of the date the loss was discovered or should have been discovered . . .;

> (2)  Notice of a claim shall be given in writing and shall be mailed by *certified mail or statutory overnight delivery, return receipt requested*, or delivered personally to and a receipt obtained from the Risk Management Division of the Department of Administrative Services. In addition, a copy shall be delivered personally to or mailed by first class mail to the state government entity, the act or omissions of which are asserted as the basis of the claim.

O.C.G.A. § 50-21-26(a)(1) and (2)(emphasis added).

O.C.G.A. § 50-21-26(a)(3) further provides that "[n]o action against the

state under this article shall be commenced and courts shall have no jurisdiction

thereof unless and until a written notice of claim has been timely presented to the

state as provided in this subsection."

Courts have repeatedly dismissed claims for lack of jurisdiction when the

plaintiff has failed to comply with the ante litem notice requirements. *See e.g.,*

*Howard v. Georgia*, 226 Ga. App. 543, 544-45 (1997) ("Failure to comply with

this ante litem notice provision prevents any court from obtaining jurisdiction over

the subject matter of the action."). *See also Johnson v. E.A. Mann & Co.*, 273 Ga.

App. 716, 722 (2005); *Shelnutt v. Ga. Dep't. of Transp.*, 272 Ga. App. 109 (2005)

(both dismissing claims for lack of subject matter jurisdiction when plaintiff failed

to comply with ante litem notice provisions).

In order to demonstrate that a plaintiff has complied with the ante litem

notice requirements, the GTCA requires a plaintiff to attach a copy of the notice

and a receipt for its delivery to DOAS as exhibits to the complaint:

> Any complaint filed pursuant to this article must have a copy of the
> notice of claim presented to the Department of Administrative
> Services together with the certified mail or statutory overnight
> *delivery receipt or receipt for other delivery* attached as exhibits. If
> failure to attach such exhibits to the complaint is not cured within 30
> days after the state raises such issue by motion, then the complaint
> shall be dismissed without prejudice.

O.G.C.A. § 50-21-26(a)(4)(emphasis added).

Here, Plaintiff has not shown that he presented an ante litem notice of his

tort claims to the state as required by the GTCA, and he did not attach to his

complaint copies of an ante litem notice and a receipt evidencing its delivery to the

Risk Management Division of the DOAS. If Plaintiff does not cure these

deficiencies within 30 days of the date of this motion, any tort claims against the

State Defendants will be barred and should be dismissed. If Plaintiff timely amends

his complaint to attach the aforementioned ante litem notice exhibits, the State

Defendants will then file a supplemental or reply brief, as necessary, discussing

whether the additional exhibits demonstrate strict compliance with the GTCA's ante litem notice requirements.

iii. *Plaintiff has not complied with O.C.G.A. § 50-21-35.*

Plaintiff has not served the state with process according to the express terms of the GTCA. Thus, Plaintiff has not established a waiver of sovereign immunity, and so any tort claims against Defendant DHS are barred.

The service provisions for tort actions brought against state government entities are set forth in the GTCA at O.C.G.A. § 50-21-35. Two of the required statutory components are that claimants must "cause process to be served upon the chief executive officer of the state government entity involved" and "cause process to be served upon the director of the Risk Management Division of the Department of Administrative Services." *See* O.C.G.A. § 50-21-35.

Another requirement is that the claimant must mail a copy of the complaint, showing its filing date, to the Attorney General in a specified manner, and attach to the complaint a certificate that this requirement has been met. *See* O.C.G.A. § 50-21-35. The Supreme Court has confirmed that the requirement for mailing the complaint to the Attorney General is mandatory ("The statute demands that a copy of the complaint be sent to the Attorney General as soon after filing as possible"), though the Court allowed that in some circumstances this requirement may be

accomplished by amendment. *See Camp v. Coweta County*, 280 Ga. 199, 203-204 (2006).

Georgia courts have repeatedly dismissed cases, like this one, when a plaintiff has failed to properly effect service of process upon the State Defendant. *See e.g.*, *Green v. Central State Hospital*, 275 Ga. App. 569, 571 (2005) (affirming dismissal of tort claim against the Department of Corrections based on failure to serve the RMD Director of DOAS, noting that "'[t]he procedural strictures of the [GTCA], like its other terms, are strictly construed'"); *Sylvester v. Georgia Department of Transportation*, 252 Ga. App. 31, 32-33 (2001) (affirming dismissal of re-filed tort action where plaintiff had failed in prior action to serve process upon the director of RMD of DOAS); *Henderson v. Department of Transportation*, 267 Ga. 90, 90-91 (1996) (trial court's dismissal of action affirmed where there was no service of process on the RMD Director of DOAS and no mailing of the complaint to the Attorney General).

