FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JAN 05 2026

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

MATTHEW THOMAS HARVEY,  )
                        )
        Plaintiff,      )          CIVIL ACTION NO.
                        )          1:25-cv-04688-JPB
    v.                  )
                        )
CLAIRE M. HARVEY, et al.,   )
                        )
        Defendants.     )

## PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW Matthew Thomas Harvey, pro se, and, as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1), files this First Amended Complaint against Defendants, showing the Court as follows:

### I. NATURE OF THE ACTION

1.    This is an action at law and in equity brought under 42 U.S.C. § 1983 seeking damages and narrowly tailored prospective relief for a continuous course of unconstitutional conduct that began at the inception of the underlying proceedings and continues to the present day.

2.    Plaintiff does not seek appellate review of any state-court judgment, does not ask this Court to vacate, modify, supervise, or

1

enforce any domestic-relations order, and does not request a custody determination.

3.      Instead, Plaintiff challenges independent, non-judicial conduct and enforcement practices by Defendants that violated rights protected by the Constitution for the United States of America ("U.S. Constitution"), including retaliatory and coercive use of contempt, attorney-fee enforcement, default, and criminal process, denial of access to the courts, and deprivation of liberty and familial association without constitutionally required notice, hearing, findings, or adjudication.

4.      Plaintiff challenges Defendants' conduct, not the correctness of any state-court judgment as such. The relief sought is directed at Defendants' future conduct and compliance with federal constitutional requirements, not at domestic-relations adjudication.

5.      Plaintiff alleges an ongoing course of conduct that includes both historical acts and continuing post-judgment enforcement and retaliation, resulting in present and ongoing federal injury. Plaintiff seeks relief for injuries arising within the limitations period, as well as those subject to equitable tolling and continuing-violation principles supported by the facts alleged herein.

## II. JURISDICTION AND VENUE

6.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States of America, including 42 U.S.C. § 1983.

7.    Declaratory relief is authorized by 28 U.S.C. §§ 2201–2202.

8.    Venue is proper in this District under 28 U.S.C. § 1391 because the events giving rise to these claims occurred within this District and Defendants reside or transact business here.

## III. PARTIES

9.    Plaintiff Matthew Thomas Harvey is a natural person, native Californian, citizen of Georgia, and the natural father of the minor child, W.H.

10.    Defendant Claire M. Harvey ("Claire") is a natural person, former spouse of Plaintiff, mother of W.H., and private individual who acted in concert with her counsel and state actors to invoke coercive enforcement mechanisms against Plaintiff.

11.    Defendant Molly Y. Teplitzky ("Teplitzky") is an attorney who, at all relevant times, acted individually and through her law firm in directing and coordinating enforcement actions at issue.

12.    Defendant Stefanie S. Potter ("Potter") is an attorney who acted individually and in concert with other Defendants to pursue coercive and retaliatory enforcement measures.

13.    Defendant Kessler & Solomiany, LLC ("K&S") is a law firm that employed and supervised Teplitzky and Potter and participated in the joint conduct alleged herein.

14.    Defendant Brandy J. Daswani ("Daswani") is a court-appointed Guardian ad Litem who exercised state-delegated authority in connection with the matters described.

15.    Defendant Kim C. Oppenheimer ("Oppenheimer") is a psychologist who jointly participated with private and state actors in processes resulting in liberty and familial deprivations.

## IV. FACTUAL ALLEGATIONS

16.    On or about October 29, 2020, Plaintiff proposed a trial separation to Defendant Claire for the third time in the span of roughly one year due to ongoing marital conflict and conduct by Claire that Plaintiff reasonably perceived as harmful and unsafe to himself and the minor child, W.H. Plaintiff remained in the marital home in a separate bedroom and continued to serve as an active caregiver to W.H. prior to the initiation of any divorce proceedings.

4

17.    On or about November 2, 2020, Defendant Claire, acting in consultation with her counsel, Defendant Potter, selected and pursued a litigation strategy designed to obtain immediate leverage in anticipated custody and divorce proceedings through emergency and ex parte mechanisms rather than ordinary adversarial process. This strategy included the planned use of protective-order procedures and related enforcement tools to secure Plaintiff's removal from the home and separation from the minor child prior to any adjudication on the merits.

18.    Later that same evening, following a non-violent event during which Claire disclosed she was filing for divorce and threatened to take and keep the minor child away from Plaintiff, officers from the Marietta Police Department responded to the marital home. No arrest was made, no criminal charges were filed, Claire initially made no allegations of physical harm, and responding officers did not determine that any emergency or imminent danger existed.

