**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| MATTHEW THOMAS HARVEY, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 1:25-cv-04688-JPB |
| CLAIRE M. HARVEY, *et al*. | § | |
| | § | |
| *Defendants*. | § | |

## DEFENDANT CLAIRE HARVEY'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND BRIEF IN SUPPORT

COMES NOW, Defendant Claire M. Harvey, with her Motion to Dismiss Plaintiff's Amended Complaint and Brief in Support.

### Introduction

Plaintiff asserts multiple constitutional and state-law claims against his ex-marital partner, Claire Harvey. Each claim fails for multiple, independent reasons. First, the claims against Ms. Harvey are based on purported injuries that occurred more than two years before the Complaint's filing. Claims for alleged conduct that falls outside the limitations period are barred. The Complaint also fails to state a claim under the Constitution and Section 1983, as Ms. Harvey is a private party who was never engaged in state action. This argument is supported by a long line of well-settled precedent. Moreover, Plaintiff's allegations are conclusory and do not set forth cognizable claims. The Court also lacks jurisdiction over Plaintiff's

asserted claims under the *Younger* Abstention doctrine, the *Rooker-Feldman*
Doctrine, and the domestic relations exception to federal jurisdiction. Under each
of these arguments, Plaintiff's Amended Complaint fails. The claims against Ms.
Harvey should each be dismissed as a matter of law.

### Allegations in the Complaint[1]

Plaintiff Matthew Thomas Harvey and Defendant Claire M. Harvey
("Defendant," "Ms. Harvey," or "Claire") were married in 2015 and had one child
together. [Cmplt., Doc. 1 ¶ 23].

Plaintiff alleges that in late October 2020, Ms. Harvey requested a trial
separation in their marriage. [Am. Cmplt., Doc. 44 ¶ 16]. Plaintiff contends that
Ms. Harvey and her attorney developed a strategy on November 2, 2020, to obtain
a protective order against Plaintiff for her and her child. [*Supra* ¶ 17]. That
evening, Plaintiff states there was a "non-violent" event that led Ms. Harvey to tell
him she was filing for divorce. Police responded to the "event" and permitted Ms.
Harvey to leave with their child. [*Supra* ¶¶ 18-19]. Plaintiff complains that this was
done in the "absence of any custody order, judicial finding, or legal authority…"
[*Supra*].

---

[1] The Amended Complaint, Doc. 44, contains far less detailed factual allegations and dates than the initial
Complaint, Doc. 1. Thus, the initial Complaint will be minimally referenced within to provide additional context to
some of the allegations.

Plaintiff then claims that "on or about November 3, 2020," Ms. Harvey filed for divorce and obtained an ex parte protective order (TPO) based on what Plaintiff characterizes as "fabricated allegations of abuse." [*Supra* ¶ 20; Doc. 1 ¶ 27]. Plaintiff further asserts that Ms. Harvey's affidavit used to obtain the TPO was "false or misleading." [Doc. 44 ¶ 20]. Plaintiff lists a litany of problems he finds with the TPO and his inability to participate in the ex parte TPO hearing. [*Supra* ¶¶ 21-22].

In mid-November 2020, Plaintiff says he was "coerced into signing a Temporary Consent Order (TCO)," apparently by his attorney. [*Supra* ¶ 22; Doc. 1 ¶ 30]. Despite being represented by counsel, Plaintiff claims the order was entered without a hearing, without findings of unfitness or harm, and without "adversarial safeguards." [Doc. 1 ¶ 30]. Plaintiff alleges his counsel told him that Defendant would dismiss the accompanying TPO if he "agreed" to the TCO. [*Supra*; Doc. 44 ¶ 22].

Plaintiff then contends that on December 5, 2020, after the TPO had been dismissed and the TCO was in effect, he recorded Ms. Harvey making "inconsistent" statements or "minimizing or retracting claims of fear of abuse." [Doc. 44 ¶ 25]. In the initial Complaint, Plaintiff elaborated on his purported "evidence" of "misstatements," alleging that in the TPO petition, Ms. Harvey

3

averred that Plaintiff had "choked" her. But in the recording, Ms. Harvey said, "You say restrained, I say choked." [Doc. 1 ¶ 32].

