UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

FEB 0 3 2026

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

MATTHEW THOMAS HARVEY,      )
                            )
        Plaintiff,          )        CIVIL ACTION NO.
                            )        1:25-cv-04688-JPB
    v.                      )
                            )
CLAIRE M. HARVEY, et al.,   )
                            )
        Defendants.         )

## PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

COMES NOW Plaintiff Matthew Thomas Harvey, proceeding pro se, and respectfully submits this Consolidated Opposition to Defendants' Motions to Dismiss the First Amended Complaint. As set forth below, Defendants' motions rest on mischaracterizations of Plaintiff's claims and improper attempts to recast this civil action as a collateral attack on state domestic-relations orders. Plaintiff does not seek appellate review of any state-court judgment. Rather, the First Amended Complaint (FAC) [Doc. 44] alleges independent constitutional violations arising from Defendants' retaliatory and coercive use of state enforcement machinery under color of law. Taking the well-pleaded

1

allegations as true, as required at this stage, Defendants' motions should be denied.

## I. INTRODUCTION

This action arises from the retaliatory and coercive use of state power against Plaintiff in response to his exercise of protected rights. Following Plaintiff's efforts to assert constitutional objections and seek redress, Defendants allegedly engaged in a coordinated course of conduct that weaponized contempt proceedings, incarceration threats, probationary supervision, protective and no-contact conditions, and other enforcement mechanisms to punish Plaintiff and compel submission. These actions caused concrete constitutional injuries independent of the validity of any underlying domestic-relations orders.

Defendants' Motions to Dismiss [Docs. 46, 47, 47-1, 48, 49] rely on a fundamental mischaracterization of the FAC. Plaintiff does not ask this Court to review, modify, or invalidate any custody, support, or divorce decree. Instead, Plaintiff seeks damages and narrowly tailored relief for completed constitutional violations committed under color of state law—claims that can be adjudicated without disturbing any state-court judgment.

At the pleading stage, the Court's task is limited. Plaintiff need only allege facts that plausibly state claims for relief and that place

2

jurisdictional and affirmative defenses beyond resolution as a matter of law. The FAC satisfies that standard. Defendants' arguments concerning abstention, immunity, state action, and statute of limitations depend on disputed facts, improper legal assumptions, or both, and are therefore unsuitable for resolution on a motion to dismiss.

For these reasons, and as set forth more fully below, Defendants' Motions to Dismiss should be denied in their entirety.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleadings, not the merits of the claims. In evaluating such a motion, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. A complaint need only contain sufficient factual matter to state a claim for relief that is plausible on its face.

At this stage, the Court may not resolve disputed facts, weigh evidence, or assess credibility. Nor may the Court dismiss claims based on affirmative defenses—such as statute of limitations, abstention, or immunity—unless the applicability of such defenses is apparent on the face of the complaint.

Because Plaintiff proceeds pro se, his pleadings are entitled to liberal construction and must be held to a less stringent standard than

3

formal pleadings drafted by lawyers. When, as here, the FAC plausibly

alleges constitutional violations and factual disputes material to

Defendants' asserted defenses, dismissal at the pleading stage is

inappropriate.

## III. JURISDICTION IS PROPER AND ABSTENTION DOES NOT WARRANT DISMISSAL

Defendants' Motions to Dismiss rest on an improper reframing of

this action as a collateral attack on state domestic-relations

proceedings. That framing is inconsistent with the FAC and controlling

law. Federal jurisdiction does not turn on whether alleged misconduct

occurred in the context of family-court litigation, but on whether the

plaintiff seeks a de facto appeal of a state-court judgment or instead

alleges independent constitutional injuries. Behr v. Campbell, 8 F.4th

1206, 1212–13 (11th Cir. 2021).

### A. Claim-by-Claim Analysis Is Required

Jurisdiction must be assessed on a claim-by-claim basis. Behr, 8

F.4th at 1214. Plaintiff does not seek review, modification, or rejection

of any state-court custody, support, or divorce order. See Exxon Mobil

Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). Instead,

the FAC [Doc. 44] alleges independent constitutional violations arising

from Defendants' retaliatory and coercive use of state enforcement

4

machinery. Because these claims can be adjudicated without disturbing any state-court judgment, this Court has subject-matter jurisdiction.

