



**SP 5 369 0522**

©2022 Swiss Re.  All rights reserved.

# Swiss Re Corporate Solutions America Insurance Corporation

## LOSS REPORTING PROCEDURES

Welcome to Swiss Re Corporate Solutions America Insurance Corporation, a member company of Swiss Re Corporate Solutions. We would like to take this opportunity to share our loss-reporting procedures. In the event of a loss or potential loss, please immediately complete and forward a First Notice of Loss on an ACORD Loss Form. If you do not use the ACORD Loss Form please otherwise provide the following information:

- Your Name and Contact Information (including e-mail address)
- Name of Insured/Policy Holder and/or Policy Number
- Contact Details of Insured Representative and Preferred Method of Contact
- Date of Loss
- Location of Loss
- Brief Summary of the Loss
- Contact Name(s) and e-Mail Address(es) for New Loss Acknowledgement Letter

Forward the New Loss Details by one of the following methods:

By e-mail:                    ClaimsNAFinPro_CorporateSolutions@swissre.com

By Mail:                      Swiss Re Corporate Solutions America Insurance Corporation
                              Attention: Corporate Solutions Claims
                              1200 Main Street, Suite 800
                              Kansas City, MO 64105

Please visit us on our website: www.swissre.com/corporatesolutions

This notice is for information only and does not become a part or condition of the policy.

EP CRP (11/18)

## Swiss Re Corporate Solutions America Insurance Corporation

*PROFESSIONALS ADVANTAGE FOR LAWYERS*[SM]

**LAWYERS PROFESSIONAL LIABILITY INSURANCE**

**Swiss Re Corporate Solutions America Insurance Corporation**
**(A Stock Insurance Company, hereinafter called the "Company")**

**Policy Number:** WLA339012187404
**Renewal of Policy:** WLA339012187403

**DECLARATIONS**

**NOTICE: THIS IS A CLAIMS-MADE AND REPORTED POLICY. EXCEPT AS MAY BE OTHERWISE PROVIDED HEREIN, THIS COVERAGE IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS WHICH ARE FIRST MADE AGAINST AN INSURED AND REPORTED TO THE COMPANY WHILE THE POLICY IS IN FORCE.**

A.  Named Insured:    BRANDY DASWANI, LLC

     Address:    2440 SANDY PLAINS RD
                  BLDG 27 STE 10
                  MARIETTA, GA 30066

B.  Policy Period:    From 12:01 A.M. 10-17-2025    To 12:01 A.M. 10-17-2026
                  Local time at the address stated herein

C.  Limits of Liability:  $  1,000,000    Per Claim
                     $  1,000,000    Aggregate for the Policy Period

D.  Deductible:    $    5,000    Per Claim

Claims Expenses are included within the Limit of Liability and Deductible.

E.  Premium:    $    2,010.00

F.  Retroactive Date: 5/10/2006

The Declarations and the forms listed on the attached Schedule of Form(s) and Endorsement(s), together with the completed and signed application and supplements, shall constitute the contract between the NAMED INSURED and the Company.

Swiss Re Corporate Solutions America Insurance Corporation

_____    _____
Date    Authorized Representative

Producer Copy

## *Swiss Re Corporate Solutions America Insurance Corporation*

**SCHEDULE OF FORM(S) AND ENDORSEMENT(S)**

The Declarations and the forms listed below and attached hereto, together with the completed and signed application and supplements, shall constitute the contract between the NAMED INSURED and the Company.

FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| SP 5 369 | 05-22 | POLICY JACKET |
| EP CRP | 11-18 | LOSS REPORTING PROCEDURES |
| SP 3 383 I | 02-06 | DECLARATIONS |
| SP 3 689 | 02-06 | SCHEDULE OF FORMS AND ENDORSEMENTS |
| SP 3 988 | 06-21 | GEORGIA STATE AMENDATORY ENDORSEMENT |
| SP 19 336 | 06-21 | PUNITIVE AND EXEMPLARY DAMAGES - GEORGIA |
| SP 3 389 | 07-11 | LIMITATION OF INDIVIDUAL PRIOR ACTS |
| SP 17 504 | 06-19 | LAWYERS PROFESSIONAL LIABILITY POLICY |

SP 3 689 0206

## Swiss Re Corporate Solutions America Insurance Corporation

### PROFESSIONALS ADVANTAGE FOR LAWYERS ℠

### GEORGIA AMENDATORY ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**The Endorsement changes the referenced sections of the Professional Advantage for Lawyers policy form.**

**CONDITIONS, TERMINATION**, is deleted and replaced by the following:

A.  The NAMED INSURED may cancel this POLICY by mailing or delivering to us advance written notice of cancellation stating a future date on which the POLICY is to be cancelled, subject to the following:

1.  If only the interest of the NAMED INSURED is affected, the effective date of cancellation will be either the date the Company receives notice from the NAMED INSURED or the date specified in the notice, whichever is later.  However, upon receiving a written notice of cancellation from the NAMED INSURED, the Company may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the NAMED INSURED;

2.  The receipt by the Company of the POLICY surrendered by the NAMED INSURED.  Any earned premium shall be computed in accordance with the customary short rate table and procedure;

3.  The transmittal to the Company of written notice of termination from the NAMED INSURED stating when thereafter such termination shall be effective. Any earned premium shall be computed in accordance with the customary short rate table and procedure;

B.  If the POLICY is terminated for failure to pay a premium when due, the effective date of cancellation shall be the date stated in a written notice of termination from the Company to the NAMED INSURED, provided such notice is received by the NAMED INSURED at least ten (10) days prior to the effective date of cancellation. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the POLICY PERIOD.   Any earned premium shall be computed in accordance with the customary short rate table and procedure;

C.  If the POLICY is terminated for any reason other than the reason stated in CONDITIONS TERMINATION, the effective date of cancellation shall be the date stated in a written notice of termination from the Company to the NAMED INSURED, provided such notice is received by the NAMED INSURED at least sixty (60) days prior to the effective date of cancellation. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the POLICY PERIOD.  Any earned premium shall be computed pro rata;

D.  If the Company increases the renewal premium for more than fifteen (15) percent (unless such increase in premium is due to a change in risk or exposure, including a change in experience modification) or changes any POLICY provision which limits or restricts coverage, the Company shall mail to the NAMED INSURED at the last mailing address known by the Company, written notice of such increase in premium  or limit or restriction of coverage at least forty-five (45) days prior to the expiration date of this POLICY.  If the increase in premium exceeds fifteen (15) percent, the notice shall include the dollar amount of the increase.  Delivery of written notice by the Company shall be equivalent to mailing; and

E.  The POLICY shall terminate upon expiration of the POLICY PERIOD as set forth in the Declarations;

Producer Copy

**CONDITIONS, OTHER INSURANCE** is deleted and replaced with the following:

**OTHER INSURANCE**

If there is other valid and collectible insurance under any other POLICY or policies applicable to a covered CLAIM under the POLICY, the POLICY shall share the CLAIM proportionally with of all such other insurance unless such other insurance is specifically written as excess insurance over the limits of liability provided in the POLICY.

