UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MATTHEW THOMAS HARVEY,

Plaintiff,

v.

CLAIRE M. HARVEY, et al.,

Defendants.

CIVIL ACTION NO.
1:25-CV-04688-JPB

## ORDER

This matter comes before the Court on four Motions to Dismiss filed by Kim C. Oppenheimer; Kessler & Solomiany, LLC; Stefanie S. Potter; Molly Y. Teplitzky; Claire M. Harvey; and Brandy J. Daswani (together, "Defendants"). [Doc. 46]; [Doc. 47]; [Doc. 48]; [Doc. 49]. Also before the Court are Matthew Thomas Harvey's ("Plaintiff") Motions for Leave to File Electronically [Doc. 6]; [Doc. 8], Motions for Leave to Effect Alternative Service [Doc. 7]; [Doc. 21] and Motion for Recusal [Doc. 35]. The Court finds as follows:

## BACKGROUND

The following facts are taken from Plaintiff's Amended Complaint and are accepted as true for purposes of this Order.

Plaintiff was married to Defendant Harvey.  [Doc. 44, p. 3].  On October 29, 2020, Plaintiff proposed that the couple have a "trial separation" for "the third time in the span of roughly one year."  Id. at 4.  On November 2, 2020, however, Defendant Harvey decided to "pursue[] a litigation strategy designed to obtain immediate leverage in anticipated custody and divorce proceedings through emergency and ex parte mechanisms."  Id. at 5.  Though the Amended Complaint alleges that this "litigation strategy" decision was made first, it also alleges that there was a "non-violent event" that led to police responding to the couple's home the same day.  Id.  Officers made no arrests and declined to remove Plaintiff from the home, but they permitted Defendant Harvey to leave the home along with the couple's child.  Id.

The day after this incident, Defendant Harvey obtained a Temporary Protective Order ("TPO") from the Superior Court of Cobb County, Georgia.  Id. at 6.  The Amended Complaint goes on to allege that Plaintiff was later "coerced" under "extreme duress" into signing a Temporary Consent Order ("TCO") that took the place of the TPO.  Id.  These orders restricted Plaintiff's liberty, preventing him from living at the couple's home and from having contact with his child.  Id.

The rest of the Amended Complaint outlines the course of the remaining divorce and custody proceedings.  It alleges that Defendant Harvey and her lawyers "pushed for" the appointment of Defendant Daswani as a guardian ad litem in the state court proceedings.  Id. at 7.  Later on, Defendant Harvey and her counsel brought a motion for contempt based on Plaintiff's alleged violations of the TCO.  Id. at 8.  The Amended Complaint alleges that, in the course of the contempt proceedings, Defendant Daswani engaged in private communications with Defendant Harvey's counsel to create a false narrative about Plaintiff.  Id. at 9.  Defendant Daswani also supplied Plaintiff's confidential health and therapy records at a meeting between her, the judge, Defendant Harvey's counsel and Plaintiff's counsel.  Id.

At the contempt hearing, Plaintiff alleges that he was "not afforded a full opportunity to speak" and that his "insistence that the TCO had been executed under duress was ignored."  Id.  The proceeding resulted in the judge ordering that Plaintiff be incarcerated, though he was eventually transferred to an inpatient psychiatric facility and later to an intensive outpatient program.  Id. at 10.  The Amended Complaint alleges that the contempt proceeding resulted in Plaintiff being deprived of all contact with his child for an indefinite period.  Id.

Without much explanation, Plaintiff next alleges that "the presiding judge sought criminal charges against Plaintiff arising out of the same underlying custody dispute." Id. at 11. He contends that felony charges were pursued against him without a grand jury indictment. Id. He was arrested in October 2021 and was released after initially being denied bail. Id. Being incarcerated led Plaintiff to experience "escalating PTSD symptoms, frequent night terrors, and persistent fear of renewed incarceration." Id.

As the civil case went on, a psychologist—Defendant Oppenheimer—was appointed by the court to evaluate both Plaintiff and Defendant Harvey. Id. at 12. Defendants Harvey and Oppenheimer met on three occasions. Id. The Amended Complaint alleges that Defendant Daswani communicated with Defendant Oppenheimer prior to these meetings and "further[ed] the false narrative" that she had developed about Plaintiff. Id. While Defendant Oppenheimer met with Plaintiff as well, his final appointment "was abruptly canceled without explanation." Id.