Here, Plaintiff has not served the RMD Director of DOAS or Defendant DHS, as evidenced by the lack of an affidavit of service filed in this case. Additionally, Plaintiff did not mail a copy of the complaint showing its filing date to the Attorney General in a statutorily authorized manner, and he did not attach a certificate showing the same to his complaint. For each of these reasons, Plaintiff has not established a waiver of sovereign immunity, and this Court lacks subject

matter jurisdiction over any tort claims against DHS. Therefore, Plaintiff's claims against DHS are barred and should be dismissed to the extent they are tort claims.

iv. *Defendants Brown, Marbutt, Gore, and Kemp are immune from liability in tort.*

Plaintiff's allegations make clear that Judges Brown and Marbutt, ADA Gore, and Governor Kemp were acting within the scope of their employment or official duties with the state at the time of the actions that form the basis of Plaintiff's lawsuit. Accordingly, they are immune from suit in tort. The GTCA states that "[a] state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor." O.C.G.A. § 50-21-25(a). The GTCA mandates that a plaintiff "name as a party defendant *only* the state government entity for which the state officer or employee was acting and *shall not name the state officer or employee individually*." O.G.C.A. § 50-21-25(b)(emphasis added). The phrase "state officer or employee" includes "an officer or employee of the state, elected or appointed officials, law enforcement officers, and persons acting on behalf or in service of the state in any official capacity, whether with or without compensation." O.C.G.A. § 50-21-22(7).

The Georgia Supreme Court and the Court of Appeals have consistently invoked O.C.G.A. § 50-21-25(a) to dismiss cases when state officers or employees are sued individually for torts occurring within the scope of their employment. In

*Riddle v. Ashe*, 269 Ga. 65, 66 (1998), for example, the Georgia Supreme Court specifically upheld the constitutionality of O.C.G.A. § 50-21-25(a) and enforced its terms. The plaintiff in *Riddle* was injured when his car collided with a Department of Transportation ("DOT") vehicle driven by a DOT employee while in the scope of his employment. *Riddle*, 269 Ga. at 65. Riddle, the individual defendant, moved to dismiss the complaint on the basis that, as a state employee acting within the scope of his employment, suit against him was barred by O.C.G.A. § 50-21-25(a). *Id*. The trial court declared the GTCA's employee immunity provision to be unconstitutional and denied the employee's motion to dismiss. *Id*. The Georgia Supreme Court found the employee immunity provision to be constitutional, reversed the trial court, and held that the defendant state employee's motion to dismiss should have been granted. *Riddle*, 269 Ga. at 65-67.

In its ruling, the Court noted that the General Assembly had specifically stated that its legislative policy underlying § 50-21-25(a) was to insure "proper functioning of state government" by allowing state employees to "be free to act and to make decisions" without fear of being sued.

> The proper functioning of state government requires that state officers and employees be free to act and to make decisions, in good faith, without fear of exposing themselves to lawsuits and without fear of the loss of their personal assets. Consequently, it is declared to be the public policy of this state that state officers and employees shall not be subject to lawsuit or liability arising from the performance or nonperformance of their official duties or functions.

*Riddle*, 269 Ga. at 66, quoting O.G.C.A. § 50-21-21(b).

Plaintiff seeks to recover against Judges Brown and Marbutt for decisions and orders they made while presiding over his divorce case and against ADA Gore for actions he took while prosecuting Plaintiff in a criminal matter. Plaintiff explicitly sues Governor Kemp in his official capacity. Clearly, then, these Defendants were acting within the scope of the employment or official duties with the state at all times relevant to the complaint. Consequently, any tort claims alleged against them are barred and should be dismissed.

### III.   CONCLUSION

For the foregoing reasons, these Defendants respectfully request that this Court grant their motion and dismiss Plaintiff's claims against them.

Respectfully submitted,

| | | |
|---|---|---|
| | CHRISTOPHER M. CARR<br>Attorney General | 112505 |
| | LORETTA L. PINKSTON-POPE<br>Deputy Attorney General | 580385 |
| PLEASE ADDRESS ALL<br>COMMUNICATIONS TO: | KATHLEEN S. TURNIPSEED<br>Senior Assistant Attorney General | 940900 |
| WILLIAM TOMLIN<br>Georgia Department of Law | ROGER A. CHALMERS<br>Senior Assistant Attorney General | 118720 |
| 40 Capitol Square, SW<br>Atlanta, Georgia 30334-1300<br>Telephone: (404) 458-3439<br>wtomlin@law.ga.gov | */s/ William Tomlin*<br>WILLIAM L. TOMLIN<br>Assistant Attorney General | 223213 |

## <u>CERTIFICATION AS TO FONT</u>

Pursuant to Local Rule 7.1D, I hereby certify that this motion is submitted in

Times New Roman 14-point type as required by Local Rule 5.1(C).

<u>*/s/ William Tomlin*</u>
William L. Tomlin
Georgia Bar No. 223213

## **<u>CERTIFICATE OF SERVICE</u>**

I do hereby certify that I have this day served the within and foregoing

DEFENDANTS ANGELA Z. BROWN, JASON D. MARBUTT, JEFFREY M.

GORE, GEORGIA DEPARTMENT OF HUMAN SERVICES, AND BRIAN P.

KEMP'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS, with the

Clerk of Court using the CM/ECF system, which will automatically send email

notification to all counsel of record.

This 18th day of November, 2025.

*/s/ William Tomlin*
William L. Tomlin
Georgia Bar No. 223213