19.    Although responding officers declined to remove Plaintiff from the marital home and identified no emergency or imminent danger, they nevertheless permitted Defendant Claire to leave with W.H., despite the absence of any custody order, judicial finding, or legal authority authorizing such removal.

5

20.     On or about November 3, 2020, Claire sought and obtained an ex

parte Temporary Protective Order ("TPO") from the Cobb County

Superior Court, based solely on her sworn affidavit. Plaintiff alleges

that the affidavit contained materially false or misleading statements

inconsistent with contemporaneous police observations and prior

statements.

21.     The ex parte TPO was issued without notice to Plaintiff and

without any adversarial hearing, resulting in Plaintiff's immediate

removal from the marital home and forced separation from his minor

child without any judicial finding of unfitness, danger, or necessity.

22.     In mid-November 2020, Plaintiff was coerced into signing a

Temporary Consent Order ("TCO") under threat of prolonged

deprivation of parenting time. The TCO was presented without any

evidentiary hearing, without findings of fact, and without meaningful

opportunity for Plaintiff to contest its basis. Plaintiff signed under

extreme duress and without an intentional relinquishment of his

constitutionally protected rights.

23.     Upon execution of the TCO, the previously issued ex parte TPO

was dismissed. The TCO thereafter functioned as a substitute

restraint, continuing to restrict Plaintiff's liberty and parental rights

without adjudication of the underlying allegations.

24.    From the outset of enforcement under the TCO, Defendants treated Plaintiff as presumptively able to comply with all imposed financial and behavioral obligations, notwithstanding Plaintiff's lack of a meaningful opportunity to challenge the basis, feasibility, or proportionality of those obligations.

25.    On or about December 5, 2020, Plaintiff lawfully recorded a conversation with Defendant Claire in which she made statements materially inconsistent with prior allegations and the asserted basis for emergency restrictions, including statements minimizing or retracting claims of fear or abuse and acknowledging strategic considerations surrounding the proceedings. Plaintiff sought to present this recording during subsequent state-court proceedings, but it was not permitted to be introduced or considered.

26.    In late December 2020, Defendant Claire and Potter pushed for the appointment of Defendant Daswani as a Guardian ad Litem ("GAL"). Plaintiff consented only after being led to believe that doing so would result in increased parenting time and a neutral investigation focused on W.H.'s best interests.

27.    On or about January 6, 2021, Daswani conducted an interview with Plaintiff during which he disclosed Claire's history of aggression and volatility, her mental-health issues, and his concerns that W.H.

7

was being harmed by continued separation from his father. Plaintiff
provided corroborating evidence and the names of witnesses, including
family members, who could substantiate his claims.

28.    Plaintiff also disclosed to Daswani the neurodivergent traits
present in both Plaintiff and W.H. and the need for stability and
routine. Plaintiff specifically requested that Daswani seek a
psychological evaluation due to concerns regarding Claire's mental
health and its impact on the minor child.

29.    Despite the asserted need to assess mental-health issues for
custody and child welfare purposes, Daswani delayed seeking court
authorization for psychological evaluations for several months while
restrictions on Plaintiff's parenting time remained in place and
enforcement actions escalated.

30.    Shortly after Daswani's appointment, Defendant Claire, acting
through her counsel Defendant Potter, initiated a motion for contempt
seeking to enforce the TCO against Plaintiff based on alleged non-
compliance, including allegations relating to custody exchanges and
financial obligations, notwithstanding Plaintiff's pending objections
and requests to be heard.

31.    From January 2021 through July 20, 2021 (when the contempt
proceeding ultimately took place), rather than conducting an impartial

8

investigation, Defendant Daswani engaged in repeated private communications with Defendant Potter in an effort to concoct and promulgate a false narrative regarding Plaintiff's mental health, credibility, and alleged non-compliance. These communications occurred outside Plaintiff's presence and without notice to him.

32.    Immediately prior to the July 20, 2021 contempt hearing, Daswani met privately and off the record in chambers with the presiding judge, Potter, and Plaintiff's counsel. During this meeting, Daswani disclosed Plaintiff's confidential medical and therapy records to all present without Plaintiff's consent or authorization. The records were selectively presented and mischaracterized and/or altered in a manner that portrayed Plaintiff as unstable and dangerous. Plaintiff was not provided the records in advance and was denied any meaningful opportunity to review, challenge, or correct their contents before they were relied upon.

33.    At the July 20, 2021 contempt hearing, Plaintiff was not afforded a full opportunity to speak or to rebut the allegations against him, and his insistence that the TCO had been executed under duress was ignored. The proceedings reflected reliance on information and characterizations that had been developed outside Plaintiff's presence.