In late December 2020, Plaintiff writes that Ms. Harvey and her attorney "pushed" for the appointment of a guardian ad litem (GAL). [Doc. 44 ¶ 25]. In the initial Complaint, Plaintiff wrote that on or about December 28, 2020, during court-ordered mediation, he was pressured by his counsel into consenting to the appointment of Brandy J. Daswani as the GAL. [Doc. 1 ¶ 35]. Plaintiff claims he was not advised of his right to object or to request a hearing— apparently by his own counsel—before the GAL's appointment was finalized. [*Supra*]. Plaintiff takes issue with this.

Plaintiff then alleges that Ms. Harvey, through her counsel, initiated a contempt motion to enforce the TCO for failure to comply with custody and financial obligations. [Doc. 44 ¶ 30]. Plaintiff next alleges that Ms. Harvey met with a court-appointed psychologist in early 2022. [*Supra* ¶ 45]. Following this, he complains that the psychologist told the family court that Ms. Harvey presented a danger to the child; on the other hand, the doctor found that Plaintiff did pose a danger. [*Supra*]. Plaintiff takes issue with this finding.

Following a final divorce decree, Plaintiff contends that he was "subjected to repeated awards of attorney's fees in favor of [Ms. Harvey] and her counsel after Plaintiff filed motions and other pleadings…" [*Supra* ¶ 55].  Then, Plaintiff alleges

that around May or June 2023, contempt proceedings were brought by the state "at the behest of Claire and her counsel to enforce child-support obligations…" [*Supra* ¶ 56]. Plaintiff takes issue with this.

Finally, Plaintiff states that Ms. Harvey has constitutional liability because she continues to pursue "restrictive conditions and enforcement actions" through the courts—apparently related to child support and custody obligations. [*Supra* ¶ 67]. Moreover, Plaintiff says that Ms. Harvey, through her counsel, has used court process to "deprive" him of constitutional rights and "severed the parent-child relationship without due process." [*Supra* ¶ 68].

Even accepting the conclusory and illogical claims in the Amended Complaint as true, Plaintiff has not stated a claim against Ms. Harvey. The Court lacks jurisdiction over the claims and, even if it did not, the Complaint's allegations fail substantively: Ms. Harvey is not a state actor, and the conclusory allegations fail to state valid claims upon which relief can be granted. These grounds for dismissal are in addition to the jurisdictional claims, including *Younger* abstention, the *Rooker-Feldman* doctrine, and the federal domestic relations doctrine. Thus, under any analysis, all claims against Ms. Harvey should be dismissed.

## Argument and Citation to Authority

### I.    Motion to Dismiss Standard

In a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept the complaint's factual allegations as true. *Hardy v. Regions Mortg., Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Allegations require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly* at 555. Unwarranted deductions of fact are not treated as true. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).

*Iqbal* held that legal conclusions should not be accepted as true: "Determining whether a complaint states a plausible claim for relief will...be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where [alleged] facts do not permit the court to infer more than the mere possibility of misconduct, it has not been shown that the pleader is entitled to relief." *Iqbal* at 679. Thus, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal* at 678.

An attack on a complaint for want of jurisdiction under Fed. R. Civ. P. 12(b)(1) or (2) is evaluated the same as a Fed. R. Civ. P. 12(b)(6) motion. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009). Jurisdictional challenges can also raise factual arguments, attacking "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings... are considered." *Id.* At the motion to dismiss stage, allegations about the jurisdictional inquiry do not benefit from the presumption of truth that normally attaches to a complaint, and disputed material facts are irrelevant to the jurisdictional analysis. *Id.*

Here, Plaintiff's claim falls for several reasons, both jurisdictionally and substantively.

## II. Claims for purported acts that occurred more than two years before the lawsuit are barred by the statute of limitations.