## B. Rooker–Feldman Does Not Bar Plaintiff's Claims

The Rooker–Feldman doctrine is "narrow" and applies only where a plaintiff complains of injuries caused by a state-court judgment itself and invites federal review and rejection of that judgment. Exxon Mobil, 544 U.S. at 284; Behr, 8 F.4th at 1212. Plaintiff's alleged injuries are not "the judgment." They arise from Defendants' conduct—specifically, the weaponization of contempt proceedings, incarceration threats, probationary supervision, protective and no-contact conditions, and related enforcement mechanisms in response to Plaintiff's protected activity. See Behr, 8 F.4th at 1214–15 (claims challenging "unconstitutional conduct, not the state court judgments themselves," are not barred). Plaintiff could prevail on these claims without altering any state-court order. Accordingly, Rooker–Feldman does not bar jurisdiction.

## C. The Domestic-Relations Exception Does Not Apply

The domestic-relations exception is limited to cases seeking issuance or modification of divorce, alimony, or child-custody decrees. Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992). Plaintiff seeks federal-question relief for completed constitutional violations under §

5

1983; he does not ask this Court to exercise domestic-relations jurisdiction or to determine custody or support. The exception therefore has no application here.

## D. Younger Abstention Does Not Warrant Dismissal

Younger abstention applies only to limited categories of state proceedings. Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 72–73 (2013). Even where abstention principles constrain certain forms of prospective relief, dismissal is not warranted where a plaintiff seeks damages for completed constitutional violations. In such circumstances, the appropriate remedy is, at most, a stay—not dismissal—of affected claims. Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 730–31 (1996). Because Plaintiff seeks damages for completed constitutional injuries, Younger does not justify dismissal at the pleading stage.

## E. Defendants' Inconsistent Positions Underscore Why Dismissal Is Improper

Defendants simultaneously contend that they are no longer involved in any ongoing proceedings while also invoking abstention doctrines premised on continuing state involvement. Those inconsistent positions further confirm that Plaintiff's claims target independent constitutional injuries rather than the validity of any state-court

judgment, and that wholesale dismissal for lack of jurisdiction is
unwarranted.

## IV. RETALIATION AND COERCIVE ENFORCEMENT UNDER COLOR OF LAW

Plaintiff alleges that Defendants engaged in a coordinated course
of retaliatory and coercive conduct in response to his exercise of
protected rights, including his efforts to object to unconstitutional
procedures, seek judicial review, and petition for redress. Rather than
address Plaintiff's objections through lawful process, Defendants
allegedly weaponized state enforcement mechanisms—contempt
proceedings, incarceration threats, probationary supervision, protective
and no-contact conditions, and related sanctions—to punish Plaintiff
and compel compliance.

### A. Plaintiff Engaged in Protected Activity

The First Amendment protects the right to petition the
government for redress of grievances and to speak out against
perceived governmental misconduct. Retaliation for the exercise of
those rights is actionable under § 1983. See Hartman v. Moore, 547
U.S. 250, 256 (2006); Bennett v. Hendrix, 423 F.3d 1247, 1250–52 (11th
Cir. 2005). Plaintiff's protected activity includes objecting to

7

unconstitutional procedures, asserting due process violations, and seeking relief through judicial channels.

## B. Defendants Took Adverse Action Through Coercive State Machinery

To state a retaliation claim, a plaintiff must allege adverse action that would deter a person of ordinary firmness from exercising protected rights. Bennett, 423 F.3d at 1254. The FAC alleges such adverse action. Plaintiff was subjected to escalating enforcement measures, including threats of incarceration, actual confinement, probationary supervision, and restrictive protective or no-contact conditions, all imposed or threatened through state authority. The use of coercive state power as punishment for protected activity constitutes adverse action sufficient to state a retaliation claim.