All other terms and conditions of this policy shall remain unchanged.
This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Endorsement Effective  10/17/2025                              Policy No.  WLA339012187404
Named Insured  BRANDY DASWANI, LLC

Countersigned.                                                  Swiss Re Corporate Solutions America Insurance Corporation

_____
Authorized Representative                      President                   Secretary

SP 3 988 0621                                                                   Page 2 of 2

## *Swiss Re Corporate Solutions America Insurance Corporation*

***THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.***

**PUNITIVE AND EXEMPLARY DAMAGES ENDORSEMENT-GEORGIA**

**The Endorsement changes the referenced sections of the Professional Advantage for Lawyers policy form.**

**DEFINITIONS**, **LOSS**, is hereby deleted and replaced with the following:

> **"LOSS" MEANS** the monetary portion of any judgment, award or settlement, including compensatory, punitive or exemplary damages as a result of CLAIMS and WRONGFUL ACTS covered by this POLICY, provided always that LOSS shall not include:
>
> 1.    civil or criminal fines, penalties, fees or sanctions;
>
> 2.    matters deemed uninsurable by operation of law in the state in which the POLICY was issued;
>
> 3.    the multiplied portion of any multiple damages;
>
> 4.    the return by any INSURED of any fees or remuneration paid to any INSURED;
>
> 5.    any form of non-monetary relief; or
>
> 6.    any amount for which any INSURED is absolved from payment by reason of any covenant, agreement or court order or for any amount for which there is no legal recourse against an INSURED.

All other terms and conditions of this policy shall remain unchanged.
This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Endorsement Effective  10/17/2025                              Policy No.  WLA339012187404
Named Insured  BRANDY DASWANI, LLC

Countersigned.                                                        Swiss Re Corporate Solutions America Insurance Corporation

_____                    _____        _____
        Authorized Representative                                        President                        Secretary

SP 19 336 0621                                                                                        Page 1 of 1

## Swiss Re Corporate Solutions America Insurance Corporation

*PROFESSIONALS ADVANTAGE FOR LAWYERS* SM

**LIMITATION OF INDIVIDUAL PRIOR ACTS**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**Section IV. EXCLUSIONS** is amended to include the following exclusion:

This POLICY does not apply to any CLAIM based upon, arising out of or attributable to, or directly or indirectly resulting from a WRONGFUL ACT committed by the following INSURED(S) prior to the corresponding RETROACTIVE DATE(S):

INSURED:                                                                       RETROACTIVE DATE:

BRANDY DASWANI                                                    05/10/2006

All other terms and conditions of this policy shall remain unchanged.
This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Endorsement Effective  10-17-25                             Policy No.  WLA339012187404
Named Insured  BRANDY DASWANI, LLC

Countersigned.                                                      Swiss Re Corporate Solutions America Insurance Corporation

_____                          _____        _____
Authorized Representative                                       President                    Secretary

SP 3 389 0711                                                                                          Page 1 of 1

# Swiss Re Corporate Solutions America Insurance Corporation

### PROFESSIONALS ADVANTAGE FOR LAWYERS [SM]

### THIS IS A CLAIMS MADE AND REPORTED POLICY WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY.  PLEASE READ IT CAREFULLY.

**Swiss Re Corporate Solutions America Insurance Corporation**
**A Missouri Corporation**
**Jefferson City, Missouri**
**(Hereinafter referred to as the "Company")**

Mailing Address: 1200 Main Street, Suite 800  Kansas City, MO 64105

### LAWYERS PROFESSIONAL LIABILITY POLICY

In consideration of the payment of the premium, in reliance upon the statements in the application, its attachments and any materials submitted therewith, and subject to the Declarations and the terms and conditions of this POLICY (including any endorsements hereto), the Company agrees with the NAMED INSURED as follows:

**I.    INSURING AGREEMENTS**

**A.**    The Company shall pay on behalf of any INSURED all LOSS in excess of the deductible which any INSURED becomes legally obligated to pay as a result of CLAIMS first made against any INSURED during the POLICY PERIOD and reported to the Company in writing during the POLICY PERIOD or within sixty (60) days thereafter, by reason of any alleged WRONGFUL ACT occurring on or after the RETROACTIVE DATE, if any.

**B.**    The Company shall pay on behalf of any INSURED all LOSS in excess of the deductible which any INSURED becomes legally obligated to pay as a result of CLAIMS first made against any INSURED during the POLICY PERIOD and reported to the Company in writing during the POLICY PERIOD or within sixty (60) days thereafter, by reason of any PRIVACY EVENT or SECURITY FAILURE arising out of the rendering of PROFESSIONAL SERVICES occurring on or after the RETROACTIVE DATE, if any. The maximum combined LOSS and CLAIMS EXPENSES the Company shall pay for this INSURING AGREEMENTS Section I.B. is $100,000 per occurrence up to  any remaining  aggregate Limit of Liability, whichever is less.

**C.**    If, during the POLICY PERIOD, any INSURED first becomes aware of a POTENTIAL CLAIM and gives written notice of such POTENTIAL CLAIM to the Company during the POLICY PERIOD any CLAIMS subsequently made against any INSURED arising from the POTENTIAL CLAIM shall be considered to have been made during the POLICY PERIOD.

**PRE-CLAIM ASSISTANCE**: Until the date a CLAIM is made, the Company may pay for all costs or expenses it incurs as a result of investigating a POTENTIAL CLAIM that the INSURED reports to the Company during the POLICY PERIOD.  Any payments made by the Company shall be included within the applicable limit of liability and not in addition thereto. No deductible shall apply to Pre-Claim Assistance provided in this Paragraph C.

**II.    SUPPLEMENTAL COVERAGES**

For the Supplemental Coverages described in this Section II, unless otherwise indicated, the Company shall reimburse the NAMED INSURED up to $125,000 in the aggregate, or up to the remaining per claim Limit of Liability, whichever is less ("Supplemental Coverages Aggregate Limit"). Any payments made by the Company for Supplemental Coverages shall be included within the applicable limit of liability and not in addition thereto. The deductible shall not apply to the Supplemental Coverages. Coverage does not apply to any retainers for work or expenses not incurred, fines or monetary awards of any kind, judgments or settlements. The liability of the Company for all payments made under the Supplemental Coverages described in this Section II shall not exceed the Supplemental Coverages Aggregate Limit.

Producer Copy

**A.**     **DISCIPLINARY PROCEEDINGS**: The Company shall reimburse the NAMED INSURED for reasonable fees, costs and expenses, paid to third parties (other than an INSURED), incurred in defending a DISCIPLINARY PROCEEDING  first made against any INSURED during the POLICY PERIOD, and reported to the Company in writing during the POLICY PERIOD or within sixty (60) days thereafter.