Eventually, the state court entered a final divorce judgment that required Plaintiff to make payments to Defendant Harvey on a monthly basis. Id. at 14–15. Attorney's fees were also awarded against Plaintiff and in favor of Defendant Harvey. Id. at 15.

This was not the end of legal proceedings, however. A year after the final judgment was entered, the Amended Complaint says that the State "initiated" contempt proceedings "at the behest of" Defendant Harvey and her counsel to "enforce child-support obligations." Id. at 16. A few months later, another of Defendant Harvey's attorneys initiated separate contempt proceedings "seeking Plaintiff's incarceration to enforce attorney-fee awards." Id. Finally, in late 2024, Defendant Harvey pursued a criminal abandonment warrant against Plaintiff based on his failure to pay support obligations. Id. at 17. These enforcement proceedings all remain ongoing. Id. at 18.

Plaintiff initiated this action on August 19, 2025. [Doc. 1]. He brought claims against Defendants alleging that they violated his constitutional rights during the state court proceedings. Id. After Defendants filed motions to dismiss, Plaintiff filed an Amended Complaint on January 5, 2026. [Doc. 44]. Defendants filed new motions to dismiss in response. [Doc. 46]; [Doc. 47]; [Doc. 48]; [Doc. 49]. These motions are now ripe for review. Also ripe for review are Plaintiff's Motion for Recusal [Doc. 35], his Motions for Leave to Effect Alternative Service [Doc. 7]; [Doc. 21] and his Motions for Leave to File Electronically [Doc. 6]; [Doc. 8].

**DISCUSSION**

## I. Motion to Recuse

"Recusal is governed by two federal statutes, 28 U.S.C. §§ 144 and 455."

Johnson v. Monaco, 350 F. App'x 324, 327 (11th Cir. 2009).  The latter statute, 28

U.S.C. § 455(a), provides that recusal is required in "any proceeding in which [the

judge's] impartiality might reasonably be questioned."  Under this provision, "the

standard is whether an objective, fully informed lay observer would entertain

significant doubt about the judge's impartiality."  Regions Bank v. Legal

Outsource PA, 800 F. App'x 799, 800 (11th Cir. 2020) (quoting Christo v. Padgett,

223 F.3d 1324, 1333 (11th Cir. 2000)).  However, "[r]ecusal cannot be based on

'unsupported, irrational or highly tenuous speculation.'"  United States v. Cerceda,

188 F.3d 1291, 1293 (11th Cir. 1999) (quoting In re United States, 666 F.2d 690,

694 (1st Cir. 1981)).

Upon review of Plaintiff's motion, this Court finds that recusal is not

required in this case.  Plaintiff's first argument for recusal is that there is an

"appearance of institutional alignment" between the undersigned and Defendants.

[Doc. 35, p. 5].  Plaintiff contends that the Court's order denying his request for a

temporary restraining order ("TRO") treated Defendants "as though they were state

6

actors entitled to Eleventh Amendment-type protections"[1] and that application of abstention was inappropriate. Id. at 3, 5. These are simply arguments on the merits of his motion for TRO, however. An adverse ruling on the merits does not provide sufficient grounds for doubting a judge's impartiality. United States v. Berger, 375 F.3d 1223, 1227–28 (11th Cir. 2004). Recusal is thus not warranted on this ground.

Plaintiff next points to what he calls "docket irregularities"—an "unusual delay between the filing dates and docket appearance dates of multiple documents" that "contributes to an appearance of procedural irregularity." [Doc. 35, p. 6]. He appears to refer to the fact that a waiver of service and two returns of service were entered on the docket almost two weeks after Plaintiff submitted them to the Clerk's office. See [Doc. 25]; [Doc. 26]; [Doc. 27]. The Clerk's office can experience delays in docketing documents that are physically filed with their office, so this "irregularity" is not all that unusual. More importantly, the undersigned is not involved with the docketing process for such filings, so this delay has no bearing on whether an objective observer would doubt the undersigned's impartiality.