34. At the conclusion of the hearing, Plaintiff was effectively presented with a coercive ultimatum: submit to incarceration or involuntary inpatient psychiatric treatment. At that time, no medical professional had recommended inpatient commitment, and no adjudication had found Plaintiff dangerous, incompetent, or in need of such treatment.

35. Plaintiff was jailed and, while incarcerated, denied access to his prescribed medications and suffered severe withdrawal symptoms, including antidepressant discontinuation syndrome. After several days, Plaintiff was transferred to Ridgeview Institute, where intake staff determined that inpatient hospitalization was not medically necessary and instead placed Plaintiff in an intensive outpatient program under coercive circumstances.

36. Notwithstanding the foregoing medical determination, the confinement functioned as punitive leverage tied to the contempt proceeding rather than medically indicated treatment, and was later cited by Defendant Potter and others as evidence of Plaintiff's alleged instability in subsequent proceedings.

37. As a direct result of the July 20, 2021 contempt proceedings, Plaintiff was indefinitely deprived of all contact with W.H. From that point forward, Plaintiff was not permitted parenting time or

communication, and no subsequent hearing was held to adjudicate the necessity or proportionality of the complete severance of the parent-child relationship.

38.    During Plaintiff's confinement and immediately thereafter, the presiding judge sought criminal charges against Plaintiff arising out of the same underlying custody dispute, converting what had originated as a civil custody and divorce matter into a criminal proceeding.

39.    Felony charges were pursued against Plaintiff without a grand jury indictment, further entrenching the use of criminal process as leverage in the civil custody proceedings and exposing Plaintiff to continued incarceration and liberty restraints.

40.    In late October 2021, Plaintiff was arrested in Rabun County, Georgia, following a minor traffic stop and transported under harsh and unsafe conditions to Cobb County Jail based on outstanding warrants. Bail was initially denied and later granted only after intervention by retained counsel.

41.    Plaintiff was released in late October 2021 and thereafter experienced escalating PTSD symptoms, frequent night terrors, and persistent fear of renewed incarceration. Plaintiff sold his home and relocated to live with his grandmother due to the ongoing threat of arrest and confinement.

42.    Plaintiff alleges that the criminal proceedings were invoked to justify continued restrictions in the civil custody proceedings and to portray Plaintiff as dangerous or unstable, notwithstanding the lack of adjudication supporting such claims.

43.    Just prior to the aforementioned contempt hearing, the court finally ordered psychological evaluations of both Plaintiff and Defendant Claire. Plaintiff promptly completed his required sessions with court-appointed psychologist Defendant Oppenheimer. Claire did not schedule or complete her evaluation at that time.

44.    In December 2021, after concerns regarding bias and extrajudicial conduct were raised, the presiding judge was recused from the case. Only after the judge's recusal did Claire contact Oppenheimer to participate in the psychological evaluation process.

45.    Claire met with Oppenheimer on roughly three occasions in early 2022. Immediately prior to these meetings, Daswani engaged in direct communications with Oppenheimer concerning the parties and the pending proceedings, consistent with and furthering the false narrative previously developed by Daswani and Defendant Potter. Shortly thereafter, Plaintiff's final scheduled appointment with Oppenheimer was abruptly canceled without explanation.

46.     In April 2022, a conference call occurred involving Oppenheimer, Potter, Daswani, Plaintiff's counsel, and a newly assigned judge, during which Oppenheimer represented that Claire posed no danger and that Plaintiff was the unstable parent. Plaintiff was not permitted to be present for the call and was not provided the evaluative conclusions, underlying basis, or characterizations derived from the psychological evaluation process. Nevertheless, those conclusions were relied upon in subsequent proceedings and enforcement actions before Plaintiff was afforded any meaningful opportunity to review, challenge, or rebut them.

47.     Despite the court's order requiring a written evaluation, Plaintiff was informed that a written psychological evaluation report would not be provided unless he paid an additional fee of approximately $8,000. Plaintiff was not provided a report, underlying methodology, or evaluative conclusions.

48.     On or about April 14, 2022, in proceedings before a magistrate judge to remove Plaintiff's ankle monitor, the court acknowledged on the record that an ankle monitor had been ordered at Daswani's insistence and stated the restriction would be revisited following entry of a final divorce decree. The ankle monitor nevertheless remained in place for an extended period, continuing to restrict Plaintiff's liberty

despite the absence of any criminal conviction or indication by a medical professional that Plaintiff was dangerous or a threat to anyone.