Georgia law imposes a two-year statute of limitations for personal injury actions, which federal courts apply to Section 1983 claims. The Complaint was filed on August 19, 2025. [Doc. 1]. Thus, any claims based on conduct that occurred before August 19, 2023, are presumptively barred. "When it is apparent from the face of a complaint that the claims asserted therein are time-barred, the complaint is subject to dismissal." *Henriquez v. Ga. Dept. of Revenue*, 2023 U.S. App. LEXIS 18336, *11 (11th Cir. 2023).

All of the conduct Plaintiff claims violated constitutional or state law occurred before August 2023.[2] For example, the TPO and TCO, which Plaintiff contends Ms. Harvey lied about or committed a wrong when she requested them from the Court, both occurred in 2020. [Doc. 44 ¶¶ 25-27]. And the motion for attorney's fees and contempt filed by Ms. Harvey's counsel, purportedly took place between March and June 2023. [*Supra* ¶¶ 55-56].

Plaintiff had full knowledge of the purported "injury" and failed to bring suit before the expiration of the statute of limitations. The Complaint contains no allegations that would support tolling. Because the statute of limitations bars claims based on acts that occurred before August 19, 2023— which appears to be each claim— the claims against Ms. Harvey should be dismissed.

### III.    Ms. Harvey was not engaged in state action and, as a result, Section 1983 claims cannot be asserted against her.

A successful Section 1983 action requires a showing that the conduct complained of was committed by a person acting under color of state law and deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156-57 (1978).

---

[2] The initial complaint had allegations concerning an arrest for child abandonment related to the failure to provide child support and related obligations. As those allegations have been omitted from the Amended Complaint, they appear to have been abandoned as well.

For a defendant's actions to be attributable to the state, "the deprivation must be caused by the exercise of some right or privilege created by the state, [ ] by a rule of conduct imposed by the state, or by a person for whom the state is responsible." Further, "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982).

"Only in rare circumstances can a private party be viewed as a state actor for section 1983 purposes." *Harvey v. Harvey*, 949 F. 2d 1127, 1130 (11th Cir. 1992). There are three conditions where a private party may be deemed to be a state actor: (1) the state has coerced or at least significantly encouraged the action alleged to violate the Constitution ("state action test"); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the state ("public function test"); or (3) the state had so far insinuated itself into a position of interdependence with the private parties that it was a joint participant in the enterprise ("nexus/joint action test"). *NBC, Inc. v. Comm. Workers of Am.*, 860 F.2d 1022, 1026-27 (11th Cir. 1988). Here, because Plaintiff appears to argue that Ms. Harvey used the court system to effectuate unconstitutional conduct, the only test that remotely fits is the nexus/joint action test.

For a private party to engage in state action under the joint action test, "the governmental body and private party must be intertwined in a symbiotic

relationship." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 357 (1974). For decades, courts have held that "[u]se of the courts by private parties does not constitute an act under color of state law." *Harvey* at 1133; *Cobb v. Ga. Power Co.*, 757 F.2d 1248, 1251 (11th Cir. 1985) ("one who has obtained a state court order or judgment is not engaged in state action merely because she used the state court legal process"). But that is precisely the argument made by Plaintiff: that Ms. Harvey, using the state court system, was not the act of a private citizen, but state action.

In *Cobb*, a case in which the court found that a private party petitioning for a TRO was not state action, the Eleventh Circuit cites a litany of cases with approval that held that the use of state and federal court systems by private parties— even if the party was alleged to have acted in bad faith— was not state action. *Cobb* at 1251.[3]

The result is the same for allegations that Ms. Harvey filed a petition with the Cobb State Magistrate Court for child abandonment. As with the use of state courts by private parties, courts in this Circuit have consistently held that the filing of a police report or criminal complaint does not transform a private party into a state actor. *Smith v. Striblings*, 2014 U.S. Dist. LEXIS 79750, 2014 WL 2619099,