## C. A Plausible Causal Connection Is Alleged

A plaintiff need only plausibly allege a causal connection between protected activity and adverse action at the pleading stage. Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008). The FAC alleges temporal proximity, escalating severity of sanctions following protected activity, and Defendants' reliance on state enforcement mechanisms to suppress further objection or resistance. Taken as true, these allegations plausibly support an inference of retaliatory motive.

8

## D. Retaliatory Use of Enforcement Mechanisms Also Violates Due Process

Beyond the First Amendment, the retaliatory deployment of coercive enforcement mechanisms implicates procedural and substantive due process. The Constitution forbids the use of government power for purposes of punishment or coercion without constitutionally adequate process, particularly where liberty interests are at stake. See County of Sacramento v. Lewis, 523 U.S. 833, 846–47 (1998). Plaintiff plausibly alleges that enforcement tools nominally available for lawful purposes were instead used pretextually and punitively to silence protected activity and compel submission, giving rise to independent due process violations.

## E. These Claims Are Distinct From Any Underlying Domestic-Relations Orders

Crucially, Plaintiff does not challenge the validity of any custody, support, or divorce order. The constitutional injury alleged here arises from Defendants' retaliatory and coercive conduct—how state power was used, not what the underlying orders provided. Because these claims challenge unconstitutional enforcement conduct rather than the existence or correctness of state-court judgments, they are cognizable under § 1983 and not barred by abstention or jurisdictional doctrines.

9

# V. USE OF THE PARENT–CHILD RELATIONSHIP AS A COERCIVE TOOL

The FAC plausibly alleges that the deprivation of Plaintiff's relationship with his child was not an incidental consequence of adjudication, but a deliberately engineered condition used to exert coercive pressure. From the outset of the underlying proceedings, separation was imposed through ex parte and coerced mechanisms, and that deprivation was thereafter leveraged to compel compliance, deter resistance, and punish Plaintiff for asserting his constitutionally protected rights.

## A. Separation Was Imposed Through Coercive, Non-Adjudicative Means

Plaintiff alleges that protective orders were obtained and enforced through ex parte and coerced processes that immediately deprived him of access to his child, without an adversarial hearing or findings commensurate with the severity of the deprivation. This separation was not the result of a neutral determination following full process; it was imposed at the inception of the case and functioned as a fait accompli.

Once imposed, the separation itself became the central pressure point in all subsequent proceedings.

10

## B. Deprivation Was Treated as a Self-Justifying "Status Quo"

After the initial separation, Defendants repeatedly invoked the
very deprivation they had engineered as justification for maintaining
and escalating restrictions. Plaintiff alleges that the loss of the
parent–child relationship was treated as a settled "status quo,"
insulating earlier coercive measures from meaningful review and
converting temporary, extraordinary restrictions into an enduring
condition.

This circular logic—where deprivation justifies its own
continuation—transformed provisional measures into coercive
leverage.

## C. Access to the Child Was Conditioned on Submission

The FAC plausibly alleges that relief from separation, and the
avoidance of further sanctions, were conditioned on Plaintiff's
acquiescence. When Plaintiff objected, sought review, or otherwise
exercised constitutionally protected rights, enforcement measures
intensified. When Plaintiff resisted, the deprivation persisted or
deepened.

In this way, the parent–child relationship functioned as the
primary coercive tool through which Defendants enforced compliance
and deterred further petitioning. Conditioning familial association on

silence or submission violates fundamental principles of due process.
The Constitution protects the parent–child relationship as a
fundamental liberty interest, and state power may not be used to
condition familial association on silence or submission. See Troxel v.
Granville, 530 U.S. 57, 65–66 (2000); Santosky v. Kramer, 455 U.S.
745, 753 (1982).

## D. This Claim Challenges Use of Power, Not Custody Merits

Plaintiff does not ask this Court to determine custody, assess
parental fitness, or substitute its judgment for that of a state court. He
challenges how state power was used—specifically, whether the
deprivation of the parent–child relationship was imposed and
maintained as a punitive and retaliatory measure.