**B.**     **REGULATORY INQUIRY**: The Company shall reimburse the NAMED INSURED for reasonable fees, costs and expenses, paid to third parties (other than an INSURED), incurred in the defense of a civil, administrative or regulatory written request for information, investigation or proceeding against any INSURED by a federal, state or foreign governmental authority arising out of a  PRIVACY EVENT or SECURITY FAILURE, first made against any INSURED during the POLICY PERIOD, and reported to the Company in writing during the POLICY PERIOD or within sixty (60) days thereafter.

**C.**     **MEDICARE, MEDICAID, and SCHIP EXTENSION ACT of 2007**: The Company shall reimburse the NAMED INSURED for reasonable attorney fees, costs and expenses paid to third parties (other than an INSURED) incurred in responding to a demand pursuant to the recovery rights of the Centers for Medicare and Medicaid Services (CMS) under the Medicare, Medicaid, and SCHIP Extension Act of 2007 (MMSEA).

**D.**     **SUBPOENA ASSISTANCE**: If, during the POLICY PERIOD, an INSURED first receives a subpoena for documents or testimony arising out of PROFESSIONAL SERVICES performed by an INSURED, and such INSURED requests the Company's assistance in responding to such subpoena, the Company will pay  the reasonable and necessary fees and costs charged by any lawyer designated  by the Company to provide the INSURED advice regarding the production of documents or to prepare or represent the INSURED for sworn testimony or deposition provided that:

     1.     the subpoena arises out of a lawsuit to which any INSURED is not a party; and

     2.     any INSURED has not been engaged to provide advice or testimony in connection with the lawsuit and the INSURED has not provided such advice or testimony in the past.

**E.**     **CRISIS EVENT EXPENSES**: The Company shall reimburse the NAMED INSURED for CRISIS EVENT EXPENSES that result from a CRISIS EVENT first occurring and reported to the Company during the POLICY PERIOD.

**F.**     **LOSS OF EARNINGS**: The Company shall reimburse up to $500 to each INSURED for each day for his or her attendance at the Company's request at trial, court-imposed hearing or arbitration proceeding involving a CLAIM.

**G.**     **SOLO PRACTICTIONER ASSISTANCE**: The Company shall reimburse an heir, executor, administrator or legal representative of a solo practitioner up to $5,000 per POLICY PERIOD for the reasonable and necessary legal services of a competent attorney who has been designated by the NAMED INSURED as part of a succession plan, if the NAMED INSURED dies or becomes medically incapacitated for a period of 5 business days verified by an independent medical examiner during the POLICY PERIOD.  Reimbursement will only include legal services and expenses to prevent neglect of the NAMED INSURED's client matters.

**H.**     **PRIVACY EVENT RESPONSE**: The Company shall reimburse the NAMED INSURED for reasonable fees, costs and expenses paid to third parties (other than an INSURED) incurred in responding to a PRIVACY EVENT up to $10,000 per PRIVACY EVENT and $20,000 in the aggregate for all PRIVACY EVENTS provided that such PRIVACY EVENT occurs during the POLICY PERIOD and is reported to the Company within three (3) calendar days of the PRIVACY EVENT.

**III.**     **DEFINITIONS**

As respects such insurance as is afforded by this POLICY, the following definitions shall apply:

**A.**     **"CLAIM" MEANS:**

     1.     a demand made upon any INSURED for LOSS, including, but not limited to, service of suit, or institution of arbitration proceedings or administrative proceedings against any INSURED; or

Producer Copy

2.    a request for any INSURED to toll or waive a statute of limitations.

**B.    "CLAIMS EXPENSES" MEANS:**

1.    fees charged by any lawyer, designated by the Company or required by law, to defend the INSUREDS; and

2.    if authorized by the Company, all other fees, costs and expenses resulting from the investigation, adjustment, defense or appeal of any CLAIM, including but not limited to:

    i.    all costs taxed against any INSURED and all interest which accrues after the entry of any judgment and before the Company has tendered or deposited, in court or otherwise, such judgment amount for which any INSURED is liable; and

    ii.    premiums on appeal bonds, in an amount not to exceed the Company's Limits of Liability, which are required for the appeal of a covered CLAIM. The Company shall have no obligation to apply for, guarantee or furnish any such bonds.

CLAIMS EXPENSES shall not include salaries and expenses of regular employees or officials of the Company. Nor shall CLAIMS EXPENSES include salaries or loss of earnings of any INSURED or expenses, fees or costs incurred by any INSURED.

**C.    "COMPUTER SYSTEM" MEANS** any computers and associated input and output devices, data storage devices, networking equipment, mobile devices, and back up facilities that are:

1.    operated by and either owned by or leased to the NAMED INSURED;

2.    operated by and either owned by or leased to any INSURED provided that any such computers, associated input and output devices, data storage devices, networking equipment, mobile devices and back up facilities are used in the rendering of PROFESSIONAL SERVICES on behalf of the NAMED INSURED; or

3.    systems operated by a third party service provider and used for the purposes of providing hosted computer application services to the NAMED INSURED for processing, maintaining, hosting or storing an INSURED'S electronic data, pursuant to a written contract between the NAMED INSURED and the third party service provider for such services.

**D.    "CONFIDENTIAL CLIENT INFORMATION" MEANS** confidential or proprietary information not available to the general public received by an INSURED in connection with an act, error or omission in the performance of PROFESSIONAL SERVICES regarding:

1.    An individual client's non-public personal or financial information, or protected health information; or

2.    An entity or organization's client commercial information.

**E.    "COUNTERFEIT" MEANS** to forge, falsely create, copy or imitate a document, without proper authority or right, by passing the document forged, falsely created, copied or imitated as original or genuine.

**F.    "CRISIS EVENT" MEANS** any:

1.    death, departure or debilitating illness of the managing partner, owner of a sole proprietorship, or practice group head;

2.    potential dissolution of the NAMED INSURED;

3.    incident of workplace violence;

4.    filing of an involuntary bankruptcy petition against the NAMED INSURED; or

Producer Copy

     5.    publication or anticipated imminent publication in a newspaper or other general print publication, or radio, television, or electronic news website (but not social media, including the interactive communication component of any website, application or platform, e.g., Facebook, Yelp, Avvo, etc.) of a POTENTIAL CLAIM or a covered CLAIM under the POLICY.

**G.**    **"CRISIS EVENT EXPENSES" MEANS** reasonable fees, costs, and expenses incurred by the NAMED INSURED for consulting services provided by a public relations firm to the NAMED INSURED in response to a CRISIS EVENT.

**H.**    **"DISCIPLINARY PROCEEDING" MEANS** any proceeding before a bar association, disciplinary board or similar entity or official to investigate charges alleging professional misconduct as a lawyer or other matters relating to attorney licensing and/or discipline. DISCIPLINARY PROCEEDING does not include any proceeding related to charges, investigations or actions filed with a regulatory agency or official, including without limitation, Securities Exchange Commission, the Internal Revenue Service, the U.S. Patent & Trademark Office or any similar agency.