---

[1] This Court's Order denying Plaintiff's motion for TRO did not rely on Eleventh Amendment immunity. See [Doc. 5].

Plaintiff also argues that the undersigned previously presided in Similien v. The Walk at Legacy Condominium Association, Inc., No. 1:23-CV-00273 (N.D. Ga.), a case where Defendant Marbutt[2] was a party.  [Doc. 35, p. 7].  Plaintiff says that "the fact that this Court has previously adjudicated constitutional claims involving the same defendant contributes to the appearance of institutional familiarity or alignment."  Id.  Not so.  "[T]he judicial system could not function if judges could deal but once in their lifetime with a given defendant, or had to withdraw from a case whenever they had presided in a related or companion case or in a separate trial in the same case."  United States v. Cowden, 545 F.2d 257, 266 (1st Cir. 1976).  Accordingly, a party seeking recusal based on prior proceedings before a judge must show that "facts introduced or events occurring in the course of the . . . prior proceedings" have led the judge to form a "deep-seated favoritism or antagonism that would make fair judgment impossible."  Liteky v. United States, 510 U.S. 540, 555 (1994).  Plaintiff has shown nothing of the sort here.

There appear to be two other points that Plaintiff raises in support of recusal, though they are only briefly discussed in the motion's procedural background

---

[2] Plaintiff's Amended Complaint removed Defendant Marbutt as a party to this case.

section rather than under a separate heading like the first three arguments. First, Plaintiff takes issue with the fact that the Georgia Attorney General's Office represented certain individual-capacity defendants. He says that the Court's "early acceptance of this posture" was "inconsistent with the personal-capacity framing of Plaintiff's claims." [Doc. 35, p. 5]. It is not entirely clear what Plaintiff means by this. Had the claims against these defendants remained in the case, the Court would have analyzed them as personal capacity claims. The Court is not aware of any authority that supports the idea that which lawyer represents an individual can somehow alter the nature of the Plaintiff's claims. The second argument Plaintiff appears to raise is that a motion to dismiss was filed prematurely because it was filed before all Defendants had been served or waived service. Id. at 7. This argument for recusal makes little sense. The Court does not control what parties file or when they file it, and, in any event, the Court never ruled on this motion to dismiss. Moreover, a defendant can file a motion to dismiss before co-defendants are served, so the filing of this motion was in no way improper. See Holmes v. Reusch, No. 2:24-CV-01138, 2026 WL 867171, at *1 n.1 (D. Nev. Mar. 27, 2026).

For all these reasons, no fully informed observer would have significant doubt about the undersigned's impartiality in this case. Plaintiff's Motion to Recuse [Doc. 35] is therefore **DENIED**.

## II.  Procedural Motions

Plaintiff has filed two motions for leave to effect alternative service.  The first motion sought to serve Governor Brian Kemp, Attorney General Christopher Carr and the Georgia Department of Human Services ("DHS") by alternate means. [Doc. 7].  The second motion amended that request to seek leave for alternative service only as to DHS and Jeffrey M. Gore.  [Doc. 21].  Since filing that motion, however, Gore returned a waiver of service [Doc. 29], and Plaintiff's Amended Complaint then removed both Gore and DHS as defendants [Doc. 44].  With no need to serve these defendants, the Motions for Leave to Serve by Alternative Means [Doc. 7]; [Doc. 21] are **DENIED** as moot.

In addition to those motions, Plaintiff has twice requested leave to file electronically.  [Doc. 6]; [Doc. 8].  This District's Local Rules and procedures generally do not permit *pro se* litigants to file documents electronically.  See N.D. Ga. Loc. R. App'x H (Standing Order 19-01) at A7 ("A party proceeding *pro se* shall not file electronically unless the party is an attorney in good standing admitted to practice before this Court."); id. at 3 ("Pro se litigants who are not attorneys in good standing admitted to the Bar of this Court must file all documents with the Court in paper form.").  However, "in specific cases . . . if deemed appropriate in the exercise of discretion, considering the need for the just,

speedy, and inexpensive determination of matters pending before the court," a judge may deviate from the Court's established procedures.  Id. at A7.