49.     During the final divorce proceedings conducted in April and May 2022, Plaintiff alleges the court repeatedly prevented him from presenting evidence concerning Claire's history of aggression and volatility and prevented meaningful adjudication of underlying factual disputes.

50.     Immediately prior to the final hearing, Defendant Daswani engaged in ex parte communications with the court, including communications requesting additional courtroom security based on unsupported claims of fear. These communications occurred outside Plaintiff's presence and contributed to a prejudicial courtroom environment that impaired Plaintiff's ability to receive a fair and impartial hearing.

51.     The court entered its final rulings without issuing findings of fact or conclusions of law addressing custody, visitation restrictions, psychological allegations, or Plaintiff's asserted counterclaims, and without resolving material factual disputes raised by Plaintiff during the proceedings.

52.   Notwithstanding the foregoing procedural defects and unresolved issues, on or about June 22, 2022, the court entered a final divorce judgment.

53.   The final judgment imposed Title IV-D obligations exceeding the presumptive guideline amount by approximately $400 per month, without written findings explaining the deviation, despite evidence that both parties possessed comparable earning capacity and did not require public assistance.

54.   From the issuance of the TCO through and after entry of the final judgment, Defendants continued to presume Plaintiff's ability to comply with financial obligations, notwithstanding repeated notice of Plaintiff's disabling medical conditions, loss of livelihood, and inability to pay.

55.   Following entry of the final judgment, Plaintiff was subjected to repeated awards of attorney's fees in favor of Defendant Claire and her counsel after Plaintiff filed motions and other pleadings challenging ongoing enforcement and procedural irregularities. At the time, Plaintiff remained subject to unresolved criminal proceedings and conditions of release, and Defendants sought to leverage the pendency of those proceedings by threatening further sanctions, enforcement actions, and potential bond consequences in response to Plaintiff's

filings. These fee awards were imposed without meaningful notice or opportunity to contest the underlying factual assertions and operated to chill Plaintiff's access to the courts.

56.    Beginning in or around May–June 2023, contempt proceedings were initiated by the state at the behest of Claire and her counsel to enforce child-support obligations based on the same unexamined presumption of ability to comply.

57.    In or around September 2023, Defendant Teplitzky initiated separate contempt proceedings seeking Plaintiff's incarceration to enforce attorney-fee awards.

58.    As a foreseeable result of escalating enforcement actions and incarceration threats, Plaintiff experienced a severe medical and psychological crisis, required emergency mental-health treatment, and ultimately left Georgia out of fear of imminent incarceration and bodily harm.

59.    Throughout 2024 and continuing into the present, Defendants and enforcement actors have maintained and advanced enforcement threats based on accumulated obligations, subjecting Plaintiff to ongoing coercive pressure and a credible risk of renewed incarceration, restraint on liberty, and retaliation for protected litigation activity.

60.    On October 15, 2024, Plaintiff entered a special appearance into the civil contempt action, objecting to personal jurisdiction, subject-matter jurisdiction, service of process, and the manner of service, while disclosing disabling medical conditions, unemployment, and inability to pay.

61.    On or about November 26, 2024, after Plaintiff had entered a special appearance objecting to jurisdiction and service, Defendant Teplitzky left Plaintiff a voicemail message referencing contempt proceedings and the prospect of incarceration. The communication conveyed the imminence of enforcement consequences notwithstanding Plaintiff's pending filings and unresolved disputes regarding ability to pay, and reinforced the coercive pressure being applied in response to Plaintiff's efforts to challenge ongoing enforcement actions.

62.    In or around late December 2024, while Plaintiff's jurisdictional objections and filings remained unresolved, Defendant Claire initiated and pursued a criminal abandonment warrant based on Plaintiff's alleged failure to satisfy support-related obligations, despite notice of Plaintiff's disabilities, loss of livelihood, and inability to pay.

63.    In or around March 2025, the court entered a default in the contempt proceedings without adjudicating Plaintiff's pending jurisdictional objections or defenses.

64.     In May 2025, the court entered a contempt incarceration order

predicated on the same disputed obligations and prior enforcement

actions, further escalating the deprivation of Plaintiff's liberty and

compounding the ongoing constitutional injuries described herein.

65.     Defendants' enforcement posture remains ongoing and

prospective in nature. Plaintiff continues to face credible threats of

renewed incarceration, further liberty restrictions, and retaliation for

protected litigation activity, constituting a continuing violation of

federally protected rights.

66.     Plaintiff further alleges that the proceedings were repeatedly

influenced by ex parte communications and procedural irregularities

that denied Plaintiff a fair opportunity to be heard on matters affecting

his liberty and parental rights.