---

[3] *See also Hill v. McClellan*, 490 F.2d 859 (5th Cir. 1974); *Phillips v. I.A.B.S.O.I.W., Local 228*, 556 F.2d 939 (7th Cir. 1977); *Torres v. First St. Bk.*, 588 F.2d 1322 (10th Cir. 1978).

at *4 (N.D. Ga. June 12, 2014); *Artubel v. Colonial Bk. Grp.*, 2008 U.S. Dist. LEXIS 60781, 2008 WL 3411785, at *14 (M.D. Fla. Aug. 8, 2008); *Moody v. Farrell*, 868 F.3d 348, 353 (5th Cir. 2017) ("Evidence that a private citizen reported criminal activity or signed a criminal complaint does not suffice to show state action").

Plaintiff's complaint alleges that Ms. Harvey used court process to obtain judicial orders he disagrees with He also claims that Ms. Harvey's motion for attorney's fees was done strategically. Despite Plaintiff apparently being represented by counsel at court hearings, at least initially, Plaintiff complains that everyone was at fault, including Ms. Harvey, the court-appointed guardian ad litem and psychologist, the judges, and the lawyers. In short, everyone is responsible but himself.

Plaintiff is not the first to attempt to cast private activity as state action under similar fact patterns. But like those who came before, Plaintiff's complaint should also be dismissed. In short, Plaintiff has not strayed close to bringing viable Section 1983 claims against Ms. Harvey, a purely private party without any conduct that can be characterized as state action. For this reason, the claims against her should be dismissed in full.

**IV.    Plaintiff's claims are vague and conclusory and thus not entitled to the presumption of truth.**

"Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678. Plaintiff's allegations are based on tenuous connections that fail to bridge the gap between possibility and plausibility. Plaintiff's claims that Ms. Harvey acted improperly when she brought court actions or a child abandonment complaint are purely conclusory. Plaintiff merely asserts that what occurred was wrong or factually incorrect. These allegations are not entitled to the presumption of truth given to a well-pleaded complaint. As the Supreme Court made clear in both *Twombly* and *Iqbal*, where a complaint simply raises the possibility of misconduct, it is not enough to state a claim.

For example, each count contains some version of the following: "Private Defendants acted jointly with state actors and knowingly invoked state enforcement machinery for improper purposes, rendering them liable under 42 U.S.C. § 1983." [Doc. 44 ¶¶ 84, 102, 111, 120, 127]. It is hard to conceive of more conclusory statements, unsupported by any factual allegations that would remotely provide legal support. These mere recitations of the elements of the claims are not entitled to the presumption of truth.

Thus, even if Plaintiff had set forth cognizable claims against Ms. Harvey—which he has not—the Complaint should still be dismissed based on the conclusory allegations underlying the claims.

### V. The *Younger* Abstention Doctrine requires dismissal of Plaintiff's claims.

Plaintiff's complaints amount to a protest against the decisions made in state court proceedings. Such suits are not permitted under binding precedent.  The Younger abstention doctrine requires federal courts to abstain from interfering with pending state court proceedings that implicate important state interests.  *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619 (1986). This doctrine, established in *Younger v. Harris*, 401 U.S. 37 (1971), reflects the principle of comity between federal and state courts; that federal courts should not unduly interfere with legitimate state activities.  *Id.*

The Younger doctrine has been extended beyond criminal proceedings to include certain civil proceedings involving important state interests. *Id*. For abstention to apply in civil cases, the state proceedings must: "(1) be ongoing, (2) be quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." *Narciso v. Walker*, 811 F. App'x 600, 601-03 (11th Cir. 2020). If these requirements are met, courts then consider

whether the federal action would enjoin the state proceedings and whether an exception to Younger applies.

Here, all requirements for *Younger* abstention are satisfied. First, Plaintiff's Complaint acknowledges the existence of multiple ongoing state court proceedings. These include child support enforcement actions by the Georgia Department of Human Services, a civil contempt action filed in September 2023, and a criminal complaint for child abandonment filed around November 2024.