That inquiry can be resolved without disturbing any custody
order. It requires only an examination of Defendants' conduct,
purposes, and use of enforcement authority.

## E. Coercive Deprivation Supports Liability and Tolling

The engineered loss of the parent–child relationship is central
not only to liability, but also to equitable tolling. Plaintiff alleges that
the fear of permanent separation from his child, coupled with
incarceration threats and escalating sanctions, created an
environment in which meaningful access to federal relief was

practically foreclosed. This coercive context explains both the retaliatory pattern and the extraordinary circumstances supporting tolling.

Whether the deprivation functioned as coercive leverage and whether it foreclosed meaningful access to relief are fact-intensive questions that cannot be resolved on a motion to dismiss. At the pleading stage, these allegations are more than sufficient to state a claim and to proceed to discovery.

## VI. DEFENDANTS ACTED UNDER COLOR OF STATE LAW THROUGH JOINT PARTICIPATION AND COERCIVE USE OF STATE AUTHORITY

Defendants contend that Plaintiff's claims fail because several Defendants are private parties and therefore did not act under color of state law. That argument misstates the governing standard and ignores the factual allegations of the FAC. Private actors act under color of state law when they are willful participants in joint activity with state officials or when they knowingly invoke and exploit state enforcement authority to accomplish an unconstitutional result. Lugar, 457 U.S. at 937–42.

### A. Governing Legal Standard

A private party acts under color of state law where "the deprivation [is] caused by the exercise of some right or privilege created by the State" and where the private party "may fairly be said to be a state actor." Lugar, 457 U.S. at 937. Joint participation with state officials, including judges or prosecutors, may satisfy this standard even if the state actor is immune from suit. Dennis v. Sparks, 449 U.S. 24, 27–28 (1980). Coordinated use of state machinery, rather than formal titles or employment status, is the touchstone of the inquiry. Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970).

At the pleading stage, a plaintiff need only allege facts that plausibly support an inference of joint participation or knowing use of state authority. Proof of agreement or conspiracy is not required at this juncture.

## B. Plausible Joint Participation Is Alleged

The FAC alleges that Defendants knowingly invoked and leveraged coercive state enforcement mechanisms—including contempt proceedings, incarceration threats, probationary supervision, protective and no-contact conditions, and related sanctions—to punish Plaintiff for asserting constitutional rights and to compel compliance. These mechanisms are uniquely governmental in nature and cannot be exercised without state authority.

14

Plaintiff does not allege that Defendants became state actors merely by participating in litigation. Rather, he alleges that Defendants used state power as an instrument of coercion and retaliation, setting enforcement machinery in motion and exploiting its consequences to achieve unconstitutional ends. Where private actors intentionally enlist state authority to impose deprivations that could not otherwise occur, they act under color of law. Lugar, 457 U.S. at 941–42.

## C. Temporal Link and Escalation Support Plausibility

The FAC further alleges a pattern of escalation temporally linked to Plaintiff's protected activity, supporting a plausible inference that enforcement actions were coordinated and retaliatory in nature. Enforcement measures intensified following Plaintiff's objections and attempts to seek review, and receded only when Plaintiff acquiesced. At the pleading stage, these allegations support a reasonable inference of joint participation in retaliatory conduct.

## D. Immunity of State Actors Does Not Shield Private Participants

Defendants' arguments improperly conflate judicial or quasi-judicial immunity with the absence of state action. Even where a judge or other state official is immune from suit, private parties who jointly

15

participate in the unconstitutional conduct are not thereby insulated. Dennis, 449 U.S. at 27–28. The relevant inquiry is whether Defendants' conduct is "fairly attributable to the State," not whether every participant is subject to liability. Lugar, 457 U.S. at 937.

Accordingly, the assertion of immunity by certain state actors does not defeat Plaintiff's allegations of joint participation by private Defendants at the pleading stage.