**I.**    **"INSURED" MEANS:**

     1.    the NAMED INSURED;

     2.    any lawyer who is a past or present partner, officer, director, stockholder, shareholder, employee or "of counsel" of the NAMED INSURED, but only for PROFESSIONAL SERVICES rendered on behalf of the NAMED INSURED and only if a fee inured or would have inured (in the case of a contingency arrangement) to the NAMED INSURED for PROFESSIONAL SERVICES. No fee need inure to the INSURED for eleemosynary services performed with prior approval of the NAMED INSURED;

     3.    any lawyer listed in the application who is a partner, officer, director, stockholder, shareholder or employee of the NAMED INSURED at the time the CLAIM is made, but only for PROFESSIONAL SERVICES rendered by such individual lawyer while associated with a PRIOR FIRM, provided that there is no valid and collectible insurance under any other POLICY or policies applicable for the CLAIM for the individual lawyer. Not withstanding V. CONDITIONS H. OTHER INSURANCE, in the event the individual lawyer while associated with a PRIOR FIRM has valid and collectible insurance applicable for the CLAIM, then this POLICY shall be specifically excess over any other such POLICY;

     4.    any lawyer who has retired from the NAMED INSURED, but only for PROFESSIONAL SERVICES rendered prior to the date of retirement;

     5.    any past or present non-lawyer, employee or independent contractor attorney of the NAMED INSURED, but only for PROFESSIONAL SERVICES rendered on behalf of the NAMED INSURED;

     6.    the heirs, executors, administrators and legal representatives of any INSURED, but only in their capacity as such in the event of any INSURED'S death, incapacity or bankruptcy, and only for CLAIMS based on PROFESSIONAL SERVICES rendered prior to such INSURED'S death, incapacity or bankruptcy, and only to the extent that such INSURED would otherwise be covered by this POLICY; or

     7.    the legal spouse or domestic partner of an INSURED but only for CLAIMS resulting from PROFESSIONAL SERVICES provided by any INSURED on behalf of the NAMED INSURED.

**J.**    **"LOSS" MEANS** the monetary and compensatory portion of any judgment, award or settlement, provided always that any settlement is negotiated by the Company or with the Company's approval and that LOSS shall not include:

     1.    civil or criminal fines, penalties, fees or sanctions levied against an INSURED;

     2.    matters deemed uninsurable by operation of law;

Producer Copy

3.    punitive or exemplary damages;

4.    the multiplied portion of any multiple damages;

5.    the return by any INSURED of any fees or remuneration paid to any INSURED;

6.    any form of non-monetary relief or costs or fees incident thereto; or

7.    any amount for which any INSURED is absolved from payment by reason of any covenant, agreement or court order or for any amount for which there is no legal recourse against an INSURED.

**K.**    **"NAMED INSURED" MEANS** the person or entity listed in the Declarations and PREDECESSOR FIRM thereof.

**L.**    **"PERSONAL INJURY" MEANS** assault, battery, false arrest, detention, imprisonment, wrongful entry, eviction or other invasion of private occupancy, or abusive litigation (criminal or civil), abuse of process, libel, slander, defamation and violations of the right of privacy arising out of the performance of PROFESSIONAL SERVICES.

**M.**    **"POLICY" MEANS** this current Professionals Advantage for Lawyers form, the Declarations and the endorsements listed in the Declarations issued by the Company to the NAMED INSURED.

**N.**    **"POLICY PERIOD" MEANS** the period stated in the Declarations, unless terminated earlier pursuant to the TERMINATION section of this POLICY.

O.    **"POTENTIAL CLAIM" MEANS:**

1.    any act, error, omission, circumstance or PERSONAL INJURY which might reasonably be expected to give rise to a CLAIM against any INSURED under the POLICY; or

2.    any breach of duty to a client or third party which might reasonably result in a CLAIM against an INSURED.

P.    **"PREDECESSOR FIRM" MEANS** any legal entity to whose financial assets and liabilities the firm listed as the NAMED INSURED in the Declarations is the majority successor in interest.

Q.    **"PRIOR FIRM" MEANS** any law firm or professional corporation engaged in the private practice of law for which any lawyer listed in the application was a sole proprietor, partner, officer, director, stockholder, shareholder or employee prior to such lawyer joining the NAMED INSURED.

R.    **"PRIVACY EVENT" MEANS** failure to protect any CONFIDENTIAL CLIENT INFORMATION from theft, loss, or other misappropriation.

S.    **"PROFESSIONAL SERVICES" MEANS** services rendered to others in the INSURED'S capacity as a lawyer, either for a fee or eleemosynary.  The following services rendered by an INSURED lawyer will also be deemed to constitute PROFESSIONAL SERVICES:

1.    as an arbitrator, mediator, or other fact finding neutral;

2.    as a member, director or officer of any bar association, its governing board or any of its committees;

3.    as a member of a formal accreditation, ethics, peer review, licensing board, standards review or similar professional board or committee relating to the practice of law;

4.    as an Author, Publisher, or Presenter of legal research papers or legal materials, but only where direct compensation per publication or presentation is $25,000.00 or less;

5.    as a lobbyist, which for purposes of this definition means any licensed attorney who for compensation, acts on behalf of another person or entity, to communicate directly or indirectly with any public official, public servant, or candidate for public office for the express purpose of influencing or attempt to influence an executive, legislative or administrative action or inaction;

Producer Copy

6.    as an expert witness, if the INSURED was retained to offer expert opinion on issues related to the law, legal practice or procedures of the legal profession; or

7.    as an administrator, conservator, executor, guardian, trustee, escrow agent, receiver or court-appointed fiduciary.

When an INSURED, either a lawyer or a non-lawyer, acts as a notary public or title agent, the INSURED'S acts in such capacity shall be deemed to be the rendition of PROFESSIONAL SERVICES.

T.    **"RETROACTIVE DATE" MEANS** the date(s), as specified in the Declarations or in any endorsement attached hereto, for the NAMED INSURED and for the individual lawyers on or after which any WRONGFUL ACT must have occurred in order for CLAIMS arising therefrom to be covered under this POLICY. CLAIMS arising from any WRONGFUL ACT occurring prior to this date are not covered by this POLICY.

U.    **"SECURITY FAILURE" MEANS** the failure or violation of the security of a COMPUTER SYSTEM that results in or fails to mitigate any unauthorized access, unauthorized use, denial of service attack or receipt or transmission of a malicious code.

V.    **"TOTALLY AND PERMANENTLY DISABLED" MEANS** the INSURED is wholly prevented from working in his or her profession as a lawyer and the disability has continued for at least six (6) months, and an independent medical examiner opines that the disability will be continuous and permanent, and the disability did not result from self-inflicted injury, attempted suicide, or alcohol or drug abuse.

W.    **"WRONGFUL ACT" MEANS** any act, error, omission, circumstance, PERSONAL INJURY or breach of duty in the rendition of PROFESSIONAL SERVICES for others. "WRONGFUL ACT" does not mean or include a PRIVACY EVENT OR SECURITY FAILURE arising out of the rendering of PROFESSIONAL SERVICES.