The Eleventh Circuit Court of Appeals has consistently afforded great deference to a trial court's determination of whether a *pro se* litigant ought to be excepted from a court's relevant filing rules.  See, e.g., McMahon v. Cleveland Clinic Found. Police Dep't, 455 F. App'x 874, 878 (11th Cir. 2011) (upholding a district court's denial of a *pro se* plaintiff's request for electronic filing where the district court found "no good cause under the circumstances" to make an exception to the rule and noting that the appellate court reviews such decisions for abuse of discretion); McNiece v. Town of Yankeetown, 817 F. App'x 842, 845 (11th Cir. 2020) (upholding a magistrate judge's denial of a *pro se* plaintiff's request to file electronically where the plaintiff "had access to the district court through the mail" and "received and responded to its orders").

Here, Plaintiff argues that he understands the obligations of electronic filers and that he requests electronic filing access "as a reasonable accommodation under the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.) and applicable Judicial Conference policies."  [Doc. 6, p. 2]; [Doc. 8, p. 2].  He says that he "has documented neurodivergent and trauma-related disabilities" and that "access to CM/ECF will materially reduce cognitive and logistical barriers associated with

11

paper filing, mailing, and physical travel, and will ensure equal access to the Court's processes." [Doc. 6, p. 2]; [Doc. 8, p. 2].

The Court finds that electronic filing access is not warranted. "Plaintiff does not explain how electronically filing documents is necessary to accommodate his mental impairments, especially in light of his demonstrated ability to manually file a variety of pleadings, motions, and supporting documents throughout the course of this action." Fuller v. Holt, No. 7:18-CV-59, 2019 WL 1560433, at *1 (E.D.N.C. Apr. 10, 2019); see also Smith v. Cornerstone Residential Mgmt., LLC, No. CV 126-065, 2026 U.S. Dist. LEXIS 138042, at *2 (S.D. Ga. June 22, 2026) (finding unspecified disabilities insufficient to grant *pro se* litigant electronic filing access). Thus, Plaintiff's Motions [Doc. 6]; [Doc. 8] are **DENIED**.

## III. Motions to Dismiss

### A. Legal Standards

A party may challenge a court's subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Challenges to subject-matter jurisdiction under Rule 12(b)(1) take two forms. The first form is a facial attack, which questions subject-matter jurisdiction based on the allegations in the complaint alone. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003). "On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a

Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true." Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990). The second form is a factual attack, which contests jurisdiction "in fact, irrespective of the pleadings. In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits." Morrison, 323 F.3d at 924 n.5 (citation omitted). Here, Defendants assert a facial attack to the Court's subject-matter jurisdiction.

As to dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." Traylor v. P'ship Title Co., LLC, 491 F. App'x 988, 989 (11th Cir. 2012). Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although detailed factual allegations are not necessarily required, the pleading must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint is insufficient if it only tenders naked assertions devoid of further factual enhancement. Id. Importantly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id.

13

(citation omitted).  At bottom, the complaint must contain more than "an unadorned, the defendant-unlawfully-harmed-me accusation" and must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  While all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, a court need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations.  Id.

Accordingly, evaluation of a motion to dismiss under Rule 12(b)(6) requires two steps:  (1) a court must eliminate any allegations in the pleading that are merely legal conclusions, and (2) where there are remaining well-pleaded factual allegations, a court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Id. at 679.

**B.  Jurisdiction**

Before considering other arguments for dismissal, the Court must first consider whether it has subject-matter jurisdiction.  Defendants assert that the Rooker-Feldman doctrine is applicable here.  This doctrine provides that federal courts will not hear "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  Behr v. Campbell,

8 F.4th 1206, 1212 (11th Cir. 2021) (citation modified).  However, claims related to due process violations in state court proceedings, for example, can proceed in federal court even if such a claim "requires some reconsideration of a decision of a state court."  Id. (citation modified).

Most of Plaintiff's claims fall into this latter bucket.  While he certainly contends that actions taken by the state court were incorrect, his claims largely focus on violations of his constitutional rights during the proceedings rather than review of the superior court's judgment itself.  Two claims, however, are at least partially barred by the Rooker-Feldman doctrine.  In Counts VII and VIII of the Complaint, Plaintiff appears to request a declaration that state court orders entered against him are void and an injunction preventing enforcement of those orders.  This relief is squarely foreclosed by the Rooker-Feldman doctrine, to the extent they seek such relief, these counts are **DISMISSED**.