67.     Plaintiff alleges that Claire and her counsel continued to pursue

restrictive conditions and enforcement actions against Plaintiff while

withholding or minimizing information concerning Claire's own mental-

health history and volatility.

68.     Plaintiff alleges that the combined use of emergency ex parte

protective orders, coercive civil contempt, coerced psychiatric

confinement, and criminal prosecution constituted a coordinated course

of conduct that deprived Plaintiff of constitutionally protected rights and severed the parent-child relationship without due process.

69.     Plaintiff alleges that despite both parties' comparable earning capacity and the absence of public assistance, the proceedings were repeatedly used to impose and increase financial obligations and restrictive visitation conditions without findings of fact or meaningful opportunity to contest the basis or amounts.

70.     Plaintiff alleges that after he engaged in protected legal activity—including filing motions, objections, and notices challenging the process and enforcement mechanisms—Defendants escalated enforcement actions and sought additional restraints in retaliation.

71.     Plaintiff alleges that the pattern of retaliatory enforcement continued after the final judgment, including through contempt proceedings and the pursuit of incarceration and criminal warrants as leverage.

72.     Plaintiff alleges that the cumulative effect of these actions has been to deprive him of his parental relationship, subject him to repeated threats of arrest and incarceration, and impose severe emotional, financial, and psychological harm.

73.    Plaintiff alleges that W.H. has suffered harm from prolonged deprivation of his father, disruption of stability, and exposure to ongoing conflict and instability created by Defendants' actions.

74.    Plaintiff alleges that Defendants' conduct has prevented meaningful reunification and has continued to impose barriers and punitive conditions that serve no legitimate child-welfare purpose.

75.    Plaintiff alleges that Defendants acted jointly and in concert with state enforcement mechanisms to deprive Plaintiff of constitutionally protected rights under color of state law.

76.    Plaintiff alleges that absent declaratory and injunctive relief, Plaintiff remains at risk of immediate arrest, incarceration, and continued deprivation of parental rights based on procedurally defective orders and enforcement mechanisms.

## V. CLAIMS FOR RELIEF

### COUNT I – Procedural Due Process (42 U.S.C. § 1983)

### Against All Defendants

77.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

78.    The Fourteenth Amendment to the U.S. Constitution guarantees that no State shall deprive any person of liberty or property without due process of law.

79.     Plaintiff possessed clearly established liberty and property interests, including the care, custody, and companionship of his minor child; freedom from physical restraint and incarceration absent lawful adjudication; and protection against deprivation of property through fines, fees, and support obligations imposed without lawful process.

80.     Acting under color of state law, Defendants deprived Plaintiff of these protected interests through court orders, enforcement actions, and coordinated conduct that resulted in Plaintiff's separation from his child, imposition of liberty restraints, and financial sanctions.

81.     These deprivations occurred without constitutionally adequate procedural safeguards. Plaintiff was subjected to ex parte communications, denied meaningful notice and opportunity to be heard, prevented from presenting evidence and testimony, and subjected to coercive ultimatums in lieu of lawful adjudication.

82.     Defendants enforced and relied upon orders issued without findings of fact or conclusions of law, including orders affecting custody, visitation, psychological treatment, financial obligations, and incarceration.

83.     Plaintiff's purported "consent" to certain restraints was obtained under extreme duress and coercion, rendering such consent invalid for purposes of due process.

21

84.     All named Defendants, including Defendant Claire and her

counsel, acted jointly with state actors in an effort to invoke state

enforcement machinery to deprive Plaintiff of protected interests,

rendering them liable under § 1983.

85.     As a direct and proximate result of Defendants' conduct, Plaintiff

suffered loss of parental relationship, loss of liberty, financial harm,

and severe emotional and psychological injury.

86.     Defendants are liable to Plaintiff under 42 U.S.C. § 1983 for

violating Plaintiff's procedural due process rights.

### COUNT II – Substantive Due Process (42 U.S.C. § 1983)

### Against All Defendants

87.     Plaintiff incorporates by reference all preceding paragraphs as

though fully set forth herein.

88.     The Fourteenth Amendment protects fundamental liberty

interests, including the right of a parent to the care, custody,

companionship, and management of their children.

89.     Defendants, acting under color of state law, arbitrarily and

unjustifiably interfered with Plaintiff's fundamental parental rights by

effectuating and maintaining Plaintiff's separation from his minor child

without findings of unfitness, necessity, or danger.

90.    Defendants' conduct was not narrowly tailored to serve any
compelling governmental interest and was undertaken through
coercion, ex parte influence, retaliation, and deliberate disregard of
Plaintiff's inalienable rights.