Both the second and third requirements are also satisfied. The ongoing proceedings include both civil enforcement actions (child support enforcement and civil contempt) and a criminal complaint (child abandonment). Courts have recognized that younger abstention applies to civil proceedings involving important state interests. *See Ohio Civil Rights Comm., supra.* Additionally, these proceedings implicate the State's vital interest in domestic relations matters. Federal courts have long recognized that family law issues, particularly those involving child custody, support, and domestic relations, are primarily within the domain of State courts. *Moore v. Sims*, 442 U.S. 415, 435 (1979).

Lastly, the state proceedings must allow the litigant to raise federal constitutional challenges. This requirement is satisfied when "in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim." *Ohio Civil Rights Comm.* at 627. Nothing in the

Complaint suggests that he cannot raise his constitutional claims in the ongoing state proceedings. Georgia state courts are competent to address federal constitutional issues, and the plaintiff has filed motions and appeals in state court, demonstrating the availability of state remedies. "Abstention is appropriate unless state law clearly bars the interposition of the constitutional claims." *Bowling v. Roach*, 816 Fed. Appx. 901, 905 (5th Cir. 2020). And where, as here, "a litigant has not attempted to present his federal claims in related state-court proceedings," courts should "assume that state court procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987).

The Complaint explicitly seeks to enjoin enforcement of state court orders and to have them declared *void ab initio*. This is precisely the type of interference with state proceedings that *Younger* prohibits. Furthermore, Plaintiff's request for declaratory relief is equally problematic under *Younger*. Courts have similarly "required federal courts to decline to exercise jurisdiction over certain classes of declaratory judgments" that would interfere with state proceedings. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 718 (1996). The plaintiff's request for declaratory relief that state court orders are *void ab initio* would have the same practical effect as an injunction against those proceedings.

15

The *Younger* abstention doctrine requires federal courts to abstain from interfering with pending state court proceedings that implicate important state interests, provided there is an adequate opportunity to raise constitutional challenges in the state proceedings. All requirements for *Younger* abstention are satisfied here. For these reasons as well, the claims should be dismissed.

## VI.    The *Rooker-Feldman* Doctrine bars jurisdiction.

The *Rooker-Feldman* doctrine limits federal court jurisdiction, barring district courts from exercising jurisdiction over cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced. The doctrine is derived from two Supreme Court cases, *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and reflects the exclusive authority of the United States Supreme Court to review state court judgments.

In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., the Supreme Court clarified the scope of the Rooker-Feldman doctrine, holding that it is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 544 U.S. 280, 284 (2005).

The *Rooker-Feldman* doctrine applies when four conditions are met: (1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff seeks district court review and rejection of that judgment; and (4) the state court judgment was rendered before the district court proceedings commenced. *Id*. When these conditions are satisfied, federal district courts lack subject-matter jurisdiction over the claims. *Id.*

The Complaint alleges that Plaintiff is a "state-court loser" within the meaning of the doctrine. The complaint acknowledges that Plaintiff lost in the state court proceedings, including the divorce case where Ms. Harvey was awarded custody. The state court rendered judgments against Plaintiff in divorce, child custody, child support enforcement, and contempt proceedings.

The doctrine bars federal jurisdiction when the plaintiff complains of injuries caused by state court judgments. Here, Plaintiff's alleged injuries stem directly from the state court judgments, including the divorce decree, custody determination, child support orders, and contempt rulings. His complaint seeks redress for injuries resulting from these state court judgments achieved through licensed legal counsel, not from independent actions of Ms. Harvey that would exist apart from the state court's rulings.

The doctrine extends not only to constitutional claims presented or adjudicated by a state court but also to claims that are "inextricably intertwined"

17

with a state court judgment. *Siegel v. LePore*, 234 F.3d 1163, 1172 (11th Cir. 2000). A federal claim is inextricably intertwined with a state court judgment "if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Id.* Plaintiff's claims are inextricably intertwined with the state court judgments because they can only succeed if this Court determines that the state court wrongly decided the domestic relations matters. And requests "that the federal court reverse the outcomes of divorce proceedings, child custody case, and domestic violence hearings" are properly dismissed under *Rooker-Feldman*. *See, e.g., Moore v. County of Butte*, 547 Fed. Appx. 826, 829 (9th Cir. 2013).