## E. State Action Is Adequately Alleged as to Each Defendant

Plaintiff alleges that each Defendant played a role in invoking, sustaining, or leveraging state enforcement authority to impose coercive deprivations. Whether Defendants' conduct ultimately satisfies the state-action requirement presents a fact-intensive inquiry inappropriate for resolution on a motion to dismiss. At this stage, the FAC plausibly alleges that Defendants acted under color of state law within the meaning of § 1983.

## VII. DEFENDANT-SPECIFIC ARGUMENTS

Defendants' Motions to Dismiss [Docs. 46, 47, 47-1, 48, 49] attempt to fragment Plaintiff's claims by isolating each Defendant's conduct and ignoring the coordinated use of state enforcement mechanisms alleged in the FAC. At the pleading stage, Plaintiff is not required to prove the full extent of each Defendant's participation, only

16

to allege facts plausibly showing personal involvement in or joint participation with unconstitutional conduct. The FAC satisfies that standard as to each Defendant.

## A. Defendant Claire Harvey

Defendant Harvey contends that she cannot be liable under § 1983 because she is a private individual and because the challenged conduct arose in the context of domestic-relations litigation. That argument misstates both the facts alleged and the governing law.

The FAC alleges that Claire knowingly invoked and exploited coercive state enforcement mechanisms—including protective orders, contempt proceedings, and incarceration threats—not merely to resolve domestic disputes, but to punish Plaintiff for asserting constitutional rights and to compel submission. Where a private party intentionally sets state enforcement machinery in motion to impose deprivations that could not otherwise occur, and then leverages those deprivations as coercive pressure, state action is plausibly alleged. Lugar, 457 U.S. at 941–42; Dennis, 449 U.S. at 27–28.

Plaintiff does not allege that Claire became a state actor merely by filing pleadings. He alleges that she knowingly participated in and benefited from the retaliatory use of state authority. Whether Claire's conduct ultimately satisfies the state-action requirement presents a

17

fact-intensive question inappropriate for resolution on a motion to dismiss.

## B. Defendants Kessler & Solomiany, LLC, Stefanie Potter, and Molly Teplitzky

Defendants K&S, Potter, and Teplitzky argue that attorneys cannot be liable under § 1983 for conduct undertaken in litigation. That argument overstates the scope of attorney immunity and ignores the nature of the conduct alleged.

The FAC does not allege mere advocacy or routine litigation activity. It alleges that these Defendants knowingly invoked, sustained, and escalated coercive state enforcement mechanisms—contempt, incarceration threats, probationary supervision, and restrictive conditions—to retaliate against Plaintiff for protected activity and to suppress further objection. Private attorneys who intentionally enlist state authority to impose unconstitutional deprivations act under color of law. Lugar, 457 U.S. at 937–42; Dennis, 449 U.S. at 27–28.

At the pleading stage, Plaintiff is not required to establish the precise contours of coordination between private and state actors. He need only allege facts supporting a plausible inference of joint participation in unconstitutional conduct. The FAC does so.

## C. Defendant Brandy Daswani

Defendant Daswani contends that she is entitled to dismissal on immunity and statute-of-limitations grounds. Neither argument warrants dismissal at this stage.

First, quasi-judicial immunity does not extend to conduct taken outside the scope of neutral fact-finding or undertaken as part of a retaliatory or coercive scheme. The FAC alleges that Daswani used her court-appointed role to influence enforcement outcomes, escalate coercive measures, and suppress Plaintiff's objections, rather than to serve as a neutral advisor to the court. Whether Daswani's conduct falls within the scope of any immunity is a fact-bound inquiry unsuitable for resolution on a motion to dismiss.

Second, the FAC plausibly alleges equitable tolling. Plaintiff alleges that the ongoing threat of incarceration, restrictive conditions, and the engineered deprivation of his relationship with his child created extraordinary circumstances that foreclosed meaningful access to federal relief until those coercive restraints were lifted. These allegations, taken as true, are sufficient to defeat dismissal on statute-of-limitations grounds at the pleading stage.