## IV.    EXCLUSIONS

This POLICY shall not apply to any CLAIM based upon, arising out of, attributable to, or directly or indirectly resulting from:

A.    any PRIVACY EVENT OR SECURITY FAILURE resulting from:

1.    any act committed by an individual or individuals acting in an effort to coerce the civilian populations of the United States or to influence the policy or affect the conduct of any federal, state, provincial, or local government; or

2.    notwithstanding the provisions of Exclusion L, any failure of the INSURED to comply with any applicable privacy regulations found in the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") or any other federal or state law or regulation, governing any industry in which the INSURED is rendering PROFESSIONAL SERVICES.

B.    any WRONGFUL ACT occurring prior to the effective date of the POLICY PERIOD for this lawyers professional liability policy issued by the Company to the NAMED INSURED if, (a) the WRONGFUL ACT had previously been reported to any other insurance company; or (b) if any INSURED at the effective date of the POLICY PERIOD for this lawyers professional liability policy issued by the Company to the NAMED INSURED knew or could have reasonably foreseen that such WRONGFUL ACT might be expected to be the basis of a CLAIM.

C.    bodily injury to, or sickness, disease or death of any person. This exclusion does not apply to mental illness, emotional distress or humiliation directly arising from the rendition of PROFESSIONAL SERVICES.

D.    injury to, or destruction of tangible property or loss of use thereof. Tangible property includes but is not limited to any item of physical property on which data or programs are recorded, electronic data processing media, data, electronic data, programs and electronic computer programs.

Producer Copy

**E.**  the certification or acknowledgment by any INSURED, in his or her capacity as a Notary Public, of a signature on a document, (1) which the INSURED did not witness being placed on the document or (2) the failure of the INSURED to collect information required by law.

**F.**  any CLAIM made by any INSURED under this POLICY against any other INSURED under this POLICY unless such CLAIM arises out of PROFESSIONAL SERVICES by an INSURED rendered to such other INSURED as a client.

**G.**  any INSURED'S capacity as the beneficiary or distributee of any trust or estate or recipient of any non-probate transfer.

**H.**  any criminal, dishonest, malicious, fraudulent or intentionally wrongful or harmful:

1.  act, error, omission; or

2.  PERSONAL INJURY committed or ratified by an INSURED.

This exclusion applies to any INSURED who is adjudged or admits to have committed such acts.  This exclusion does not apply to any INSURED who did not commit, know or acquiesce in such WRONGFUL ACT which is the basis of the CLAIM.  The INSURED shall reimburse the Company for CLAIMS EXPENSES and LOSS paid if the commission of such acts are admitted or adjudged.  Criminal proceedings are not covered under this POLICY regardless of the allegations made against any INSURED. Terms provided in this Exclusion H do not apply to the specific acts as set forth in Exclusions J or O.

**I.**  any INSURED'S activities as an officer, director, partner, manager or employee of any company, corporation, operation, organization, partnership or association other than the NAMED INSURED or PRIOR FIRM, unless indicated as an additional INSURED or unless the activities are deemed to be the rendition of PROFESSIONAL SERVICES in the INSURED's capacity as a lawyer.

**J.**  any conversion, misappropriation or improper commingling of client, trust or other funds or property regardless of the cause of action or legal theory asserted in regard to such conversion, misappropriation or improper commingling.

**K.**  any PROFESSIONAL SERVICES rendered or that should have been rendered to or on behalf of any entity other than the NAMED INSURED, which, at any time, was (1) ten percent (10%) or more owned by any INSURED or combination of INSUREDS and/or any spouse(s) or domestic partner(s) of any INSURED; or (2) directly or indirectly controlled, managed or operated by any INSURED or any spouse(s) or domestic partner(s) of any INSURED.

**L.**  any violation or breach by any INSURED of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act, the Fair Labor Standards Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, the amendments thereto, the rules and regulations promulgated thereunder, or any similar provision of any federal, state or local statute, regulation or ordinance or common law.  This exclusion shall not apply if any INSURED is liable solely by reason of legal services rendered to clients.

**M.**  any conduct by any INSURED committed within the scope of or while acting in a capacity as a public official or an employee of a municipality or governmental body, subdivision, agency, department or unit unless the INSURED'S conduct is deemed to be such solely because the INSURED has rendered PROFESSIONAL SERVICES to such governmental body and remuneration for such PROFESSIONAL SERVICES inures to the benefit of the NAMED INSURED.

**N.**  any INSURED having gained any personal profit or advantage to which he or she was not legally entitled.

O.  the disbursement of funds:

1.  as the result of the deposit of a COUNTERFEIT check;

2.  without written verification from the issuing bank that the funds are valid and available;

3.    as the result of a fraudulent scheme; or

4.    from the failure to safeguard any funds or for any funds not reaching the proper party or the intended recipient, for any reason.

**P.**    based upon or arising out of any actual or alleged liability assumed by the INSURED in any express, implied, actual, constructive, oral or written contract, warranty, guarantee or promise, including liquidated damages or penalties of any nature pursuant to a contract or agreement of any kind, but this exclusion shall not apply to liability of the INSURED which would exist in the absence of such contract or agreement;

**Q.**    any failure:

1.    to password protect any COMPUTER SYSTEM including, but not limited to: (i) failure to disable any COMPUTER SYSTEM when the proper password is not provided within ten (10) attempts; or (ii) failure to password protect access to the INSURED'S wireless internet connection; or

2.    to securely delete any CONFIDENTIAL CLIENT INFORMATION from any retired COMPUTER SYSTEM or photocopy machine.

## V.    CONDITIONS

### A.    TERRITORY

This POLICY applies to WRONGFUL ACTS that occur anywhere in the world, but only if a CLAIM is made and brought in the United States of America, its territories or possessions or Canada.

### B.    REPORTING AND NOTICE

As a condition precedent to coverage under this POLICY, if a CLAIM is made against any INSURED, or if any INSURED becomes aware of any CLAIM, the INSURED(S) shall, as soon as practicable, but no later than sixty (60) days after termination of the POLICY PERIOD, provide written notice to the Company.

The INSURED(S) shall include within any notice of CLAIM or POTENTIAL CLAIM a description of the CLAIM or POTENTIAL CLAIM, the alleged WRONGFUL ACT including date(s) it was committed, a summary of the facts upon which the CLAIM or POTENTIAL CLAIM is based, the alleged or potential damage that may result, the names of actual or potential claimants, the names of INSURED(S) against whom the CLAIM was or may be made, and the date and circumstances by which the INSURED(S) first became aware of the CLAIM or POTENTIAL CLAIM.

Except as provided in Section V. CONDITIONS, I., any notice shall be effective on the date of receipt by the Company by any of the methods provided in the Loss Reporting Procedures notice.