## C.  Immunity

Next, Defendants Oppenheimer and Daswani raise the defense of judicial immunity.  Though judicial immunity primarily protects judges from suit, "[n]onjudicial officials have absolute immunity for their duties that are integrally related to the judicial process."  Jenkins v. Clerk of Ct., U.S. Dist. Ct., S. Dist. of Fla., 150 F. App'x 988, 990 (11th Cir. 2005).  "Absolute immunity . . . protects

15

witnesses, court appointed psychologists, and guardians ad litem who are sued in their individual capacities under § 1983." Coleman v. Fla. Dep't of Child. & Fam. Servs., No. 14-61019-CIV, 2017 WL 11886003, at *13 (S.D. Fla. Aug. 16, 2017). Defendant Daswani was a court-appointed guardian ad litem, and Defendant Oppenheimer was a court-appointed psychologist. Based on the allegations in the Amended Complaint, both played integral roles in the judicial process and are thus entitled to absolute immunity.

In arguing otherwise, Plaintiff—without citing any authority—says that this immunity "does not extend to conduct taken outside the scope of neutral fact-finding or undertaken as part of a retaliatory or coercive scheme." [Doc. 53, p. 19]. To the extent Plaintiff is arguing that "[l]ike judges, these officials must be acting within the scope of their authority" to receive immunity, he is correct. Roland v. Phillips, 19 F.3d 552, 555 (11th Cir. 1994). Here, however, there is no allegation that either Defendant Daswani or Defendant Oppenheimer acted beyond the scope of their authority. The Amended Complaint alleges that these Defendants interviewed Plaintiff and communicated with each other, with the Court and with other involved parties—including at meetings where Plaintiff's then-counsel was present. All of these activities would be within the scope of these Defendants' responsibilities as a guardian ad litem and court-appointed

16

psychologist.  Thus, Defendants Daswani and Oppenheimer are immune from any suit based on these actions, and the claims against them are hereby **DISMISSED.**

### D.  Failure to State a Claim

Plaintiff brings claims under 42 U.S.C. § 1983 for violations of his First Amendment, Fourth Amendment and Fourteenth Amendment rights.  To state a claim under § 1983, "a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law and (2) such deprivation occurred under color of state law."  Andre v. Clayton Cnty., 148 F.4th 1282, 1291 (11th Cir. 2025) (citation modified).  The "under color of state law" requirement means that "§ 1983 only provides for claims to redress State action." Rayburn ex rel. Rayburn v. Hogue, 241 F.3d 1341, 1347 (11th Cir. 2001).  "Should [the district court] conclude that there is no State action, [it] must dismiss the [plaintiff's] claim . . . ."  Id.

There is no real dispute that the remaining Defendants—Plaintiff's ex-wife, her lawyers and their law firm—are private actors.  See [Doc. 53, p. 13].  This is not the end of the inquiry, however, because private actors may be deemed to have acted under color of state law, though "[o]nly in rare circumstances."  Rayburn, 241 F.3d at 1347.  Courts employ three distinct tests for determining whether a private party acted under color of state law:  (1) the public function test, "where

17

private actors are performing functions traditionally the exclusive prerogative of the state"; (2) the state compulsion test, which applies to situations "where the government has coerced or at least significantly encouraged the action alleged to violate the Constitution"; and (3) the nexus/joint action test, "where the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1277 (11th Cir. 2003).

Plaintiff's arguments fall under this third test. He says that there was "joint participation" between Defendants and "state authority" such that Defendants became state actors. [Doc. 53, p. 14]. He contends that Defendants were not "merely . . . participating in litigation." Id. at 15. Instead, he views Defendants' actions as a use of "state power as an instrument of coercion and retaliation." Id.