91.    The prolonged deprivation of Plaintiff's parental relationship,
coupled with threats of incarceration, coercive financial sanctions, and
criminalization of civil disputes, constituted an egregious abuse of
governmental power that shocks the conscience.

92.    Defendants acted with deliberate indifference to the foreseeable
and severe psychological harm caused by the arbitrary destruction of
Plaintiff's relationship with his child.

93.    The actions complained of were so arbitrary and oppressive that
no reasonable and impartial member of the public would believe them
to be lawful, and they violated clearly established constitutional
protections.

94.    As a direct and proximate result of Defendants' unconstitutional
conduct, Plaintiff suffered the loss of his parent–child relationship,
deprivation of liberty, emotional and psychological injury, and other
damages.

95.    Defendants are liable to Plaintiff under 42 U.S.C. § 1983 for
violating Plaintiff's substantive due process rights.

## COUNT III – First Amendment Retaliation (42 U.S.C. § 1983)

## Against All Defendants

96.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

97.     The First Amendment to the U.S. Constitution protects the right to petition the government for redress of grievances, including the filing of objections, motions, appeals, and other court pleadings.

98.     Plaintiff engaged in constitutionally protected activity by filing objections to jurisdiction, challenging unlawful orders, seeking appellate review, and pursuing relief from coercive enforcement actions.

99.     In response to Plaintiff's protected activity, Defendants subjected Plaintiff to adverse actions that would deter a person of ordinary firmness from exercising First Amendment rights, including but not limited to:

(a) repeated awards of attorney's fees;

(b) initiation and escalation of contempt proceedings;

(c) threats of incarceration and bond-related consequences;

(d) pursuit of a criminal abandonment warrant; and

(e) entry of default and subsequent incarceration orders.

24

100.  The temporal proximity between Plaintiff's protected filings and Defendants' adverse actions, combined with Defendants' escalating enforcement posture, establishes a causal connection between Plaintiff's exercise of First Amendment rights and the retaliatory conduct.

101.  Defendants' actions were not narrowly tailored to serve any legitimate governmental purpose and were undertaken to punish Plaintiff for exercising protected speech and petitioning activity.

102.  Private Defendants, including Defendant Claire and her counsel, acted jointly with state actors and knowingly invoked state enforcement mechanisms to retaliate against Plaintiff for protected activity, rendering them liable under § 1983.

103.  As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff suffered loss of liberty, loss of parental rights, financial harm, emotional distress, and chilling of his constitutionally protected rights.

104.  Defendants' conduct clearly violated the First Amendment, thus entitling Plaintiff to relief under 42 U.S.C. § 1983 for Defendants' retaliation against his exercise of First Amendment protections.

### COUNT IV – Abuse of Process (42 U.S.C. § 1983)

### Against All Defendants

105.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

106.    Defendants employed or participated in civil and criminal legal processes, including contempt proceedings, attorney-fee enforcement, default judgments, and criminal abandonment proceedings, against Plaintiff.

107.    These legal processes were initiated and escalated not for legitimate adjudicatory purposes, but to coerce compliance, punish Plaintiff for protected activity, and suppress Plaintiff's efforts to challenge unlawful orders and enforcement actions.

108.    Defendants committed willful acts in the use of legal process by escalating enforcement actions after Plaintiff filed objections, sought appellate review, and asserted jurisdictional defenses, including the pursuit of criminal sanctions in matters arising from civil disputes.

109.    The use of legal process was grossly disproportionate to any legitimate governmental interest and was undertaken with knowledge of Plaintiff's inability to fulfill any supposed obligations and the absence of findings supporting incarceration or criminal liability.

110.    Defendants' misuse of process resulted in Plaintiff's loss of liberty, financial harm, interference with parental rights, and severe emotional and psychological injury.

111.    Private Defendants acted jointly with state actors and knowingly invoked state enforcement machinery for improper purposes, rendering them liable under 42 U.S.C. § 1983.

112.    Defendants' conduct constituted an abuse of process and malicious use of legal process in violation of Plaintiff's constitutional rights.

113.    As a direct and proximate result of Defendants' misconduct, Plaintiff suffered damages and is entitled to relief under 42 U.S.C. § 1983.

### COUNT V – Unlawful Seizure and Unconstitutional Liberty Restraints (42 U.S.C. § 1983) Against All Defendants

114.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

115.    The Fourth Amendment protects persons from unreasonable seizures, and the Fifth and Fourteenth Amendments prohibit deprivation of liberty without due process of law.