Plaintiff asks this Court to "declare specific acts, rulings, and judicial determinations *void ab initio*" and to "enjoin enforcement of unconstitutional and void state court orders and judgments." These requests invite this Court to review and reject the state court judgments, precisely what the *Rooker-Feldman* doctrine prohibits.

The Supreme Court has emphasized that federal district courts "are empowered to exercise original, not appellate, jurisdiction." *Exxon Mobil Corp*. at 291. When plaintiffs invite federal courts to review and reverse unfavorable state-court judgments, such suits are "properly dismissed for want of subject-matter jurisdiction." *Id.* at 284.

The *Rooker-Feldman* doctrine bars district court's jurisdiction over Plaintiff's claims. Plaintiff is a state-court loser who complains of injuries caused by state court judgments rendered before he commenced this federal action. His Complaint explicitly invites this Court to review and reject those state court judgments, precisely what the Rooker-Feldman doctrine prohibits. For these reasons, this Court lacks subject-matter jurisdiction over Plaintiff's claims, and they should be dismissed under Fed. R. Civ. P. 12(b)(1).

### VII.  Plaintiff's claims are barred by the Domestic Relations Exception.

The domestic relations exception is a well-established doctrine that limits federal court jurisdiction over certain family law matters. This exception "precludes federal courts from hearing cases that 'involve the issuance of a divorce, alimony, or child custody decree.'" *Ankenbrandt v. Richards*, 504 U.S. 689, 701-04 (1992). The doctrine's origins trace back to the Supreme Court's decision in *Ex parte Burrus*, a 1890 case which established that "issues of domestic relations are the province of state courts." *Id.* at 703.

In *Ankenbrandt*, the Supreme Court held that federal courts lack jurisdiction over cases that involve "the issuance of a divorce, alimony, or child custody decree." *Id.* The exception applies to cases where a plaintiff sues in federal court for divorce, alimony, or child custody, or seeks to modify or interpret an existing divorce, alimony, or child-custody decree. *Id.* at 704. The domestic relations

exception to federal jurisdiction bars this Court from hearing the plaintiff's claims. The exception precludes federal courts from issuing or modifying divorce, alimony, or child custody decrees, which is precisely what Plaintiff seeks in requesting restoration of parental rights and challenging state court custody determinations. While Plaintiff frames his claims in terms of constitutional violations, the substance of his complaint and the relief sought cannot be separated from domestic relations matters that are squarely within the exception. For these reasons, the plaintiff's claims should be dismissed for lack of subject matter jurisdiction under the domestic relations exception.

## Conclusion

For these reasons, Defendant requests that each claim asserted against her be dismissed for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) and failure to state a claim under 12(b)(6).

Respectfully submitted this 16th day of January 2026.

HENEFELD & GREEN, P.C.

/s/ Noah Green
Noah Green
Georgia Bar No. 468138
*Attorney for Defendant Claire Harvey*

3017 Bolling Way NE, Suite 129
Atlanta, Georgia 30305
(404) 841-1275
ngreen@henefeldgreen.com

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) in 14-point New Times Roman type face.

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day filed the foregoing *Defendant Claire M. Harvey's Motion to Dismiss Plaintiff's Amended Complaint and Brief in Support*, using the Court's CM/ECF system, which will automatically provide notice of same to all parties of record who are registered to receive notices. Additionally, the filing will be mailed to Plaintiff at this address of record, as follows:

Matthew Harvey
501 North Slappey Boulevard, #1112
Albany, Georgia 31701

This 16th day of January 2026.

HENEFELD & GREEN, P.C.

/s/ Noah Green
Noah Green
Georgia Bar No. 468138
*Attorney for Defendant Claire Harvey*

3017 Bolling Way NE, Suite 129
Atlanta, Georgia 30305
(404) 841-1275
ngreen@henefeldgreen.com