## D. Defendant Kim Oppenheimer

19

Defendant Oppenheimer similarly argues that Plaintiff's claims are time-barred and that her conduct was insulated by her professional role. The FAC plausibly alleges otherwise.

Plaintiff alleges that Oppenheimer's conduct was not isolated or discrete, but part of a coordinated course of conduct that contributed to coercive enforcement outcomes and retaliation for protected activity. Plaintiff further alleges that the same extraordinary circumstances supporting tolling as to other Defendants—incarceration threats, probationary supervision, and fear of further punitive consequences—also prevented timely assertion of claims against Oppenheimer.

Whether tolling applies, and whether Oppenheimer's conduct constituted joint participation in state action, are fact-intensive questions that cannot be resolved on a motion to dismiss.

## E. Summary

Taken as a whole, the FAC plausibly alleges that each Defendant played a role in invoking, sustaining, or leveraging coercive state authority to punish protected activity and compel submission. Defendants' attempts to isolate individual acts, invoke categorical immunity, or resolve factual disputes at the pleading stage are inconsistent with Rule 12 standards. Dismissal is therefore unwarranted.

## VIII. PROCEDURAL DEFENSES DO NOT WARRANT DISMISSAL

Defendants argue that Plaintiff's claims are time-barred. That contention fails because (1) the accrual dates Defendants propose are legally incorrect, (2) the FAC plausibly alleges equitable tolling, and (3) limitations defenses present fact-intensive questions inappropriate for resolution at the pleading stage.

## A. Accrual Is Tied to Constitutional Injury, Not Formal Case Milestones

Federal law governs accrual of § 1983 claims. A claim accrues when the plaintiff knows or has reason to know of the injury forming the basis of the action—not when a defendant later characterizes conduct as complete or discrete. Wallace v. Kato, 549 U.S. 384, 388 (2007).

The FAC alleges a pattern of retaliatory and coercive enforcement that unfolded over time through escalating use of contempt proceedings, incarceration threats, probationary supervision, protective and no-contact conditions, and deprivation of the parent–child relationship. These allegations do not describe a single, isolated event with a fixed accrual date. Rather, they describe constitutional

21

injury that materialized and became legally cognizable only once the coercive scheme and its effects were fully apparent.

## B. Equitable Tolling Is Plausibly Alleged

Defendants' statute-of-limitations arguments cannot be resolved on a motion to dismiss because the FAC plausibly alleges tolling-triggering circumstances and a fact-intensive accrual/tolling inquiry. Section 1983 borrows the forum state's limitations period and its coordinate tolling rules unless inconsistent with federal law. Bd. of Regents v. Tomanio, 446 U.S. 478 (1980); Hardin v. Straub, 490 U.S. 536 (1989).

Accrual turns on when Plaintiff knew or should have known of the injury and who caused it. See, e.g., Rozar v. Mullis, 85 F.3d 556 (11th Cir. 1996). The FAC plausibly alleges that Plaintiff's ability to recognize and safely pursue federal relief was materially impaired and practically foreclosed for extended periods by extraordinary circumstances, including:

- documented psychological disability and functional impairment;
- confinement and coercive restraint;

22

- ongoing probationary supervision and protective/no-contact
  conditions arising from the same enforcement machinery
  challenged here;

- credible threats of reincarceration or further sanction if
  Plaintiff spoke out or pursued relief; and

- Plaintiff's reasonable reliance on retained counsel repeatedly
  discouraging constitutional challenge and representing that
  resistance would exacerbate harm.

The FAC further alleges that these coercive restraints objectively
foreclosed meaningful access to courts well into late 2023, and that
after those restraints ended (in or around December 2023) and
Plaintiff's capacity to function and assess legal options materially
improved, Plaintiff acted with diligence and filed without undue delay.
At minimum, these allegations plausibly support tolling and require
factual development; dismissal at Rule 12 is improper.

## C. Standing Is Adequately Pleaded

Plaintiff has standing to seek damages for completed violations of
his constitutionally protected rights. Those injuries are concrete,
particularized, and traceable to Defendants' alleged conduct.