### C.    DEFENSE, INVESTIGATION AND SETTLEMENT OF CLAIMS

As respects such insurance as is afforded by this POLICY:

1.    The Company shall have the right and duty to defend any CLAIM for LOSS against any INSURED covered by Section I. Insuring Agreement A., even if such CLAIM is groundless, false or fraudulent, and shall have the right to make such investigation, negotiation and settlement, subject to Section V. CONDITIONS C.2. below of any CLAIM as it deems expedient. Counsel that is mutually agreeable between the Company and the NAMED INSURED shall be selected from the Company's list of Lawyers Professional Liability Preferred Counsel. If no coverage exists for the CLAIM, the Company shall have the right to recover from the NAMED INSURED any LOSS paid and/or CLAIMS EXPENSES paid to defend the CLAIM.

Producer Copy

2. The Company will not settle a CLAIM without the written consent of the NAMED INSURED unless the NAMED INSURED cannot be located and contacted after reasonable efforts are made by the Company, or unless the settlement is made after a verdict or judgment has been rendered against an INSURED. The NAMED INSURED agrees not to unreasonably withhold such consent. The Company shall not be obligated to pay any LOSS or CLAIMS EXPENSES or defend or continue to defend any CLAIM after the "Per Claim Limit of Liability" or "Aggregate Limit of Liability" under this POLICY has been exhausted by payment of LOSS and/or CLAIMS EXPENSES, or the deposit in a court having jurisdiction of sums exhausting the "Per Claim Limit of Liability" or "Aggregate Limit of Liability."

Except for reasonable fees, costs and expenses incurred in responding to a DISCIPLINARY PROCEEDING, no INSURED shall, without the prior written consent of the Company, post-WRONGFUL ACT or CLAIM, agree to arbitration or any similar means of resolution (unless to resolve a fee dispute). Further, no INSURED shall, without the prior written consent of the Company, incur any CLAIMS EXPENSES, make any admission or payment, admit liability, settle any CLAIMS, assume any obligation, or waive any rights.

If an INSURED is entitled to independent counsel (in those instances where the Company agrees to defend a CLAIM, and the Company reserves its rights to deny coverage on grounds which create an actual conflict of interests between an INSURED and the Company, and the INSURED does not waive the conflict), then the INSURED may select independent counsel. Such counsel shall have at least five (5) years of experience in the defense of similar CLAIMS, and maintain error and omissions insurance coverage. The INSURED and independent counsel shall provide full information, documentation and cooperation with respect to the defense, investigation and settlement of any CLAIM. The Company shall be liable only for reasonable and necessary defense costs at rates customarily paid by the Company for the defense of similar CLAIMS in the geographic area where the CLAIM is being defended.

**D.    COOPERATION**

1. All INSUREDS shall cooperate with the Company in providing information requested by the Company regarding any CLAIM, POTENTIAL CLAIM or DISCIPLINARY PROCEEDING reported under the POLICY. All INSUREDS shall cooperate with the Company in the investigation of any DISCIPLINARY PROCEEDING and in the defense, investigation and settlement of any CLAIM. Upon the Company's request, the INSURED shall submit to examination or questioning under oath, attend hearings, depositions and trials and assist in effecting settlements, securing and giving evidence, and obtaining the attendance of witnesses in the conduct of suits.

2. All INSUREDS shall assist the Company in effecting any rights of indemnity, contribution or apportionment available to any INSURED or the Company, including the execution of such documents as are necessary to enable the Company to pursue CLAIMS in the INSUREDS' names, and shall provide all other assistance and cooperation which the Company may reasonably require.

3. The Company shall be subrogated to all INSUREDS' rights of recovery against any person or organization. The INSURED shall execute all papers required by the Company and shall do everything that may be necessary to preserve, secure and pursue such rights for the Company, including the execution of such documents as may be necessary to enable the Company to bring suit in the name of the INSURED. All INSUREDS shall cooperate with the Company and do nothing to jeopardize, prejudice or terminate such rights.

**E.    LIMITS OF LIABILITY**

All limits of liability shall apply in excess of the deductible. Amounts paid by the Company for all CLAIMS EXPENSES and amounts paid in satisfaction of CLAIMS are subject to and reduce the applicable limit of liability.

Producer Copy

All CLAIMS EXPENSES shall first be subtracted from the applicable "Per Claim Limit of Liability," with the remainder, if any, being the amount available to pay LOSS. The liability of the Company for the combined total of all LOSS and CLAIMS EXPENSES for a covered CLAIM shall not exceed the amount stated in the Declarations as "Per Claim Limit of Liability."

The liability of the Company for the combined total of all LOSS and CLAIMS EXPENSES for all covered CLAIMS shall not exceed the amount stated in the Declarations as "Aggregate Limit of Liability."

**F.    DEDUCTIBLE**

The deductible, as stated in the Declarations, shall apply to each CLAIM and shall be paid by the NAMED INSURED. The reduction in deductible applies to per claim deductibles and aggregate deductibles. The deductible shall be first applied to all CLAIMS EXPENSES with the remainder, if any, being applied to LOSS. CLAIMS EXPENSES shall be included within the deductible and the limit of liability and not in addition thereto. Payment of the deductible shall be made by the NAMED INSURED within thirty (30) days of receipt of demand by the Company. No deductible shall apply to any CLAIM that results from eleemosynary PROFESSIONAL SERVICES. In the event that a CLAIM is eligible for more than one deductible reduction incentive below, no deductible will be reduced by more than 50%, not to exceed $12,500.

1.    The deductible, as stated in the Declarations, will be reduced by 50% for any CLAIM, not to exceed a reduction of $12,500, if any INSURED delivered a written communication to the identified client(s) prior to the commencement of legal services for the specific matter that forms the basis of the CLAIM and the written communication was timely countersigned and returned to the INSURED, provided that the written communication contains all of the following:

   a.    a clear and accurate identification of the client(s);

   b.    a detailed description of the scope of the services to be rendered;

   c.    any activities excluded from the scope of engagement;

   d.    the fees for service;

   e.    specifics of any client responsibilities; and

   f.    any written statement required by the Rules of Professional Conduct.

   A written communication that refers to a general engagement and not a specific task/service/matter will not qualify for this deductible reduction.  The services detailed in the written communication must be related to the CLAIM.  If the scope of the engagement changes, the INSURED must have communicated the change in scope to the client(s) in writing at the time the parties agreed to the change in scope. If the INSURED has paid more than 50% of the deductible, the Company will reimburse the INSURED the amount paid in excess of 50% of the deductible within sixty (60) days of receipt by the Company of written request by the INSURED.

2.    The deductible, as stated in the Declarations, will be reduced by 50% not to exceed a reduction of $12,500 for each CLAIM that is resolved within 365 days of receipt by the Company of the CLAIM, or within 365 days of receipt by the Company of the POTENTIAL CLAIM, whichever occurs first, and for an amount recommended to the INSURED by the Company, except if the CLAIM is resolved after the commencement of:

   a.    a trial for the full adjudication of the CLAIM in a court of law;

   b.    a motion for summary judgment by any party; or

   c.    a hearing in binding arbitration of the CLAIM.