Despite this strong language, the Amended Complaint's allegations do not show anything more than the remaining Defendants acting in the court system to further Defendant Harvey's legal interests. Plaintiff clearly disagrees with the outcome of those proceedings and the follow-on proceedings related to attorney's fees, contempt and a criminal abandonment warrant. But "merely resorting to the courts and being on the winning side of a lawsuit does not make" a private party a state actor. Dennis v. Sparks, 449 U.S. 24, 28 (1980). For the "joint action" theory

of state action to work in this context, a Plaintiff would have to allege that "an official act of the defendant judge was the product of a conspiracy involving bribery of the judge." Id.  The Amended Complaint does not allege anything like that.  See Bulger v. Pike Rd. Invs. LLC, No. 2:22-CV-318, 2023 WL 5807008, at *2–3 (M.D. Ala. Sep. 7, 2023).  Ultimately, the fact that Plaintiff "is not happy to be on the losing side of a lawsuit does not mean the judge and opposing parties conspired" against him.  Clark v. LC Halsten LLC, No. 23-12499, 2026 WL 1004818, at *4 (11th Cir. Apr. 14, 2026).  Thus, absent specific allegations showing a corrupt conspiracy with the presiding judge, Plaintiff has failed to plausibly allege that Defendants were state actors.  The remaining claims are therefore **DISMISSED**.

### E.  Leave to Amend

Federal courts are generally required to grant a *pro se* plaintiff an opportunity to amend a pleading before dismissing a case with prejudice "where a more carefully drafted complaint might state a claim."  Woodroffe v. Fla. Dep't of Fin. Servs., 774 F. App'x 553, 554 (11th Cir. 2019).  A court need not grant leave to amend, however, where amendment would be futile.  Watkins v. Hudson, 560 F. App'x 908, 911 (11th Cir. 2014).  "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed . . . ."  Cockrell v. Sparks,

19

510 F.3d 1307, 1310 (11th Cir. 2007).  Importantly, "the question is whether the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief."  Jones v. Lamar Co., No. 24-12949, 2026 WL 573650, at *3 (11th Cir. Mar. 2, 2026) (citation modified).  Put another way, a district court may find amendment to be futile if relief "is belied by the facts alleged in [the] complaint."  Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1248 (11th Cir. 2015); see also, e.g., L.S. ex rel. Hernandez v. Peterson, 982 F.3d 1323, 1332–33 (11th Cir. 2020).

Here, the Court concludes that any amendment would be futile.  Plaintiff has already amended his complaint once in response to motions to dismiss his original complaint.  Those motions raised the argument that no Defendant acted under color of state law, and the Amended Complaint still lacks sufficient allegations to establish state action.  See [Doc. 37]; [Doc. 40].  Given this prior amendment and the underlying circumstances of the case, it does not appear that another opportunity to amend would enable Plaintiff to allege facts that show Defendants were state actors.  Thus, amendment would be futile.  See Shuler v. Duke, 792 F. App'x 697, 701 n.1 (11th Cir. 2019) ("Because Plaintiffs had already amended their complaint once and because nothing indicated that a more carefully drafted complaint would have stated a claim, the district court abused no discretion in

dismissing Plaintiffs' complaint without first <u>sua sponte</u> granting Plaintiffs leave to amend."); <u>Wills v. Ally Fin. Inc.</u>, No. 6:23-CV-1354, 2024 WL 1380628, at *2 (M.D. Fla. Mar. 13, 2024) (declining to grant leave to amend where plaintiffs "already had the opportunity to cure any defects in their complaint and have already filed an amended complaint" and it did "not appear that a more carefully drafted complaint might state a claim upon which relief can be granted"), R&R adopted by 2024 WL 1376029 (M.D. Fla. Apr. 1, 2024).  Because amendment would be futile, the Court will not grant Plaintiff any further leave to amend.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Recusal [Doc. 35] is **DENIED**.  Plaintiff's Motions for Leave to File Electronically [Doc. 6]; [Doc. 8] are also **DENIED**, and his Motions for Leave to Effect Alternative Service [Doc. 7]; [Doc. 21] are **DENIED** as moot.  Defendants' Motions to Dismiss [Doc. 46]; [Doc. 47]; [Doc. 48]; [Doc. 49] are **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.  The Clerk is **DIRECTED** to close the case.

SO ORDERED this 24th day of July, 2026.

J. P. BOULEE
United States District Judge