116.    Defendants, acting under color of state law, subjected Plaintiff to seizures and restraints on his physical liberty, including incarceration, imposition of an ankle monitor, threats of arrest, and incarceration orders.

117.   These restraints were imposed in the absence of lawful findings, adjudication of ability to pay, or any determination that Plaintiff posed a danger or flight risk, and were used as coercive leverage in civil enforcement proceedings.

118.   Defendants relied upon orders entered without findings of fact or conclusions of law to justify Plaintiff's detention and restraint, rendering such seizures unreasonable and unconstitutional.

119.   The use of physical liberty restraints to compel compliance with disputed civil obligations constituted punishment without conviction and exceeded any legitimate civil enforcement purpose.

120.   Private Defendants acted jointly with state actors by invoking and directing state enforcement mechanisms to restrain Plaintiff's liberty, rendering them liable under 42 U.S.C. § 1983.

121.   As a direct and proximate result of Defendants' unlawful seizures and liberty restraints, Plaintiff suffered loss of physical liberty, severe emotional distress, disruption of familial relationships, and other damages.

122.   Defendants' conduct violated clearly established constitutional rights of which a reasonable official would have known.

123.   Plaintiff is entitled to relief under 42 U.S.C. § 1983 for Defendants' unlawful seizures and deprivation of liberty.

## COUNT VI – Conspiracy and Joint Action Under Color of State Law (42 U.S.C. § 1983) Against All Defendants

124. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

125. Section 1983 imposes liability on private parties who willfully participate in joint action with state actors to deprive a person of rights secured by the U.S. Constitution.

126. Defendants reached a mutual understanding and engaged in concerted action to deprive Plaintiff of his constitutionally protected rights, including his rights to due process, familial association, freedom from unlawful seizure, and freedom from retaliation for protected activity.

127. State actors and private Defendants jointly participated in the challenged conduct through coordinated filings, ex parte communications, selective enforcement, and the invocation of state enforcement mechanisms to impose coercive restraints on Plaintiff.

128. Private Defendants knowingly and intentionally enlisted the aid of state actors to carry out unconstitutional objectives, including maintaining Plaintiff's separation from his child, imposing liberty restraints without lawful findings, and escalating civil disputes into criminal proceedings.

129.   Defendants committed overt acts in furtherance of the
conspiracy, including but not limited to:

> (a) engaging in ex parte communications regarding Plaintiff's
>     mental health, credibility, and alleged noncompliance;
> (b) selectively presenting or altering supposed evidence to
>     influence judicial outcomes;
> (c) coordinating enforcement actions following Plaintiff's
>     protected filings; and
> (d) pursuing criminal sanctions to coerce compliance with
>     disputed civil obligations.

130.   Defendants' concerted actions were undertaken under color of
state law and were a moving force behind the constitutional
deprivations suffered by Plaintiff.

131.   As a direct and proximate result of Defendants' conspiracy and
joint action, Plaintiff suffered loss of liberty, loss of parental rights,
financial harm, emotional distress, and other damages.

132.   Defendants' conduct violated clearly established constitutional
rights, and each Defendant is liable for the acts of co-conspirators
committed in furtherance of the conspiracy.

133. Plaintiff is entitled to relief under 42 U.S.C. § 1983 for

Defendants' conspiracy and joint participation in unconstitutional

conduct.

## COUNT VII – Declaratory Relief

134. Plaintiff incorporates by reference all preceding paragraphs as

though fully set forth herein.

135. An actual, ongoing controversy exists between Plaintiff and

Defendants regarding the constitutionality of Defendants' past and

continuing conduct.

136. Plaintiff seeks a declaration that Defendants' actions and

enforcement practices, as applied to Plaintiff, violated his rights under

the First, Fourth, and Fourteenth Amendments to the U.S.

Constitution.

137. Plaintiff further seeks a declaration that the enforcement of

custody, support, contempt, and criminal abandonment proceedings

against him without findings of fact, adjudication of ability to pay, or

meaningful opportunity to be heard is unconstitutional as applied to

Plaintiff.

138. Declaratory relief is necessary to clarify the legal rights and

obligations of the parties and to prevent future constitutional

violations.

## COUNT VIII – Injunctive Relief

139.   Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

140.   Defendants' conduct constitutes an ongoing and continuing violation of Plaintiff's constitutionally protected rights.

141.   Plaintiff faces a real and immediate threat of irreparable harm, including renewed incarceration, enforcement of unconstitutional orders, and further interference with his parental and liberty interests.