To the extent Plaintiff seeks limited prospective relief to prevent
ongoing retaliation, the FAC plausibly alleges a continuing threat of

harm. Should the Court conclude that prospective relief is unwarranted as to a particular defendant, the appropriate remedy is narrow tailoring—not dismissal of Plaintiff's damages claims.

## D. Defendants' Arguments Improperly Seek Factual Resolution

Defendants' statute-of-limitations arguments require the Court to resolve disputed facts concerning accrual, coercion, Plaintiff's ability to seek relief, and the effect of ongoing restraints. Rule 12 does not permit dismissal where the complaint plausibly alleges facts supporting tolling. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845–46 (11th Cir. 2004).

Accepting the FAC's allegations as true, Plaintiff has plausibly alleged that his claims are timely. Dismissal on statute-of-limitations grounds is therefore unwarranted.

## E. Service Does Not Support Dismissal

Defendants' service objections elevate form over substance. Defendant Oppenheimer executed and filed a waiver of service pursuant to Rule 4(d), appeared through counsel, and litigated the merits. She identifies no prejudice arising from the manner of service. Under these circumstances, dismissal is unwarranted.

To the extent the Court determines that any technical deficiency exists, the proper remedy is to permit cure, not dismissal. Plaintiff

respectfully requests leave to perfect service instanter pursuant to Rule 4(m) should the Court deem it necessary.

## IX. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss [Docs. 46, 47, 47-1, 48, 49] should be denied in substantial part. At minimum, Plaintiff's claims for damages arising from retaliatory and coercive enforcement conduct in violation of his constitutionally protected rights should proceed to discovery. Any narrowing of relief should be accomplished through tailored rulings, not wholesale dismissal.

Respectfully submitted this 29th day of January, 2026.

/s/ *Matthew Thomas Harvey*
**Matthew Thomas Harvey**
Plaintiff, pro se

c/o 501 North Slappey Blvd. #1112
Albany, Georgia 31701
Mharvey7744@gmail.com
(912) 346-5299

## CERTIFICATE OF SERVICE

I certify that on the date below, I served the foregoing *Plaintiff's*

*Consolidated Opposition to Defendant's Motions to Dismiss* as follows:

Via Email (counsel of record):

- Noah Green, counsel for Claire M. Harvey —

  ngreen@henefeldgreen.com

- Christine L. Mast & Jamie McDowell, counsel for Kessler &

  Solomiany, LLC; Stefanie S. Potter; Molly Y. Teplitzky —

  cmast@hpylaw.com; jmcdowell@hpylaw.com

- Tia Brown, counsel for Kim C. Oppenheimer —

  tbrown@hallboothsmith.com

- James R. Doyle, II, counsel for Brandy J. Daswani —

  james.doyle@lewisbrisbois.com

This 29th day of January, 2026.

> */s/ Matthew Thomas Harvey*
> **Matthew Thomas Harvey**
> Plaintiff, pro se

c/o 501 North Slappey Boulevard #1112
Albany, Georgia 31701
Mharvey7744@gmail.com
(912) 346-5299



# Click-N-Ship®

usps.com
$6.76
US POSTAGE

9400 1301 0935 5145 0248 66 0067 6000 1403 0303

 U.S. POSTAGE PAID 

01/29/2026
0 lb 14 oz

Mailed from 31701  364859712776200

## USPS GROUND ADVANTAGE™

MATTHEW HARVEY
501 N SLAPPEY BLVD PMB 1112
ALBANY GA 31701-1409

Created 2026-01-29

RDC 01

C039

 U.S. DISTRICT COURT, NORTHERN DISTRICT
CLERK OF COURT
75 TED TURNER DR SW
ATLANTA GA 30303-3315

### USPS TRACKING #



9400 1301 0935 5145 0248 66





CLEARED DATE
U.S. Marshals Service
Atlanta, GA 30303
FEB 0 3 2026

CLEARED DATE
U.S. Marshals Service
Atlanta, GA 30303
FEB 0 3 2026