Producer Copy

If the CLAIM is not fully and finally resolved within the period of time described above, there shall be no reduction in the deductible. If the CLAIM is resolved and the INSURED has paid more than 50% of the deductible, the Company will reimburse the INSURED the amount paid in excess of 50% of the deductible within sixty (60) days of receipt by the Company of written request by the INSURED.

**G.   MULTIPLE INSUREDS, CLAIMS AND CLAIMANTS**

The inclusion of more than one INSURED in any CLAIM or the making of CLAIMS by more than one person or organization shall not increase the limits of liability or the deductible. Two or more CLAIMS arising out of a single WRONGFUL ACT or a series of related or continuing WRONGFUL ACTS, shall be a single CLAIM. All such CLAIMS whenever made shall be considered first made on the date on which the earliest CLAIM was first made arising out of such WRONGFUL ACT and all such CLAIMS are subject to one "Per Claim Limit of Liability" and deductible.

**H.   OTHER INSURANCE**

If there is other valid and collectible insurance under any other POLICY or policies applicable to a covered CLAIM under the POLICY, the POLICY shall be deemed excess insurance over and above the applicable limits of liability of all such other insurance unless such other insurance is specifically written as excess insurance over the limits of liability provided in the POLICY.

**I.   TERMINATION**

The POLICY shall terminate at the earliest of the following:

1.   if the POLICY is terminated for failure to pay a premium when due, upon the effective date of cancellation stated in a written notice of termination from the Company to the NAMED INSURED, provided such notice is received by the NAMED INSURED at least ten (10) days prior to the effective date of cancellation. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the POLICY PERIOD. Any earned premium shall be computed pro rata;

2.   if the POLICY is terminated by the Company for any reason, other than the reason stated in Section V. CONDITIONS, I.1., upon the effective date of termination stated in a written notice of termination from the Company to the NAMED INSURED, provided such notice is received by the NAMED INSURED at least sixty (60) days prior to the effective date of termination. The mailing of such notice shall be sufficient notice and the effective date of termination stated in the notice shall become the end of the POLICY PERIOD. Any earned premium shall be computed pro rata;

3.   upon the receipt by the Company of the POLICY surrendered by the NAMED INSURED. Any earned premium shall be computed in accordance with the customary short rate table and procedure;

4.   upon the transmittal to the Company of written notice of termination from the NAMED INSURED stating when thereafter such termination shall be effective. Any earned premium shall be computed in accordance with the customary short rate table and procedure;

5.   upon expiration of the POLICY PERIOD as set forth in the Declarations; or

6.   upon the effective date of termination stated in the written notice of the Company of their intent not to renew the POLICY in accordance with applicable law.

In the event of any termination of coverage except as provided in this Paragraph I.1. above, there is an Automatic Sixty (60) Day Extended Claim Reporting Period commencing upon POLICY termination for CLAIMS first made against any INSURED during the POLICY PERIOD.

Not later than thirty (30) days after the termination of coverage, the Company will mail or deliver to the NAMED INSURED written notice of the Automatic Sixty (60) Day Extended Reporting Period and the availability of, premium for, and importance of purchasing one of the additional Extended Reporting Period options offered.

**J.    EXTENDED REPORTING PERIOD**

If the Company or the NAMED INSURED shall cancel or non-renew the POLICY, the NAMED INSURED shall have the right to extend the time for reporting CLAIMS made against any INSURED under the POLICY per the following schedule. The additional premium for the Extended Reporting Period shall be:

| Extended Reporting Period | Additional Premium |
|---|---|
| 12 months | 100% of the last annual premium of this POLICY |
| 24 months | 150% of the last annual premium of this POLICY |
| 36 months | 185% of the last annual premium of this POLICY |
| 60 months | 230% of the last annual premium of this POLICY |
| Unlimited | 250% of the last annual premium of this POLICY |

If the NAMED INSURED exercises the Extended Reporting Period option, the coverage shall apply only to CLAIMS for WRONGFUL ACTS which occurred prior to the end of the POLICY PERIOD and on or after the RETROACTIVE DATE, if any, which are otherwise covered by the POLICY and which are first made against this INSURED and reported to the Company during the Extended Reporting Period.

This right to purchase the Extended Reporting Endorsement is subject to the following conditions:

1.    the INSURED exercising the Extended Reporting Period option has not had his or her professional license to practice law suspended or surrendered at the request of any disciplinary or regulatory authority;

2.    the POLICY was cancelled or non-renewed for reasons other than non-payment of premium;

3.    any deductible amounts due the Company have been paid;

4.    the INSURED has complied with all of the terms and conditions of the POLICY; and

5.    the NAMED INSURED must send written notice to the Company of the intention to purchase the Extended Reporting Endorsement accompanied by the additional premium. Written notice and premium payment must be received by the Company no later than sixty (60) days after the termination date of the POLICY PERIOD.

Separate or new limits do not apply to the Extended Reporting Period. This option to extend the reporting period does not extend the POLICY PERIOD. The purchase of the Extended Reporting Period shall not in any way increase the limit of liability stated in the Declarations. If the Extended Reporting Period option is exercised, then such period shall be part of and not in addition to the last POLICY PERIOD. Any CLAIM made during the Extended Reporting Period shall be deemed to have been made during the immediately preceding POLICY PERIOD. The entire premium for this option shall be deemed fully earned at the commencement of the Extended Reporting Period. The first sixty (60) days of the Extended Reporting Period option, if purchased, shall run concurrently with the Automatic Extended Reporting Period.

Producer Copy

K.    **NON-PRACTICING EXTENDED REPORTING PERIOD OPTIONS**

For all Non-Practicing Extended Reporting Period options listed below:

i.    the coverage shall apply only to CLAIMS for WRONGFUL ACTS which occurred prior to the end of the POLICY PERIOD and on or after the RETROACTIVE DATE, if any, which are otherwise covered by the POLICY and which are first made against this INSURED and reported to the Company during this Non-Practicing Extended Reporting Period; and

ii.    the extended reporting period does not extend the POLICY PERIOD. Any Non-Practicing Extended Reporting Period option shall be part of and not in addition to the last POLICY PERIOD. Non-Practicing Extended Reporting Period shall not in any way increase the limit of liability stated in the Declarations. Any CLAIM made during this Non-Practicing Extended Reporting Period shall be deemed to have been made during the immediately preceding POLICY PERIOD. The first sixty (60) days of the Non-Practicing Extended Reporting Period Option, if endorsed to the POLICY, shall run concurrently with the Automatic Extended Reporting Period.

1.    Any individual owner, partner, officer, director, stockholder, shareholder or employee of the NAMED INSURED who, during the POLICY PERIOD, retires or voluntarily ceases, permanently and totally the private practice of law, shall be entitled, at no additional premium, to an unlimited period for reporting CLAIMS first made against this INSURED. The right to this retirement Non-Practicing Extended Reporting Period is subject to the following conditions:

a.    the INSURED exercising the Non-Practicing Extended Reporting Period option has not had his or her professional license to practice law suspended or surrendered at the request of any disciplinary or regulatory authority;

b.    the INSURED has been continuously insured by the Company and/or another lawyers professional liability insurance carrier for at least three full consecutive years;

c.    the POLICY was not cancelled for non-payment of premium or non-renewed;

d.    the INSURED exercising this option has complied with all of the terms and conditions of the POLICY; and

e.    the INSURED gives written notification of retirement or the termination of the private practice of law within sixty (60) days after the termination date of the POLICY PERIOD.