142.   Monetary damages alone are insufficient to remedy the ongoing constitutional injuries suffered by Plaintiff.

143.   Plaintiff seeks preliminary and permanent injunctive relief prohibiting Defendants from:

> (a) enforcing custody, support, contempt, or criminal abandonment actions against Plaintiff without constitutionally adequate process;
>
> (b) initiating or continuing incarceration or liberty restraints based on disputed civil obligations absent lawful adjudication; and
>
> (c) retaliating against Plaintiff for exercising protected litigation and petitioning activity.

144.  The balance of equities and the public interest favor injunctive

relief to prevent ongoing constitutional violations.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court

enter judgment in his favor and grant the following relief:

### A. Declaratory Relief

1.  Declare that Defendants' actions and practices, as applied to

    Plaintiff, violated his rights under the First, Fourth, Fifth, and

    Fourteenth Amendments to the U.S. Constitution.

2.  Declare that the enforcement of custody, support, contempt, and

    related proceedings against Plaintiff without findings of fact,

    adjudication of ability to pay, or a meaningful opportunity to be

    heard is unconstitutional.

### B. Injunctive Relief

3.  Enter preliminary and permanent injunctive relief prohibiting

    Defendants from:

    i.   enforcing custody, support, contempt, or criminal

         abandonment actions against Plaintiff absent

         constitutionally adequate notice, hearing, and findings;

    ii.    initiating or continuing incarceration, detention, or liberty restraints based on disputed civil obligations without lawful adjudication; and

    iii.   retaliating against Plaintiff for exercising protected rights to petition, appeal, or seek judicial review.

4. Order Defendants to take all necessary steps to cease ongoing constitutional violations and prevent future enforcement actions inconsistent with due process.

## C. Compensatory Damages

5. Award Plaintiff compensatory damages in an amount to be determined at trial for:

    i.    loss of liberty;

    ii.   loss of parental relationship and familial association;

    iii.  emotional and psychological harm; and

    iv.  financial losses, including fees and costs imposed through unconstitutional enforcement actions.

## D. Punitive Damages

6. Award punitive damages against the individual Defendants to deter and punish willful, malicious, or reckless disregard of Plaintiff's federally protected rights, where permitted by law.

## E. Costs and Fees

7. Award Plaintiff costs of suit and reasonable attorney's fees

pursuant to 42 U.S.C. § 1988, and any other applicable authority.

## F. Demand for Trial by Jury

8. Plaintiff demands a trial by jury on all issues so triable.

## G. Other Relief

9. Grant such other and further relief as the Court deems just,

proper, and equitable, including any relief necessary to restore

Plaintiff's constitutionally protected rights and prevent ongoing

harm.

Respectfully submitted this 29th day of December, 2025.

/s/ Matthew Thomas Harvey
**Matthew Thomas Harvey**
Plaintiff, pro se

c/o 501 North Slappey Blvd. #1112
Albany, Georgia 31701
Mharvey7744@gmail.com
(912) 346-5299

35

## CERTIFICATE OF SERVICE

I certify that on the date below, I served the foregoing *Plaintiff's*

*First Amended Complaint* as follows:

Via Email (counsel of record):

- Noah Green, counsel for Claire M. Harvey —

  ngreen@henefeldgreen.com

- Christine L. Mast & Jamie McDowell, counsel for Kessler &

  Solomiany, LLC; Stefanie S. Potter; Molly Y. Teplitzky —

  cmast@hpylaw.com; jmcdowell@hpylaw.com

- Tia Brown, counsel for Kim C. Oppenheimer —

  tbrown@hallboothsmith.com

- James R. Doyle, II, counsel for Brandy J. Daswani —

  james.doyle@lewisbrisbois.com

This 29th day of December, 2025.

/s/ Matthew Thomas Harvey
**Matthew Thomas Harvey**
Plaintiff, pro se

c/o 501 North Slappey Boulevard #1112
Albany, Georgia 31701
Mharvey7744@gmail.com
(912) 346-5299

36

**UNITED STATES POSTAL SERVICE** **Click-N-Ship®**

P

usps.com
$8.89
US POSTAGE
12/29/2025
00 lb 14 oz

9405 5301 0935 5264 5066 80 0088 9000 1403 0303

U.S. POSTAGE PAID
Click-N-Ship®

Mailed from 31701  4811961387 4620



**PRIORITY MAIL®**

Created 2025-12-29

MATTHEW HARVEY
501 N SLAPPEY BLVD PMB 1112
ALBANY GA 31701-1409



RDC 03

C039

U.S. DISTRICT COURT, NORTHERN DISTRICT
CLERK OF COURT
75 TED TURNER DR SW
ATLANTA GA 30303-3315



**USPS TRACKING #**

9405 5301 0935 5264 5066 80