This Non-Practicing Extended Reporting Period option is provided until the INSURED resumes the private practice of law.

2.    Any individual partner, officer, director, stockholder, shareholder or employee of the NAMED INSURED who, during the POLICY PERIOD, retires or otherwise ceases the private practice of law, and who has not been continuously insured by the Company and/or another lawyers professional liability insurance carrier for at least three full consecutive years, shall have the right to extend the time for reporting CLAIMS first made against this INSURED per the following schedule. The additional premium for this Non-Practicing Extended Reporting Period shall be:

| Extended Reporting Period | Additional Premium |
|---|---|
| 12 months | 100% of per lawyer annual premium of this POLICY |
| 24 months | 150% of per lawyer annual premium of this POLICY |
| 36 months | 185% of per lawyer annual premium of this POLICY |
| 60 months | 230% of per lawyer annual premium of this POLICY |
| Unlimited | 250% of per lawyer annual premium of this POLICY |

Producer Copy

This right to purchase this Non-Practicing Extended Reporting Endorsement is subject to the following conditions:

a.   the license of the INSURED exercising the Non-Practicing Extended Reporting Period option to practice his or her profession has not been revoked, suspended or surrendered at the request of any disciplinary or regulatory authority for reasons other than the INSURED exercising the Non-Practicing Extended Reporting Period option becoming TOTALLY AND PERMANENTLY DISABLED, by the time that the right could be exercised;

b.   the POLICY was not cancelled for non-payment of premium or non-renewed;

c.   the INSURED exercising this Non-Practicing Extended Reporting Period option has complied with all of the terms and conditions of the POLICY;

d.   the INSURED exercising this Non-Practicing Extended Reporting Period option must send written notice to the Company of the intention to purchase this Non-Practicing Extended Reporting Endorsement accompanied by the additional premium. The Company must receive written notice and premium payment no later than sixty (60) days after the termination date of the POLICY PERIOD.

3.   If an INSURED dies during the POLICY PERIOD as a result of reasons other than self-inflicted injury, suicide, or alcohol or drug abuse, then the period for reporting CLAIMS is extended at no additional premium until the executor or administrator of the estate is discharged, provided that the estate, heir or administrator gives written notification and written proof of the date of death to the Company within 60 days of the death of the INSURED. The deductible requirement of the POLICY will be waived for CLAIMS first made against the INSURED during the Non-Practicing Extended Reporting Period.

4.   If an INSURED becomes TOTALLY AND PERMANENTLY DISABLED during the POLICY PERIOD, and has been continuously insured by the Company for at least two (2) consecutive years, then the period for reporting CLAIMS is extended at no additional premium until the death of the INSURED or until the INSURED is no longer TOTALLY AND PERMANENTLY DISABLED, provided that:

a.   the INSURED or the INSURED'S legal guardian provides written notice of the disability to the Company no later than sixty (60) days after the termination date of the POLICY PERIOD;

b.   the INSURED or the INSURED'S legal guardian provides a physician's written certification of the disability including the date the disability commenced; and

c.   the INSURED agrees to submit to a medical examination at the Company's expense by any physician(s) designated by the Company. The deductible requirement of the POLICY will be waived for CLAIMS first made against the INSURED during the Non-Practicing Extended Reporting Period.

The additional premium and deductible requirement for this Non-Practicing Extended Reporting Period will be waived for an INSURED who is leaving the private practice of law to become either a state or federal judge.

**L.   ACTION AGAINST THE COMPANY**

No action shall lie against the Company unless, as a condition precedent thereto, all INSUREDS shall have fully complied with all the terms and conditions of the POLICY, and not until the amount of all INSUREDS' obligations to pay has been finally determined either by judgment against all INSUREDS after actual trial or by written agreement of the NAMED INSURED, the claimant and the Company.

Producer Copy

Any person, organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this POLICY to the extent of the insurance afforded by this POLICY.

Nothing contained in the POLICY shall give any person or organization any right to join the Company as a co-defendant in any action against any INSURED to determine any INSURED'S liability. Bankruptcy or insolvency of any INSURED or any INSURED'S estate shall not relieve the Company of any of its obligations hereunder.

**M.   CHANGES**

No change or modification of this POLICY shall be effective except when made by a written endorsement to this POLICY.

**N.   ACQUISITIONS AND MERGERS**

If during the POLICY PERIOD, any of the following events occur:

1.   the NAMED INSURED merges with or acquires any other law firm or group of attorneys who practiced together at another law firm;

2.   the NAMED INSURED has fewer than five (5) attorneys and the number of attorneys increases by more than three (3) attorneys; or

3.   the NAMED INSURED has five (5) or more attorneys and the number of attorneys increases by more than 50%

the NAMED INSURED shall give written notice to the Company within sixty (60) days.  The Company shall have the right to modify the terms and conditions of the POLICY, including premium.

**O.   NO ASSIGNMENT**

Neither this POLICY nor any INSURED'S interest in this POLICY may be transferred or assigned.

**P.   APPLICABLE LAWS**

Any terms of the POLICY which are in conflict with any laws and regulations governing the POLICY are hereby amended to conform to such laws and regulations.

**Q.   WAIVER**

The Company's failure to insist on strict compliance with any of the terms, provisions or conditions to coverage of the POLICY or the failure to exercise any right or privilege shall not operate or be construed as a waiver thereof or of any subsequent breach thereof or a waiver of any other terms, provisions, conditions, privileges or rights.

**R.   LIBERALIZATION**

If the Company adopts any revision that would broaden coverage under this POLICY without additional premium at any time during the POLICY PERIOD, the broadened coverage will immediately apply to this POLICY except that it will not apply to CLAIMS that were first made against the INSURED prior to the effective date of such revision.

Producer Copy

S.    **ENTIRE AGREEMENT**

By acceptance of this POLICY, all INSUREDS reaffirm as of the effective date of this POLICY that (a) the statements in the application(s) and all information communicated by the INSUREDS to the Company, and all INSUREDS' agreements and representations, are true and accurate, (b) this POLICY is issued in reliance upon the truth and accuracy of such representations which are material to the Company's issuance of this POLICY and (c) this POLICY embodies all agreements between all INSUREDS and the Company or any of its agents relating to this insurance. No representations by any person shall have any force or effect, except as included within this written agreement. Notwithstanding any provision in the POLICY or application, the application should not be considered part of the POLICY.

T.    **HEADINGS**

The descriptions in the headings of this POLICY are solely for convenience and form no part of the terms and conditions of coverage.

**This POLICY is not valid unless completed by the attachment of the Declarations.**

Swiss Re Corporate Solutions America Insurance Corporation

President                                  Secretary

Producer Copy