UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

SEP 14 2026

KEVIN P. WEIMER, Clerk
By: Gw Deputy Clerk

MATTHEW THOMAS HARVEY,
Plaintiff,

v.

CLAIRE M. HARVEY, et al.,
Defendants.

CIVIL ACTION NO.
1:25-cv-04688-JPB

**PLAINTIFF'S MOTION FOR LEAVE TO SUPPLEMENT PENDING RULE 59(e) MOTION AND FEE OPPOSITION WITH DECLARATION**

Plaintiff Matthew Thomas Harvey requests leave to supplement Documents 77 and 76 with the accompanying declaration, including direct excerpts from an email he personally received from a Cobb-area attorney. That attorney expressly linked otherwise difficult family-court relief to personal connections with the judge and described courts looking away from child-support leverage. Plaintiff asks the Court to consider that assessment alongside the specific financial, access, and evaluator–GAL facts below. His theory distinguishes the alleged financial objective from the discrediting methods and judicial reliance that allegedly enabled it. No source exhibit, case matrix, complete private email, or identity list is attached; selected email passages are quoted in the motion and declaration.

## I. SCOPE, TIMING, AND INDEPENDENCE OF THE EXISTING SUBMISSIONS

Document 77 principally alleges manifest legal error and mistaken futility. This motion does not replace it, amend the complaint, or add parties. The explanation of motive clarifies the asserted significance of existing conduct and later comparisons; it supplies neither a new stand-alone claim nor a substitute for grounds to reopen the judgment. The consolidated reply addressing Documents 78–82 is complete independently of this request and should be considered whether or not leave is granted.

The declaration separates later parent contacts and comparison materials from an attorney communication received before Document 77 was completed and from records of Plaintiff's own proceedings. The latter are not newly discovered merely because they are now organized differently. Public Koura filings were obtained in early September. Recent receipt alone is not proof of prior unavailability or satisfaction of Rule 59(e). Decl. ¶¶ 2–4, 39, 43–47.

A district court has discretion to permit supplementation of a timely post-judgment motion before deciding it. Dresdner Bank AG v. M/V Olympia Voyager, 465 F.3d 1267, 1271–72 (11th Cir. 2006). Whether Document 77 was timely delivered remains the subject of Plaintiff's separate filing-date request. This motion assumes no favorable resolution of that issue, seeks no

enlargement of Rule 59(e)'s filing period, and does not restart any appellate deadline. The restrictions on reargument and previously available evidence remain applicable. Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007).

## II. THE ATTORNEY'S EMAIL LINKS PERSONAL CONNECTIONS TO FAMILY-COURT RELIEF AND JUDICIAL INACTION

The August 12, 2026 email responded to Plaintiff's questions about grandparent access and whether visitation could be withheld over unpaid child support. In discussing the two grandparent-access statutes, the attorney wrote:

> "In the end, the analysis is very similar and under either statute, it is very difficult for grandparents to obtain rights under either statute absent some back door connection to the judge."

After describing relief as generally unlikely when a mother creates what he called a toxic situation, the attorney identified this exception:

> "One exception to that is if you hire an attorney who knows the judge personally then the Judge will likely give you whatever you want--yes that is how things really work in Georgia."

The attorney then described it as wrong to use child support as leverage at the child's expense and stated:

> "Courts usually look away knowing that a mother will often times only escalate the circumstances and removing a mother's custody is simply not an option the Court will entertain (unless you hire an attorney who knows the judge)."

These are excerpts from the email Plaintiff personally received and reviewed. Decl. ¶¶ 39–40. Elsewhere in the same response, the attorney distinguished visitation granted by an existing order from access for which no order grants a right. Plaintiff supplies that context; he does not offer the email as a ruling on visitation law or a judicial finding about any participant.

The relevance is specific: this was not merely advice to hire someone familiar with local procedure. The attorney described a personal connection as a route to otherwise unlikely relief and judicial inaction in the face of alleged financial pressure. Plaintiff asks the Court to consider that assessment with his record of fees, barriers to reviewing professional work, and court-backed restrictions, and with the evaluator–GAL sequences below. The email identifies the relationship-and-deference concern behind his present inquiry; the financial-motive inference still rests on the conduct and financial facts described in Section III, not on an assertion that the attorney admitted a fee-

sharing scheme. The attorney is not a Defendant, and the email does not itself establish an agreement among Defendants or the reason for any particular ruling.

## III. ALLEGED OBJECTIVE, MEANS, AND JUDICIAL ENABLEMENT

Plaintiff's theory is that obtaining and protecting fees and continued paid involvement supplied an underlying objective; selective characterizations of religion, sex, disability, attachment, or protective conduct supplied the means of discrediting a parent; and insufficient judicial scrutiny enabled those characterizations to support enforceable restrictions. This is not a concession that discriminatory or retaliatory conduct was unintentional. It distinguishes the alleged tools from the benefit allegedly sought. Decl. ¶¶ 5–12, 23–31, 41–42.

The alleged sequence is: adverse characterizations justify restrictions; restrictions require further services, compliance, or litigation; and attempts to test the original basis encounter additional cost or access barriers. Treating resistance as further pathology or noncompliance can preserve the characterization and paid involvement. The common question is whether professional authority and payment were protected more readily than the parent's opportunity to challenge the factual basis. The comparisons do not establish every link in every matter.

Plaintiff's record identifies concrete financial interests: $12,256.24 paid to Oppenheimer and an additional $8,000 report retainer requested. [Doc. 75-1 at 2; Doc. 76, Ex. C-2]. Daswani later requested judicial enforcement of remaining fees, including forthcoming billing; the court directed payment within sixty days and permitted recourse to home-sale escrow. May 13 Tr. 130–31; Decl. ¶¶ 43, 45. These facts establish charges and enforcement requests—not that fees were unearned or an opinion purchased.

Judge Brown denied access to the GAL file, pointing instead to questioning the GAL and her sources through counsel while acknowledging the resulting attorney charges. Apr. 25 Tr. 13–15. The later ruling adopted the mother's safety plan, required continuing treatment and testing, placed testing costs on Plaintiff, and directed opposing counsel to prepare the order. May 13 Tr. 101–04, 128. Plaintiff questions the scrutiny and procedural access, not authorship alone: the court also gave oral reasons, denied certain fee requests, and instructed counsel to confer. Decl. ¶¶ 44–46.

The proposed financial objective for fee-earning participants is separate from the alleged judicial enabling conditions: overreliance, expediency, or inadequate scrutiny. No judicial fee-sharing or kickback arrangement is alleged at this time. The attorney's statements in Section II provide context for examining relationships and deference; they do not establish personal judicial compensation or a shared unlawful purpose.

Plaintiff does not allege that the same financial arrangement operated in every matter or that every participant shared the same objective. Parent A reportedly received a refund, and the GALs in Parent B's and Koura's accounts reportedly disagreed with continued supervision. Those differences require participant-specific analysis; they do not, standing alone, establish or negate the alleged financial objective. Plaintiff's inference concerns whether particular participants used adverse characterizations, restrictions, and barriers to scrutiny to obtain or protect fees or continued paid involvement. The inference must be evaluated against each participant's conduct, knowledge, and financial interest, rather than assumed from payment or an unfavorable outcome alone. Decl. ¶¶ 21, 29–30, 33, 36, 41–47.

## IV. THE CASE COMPARISONS IDENTIFY THE ALLEGED MEANS AND THEIR USE

The following comparisons supply the factual detail behind that theory. They concern parent disclosures becoming adverse interpretations, the interpretations being transmitted or adopted by GALs and counsel, and access to the underlying evidence. "Protective parent" describes the reporting or care-seeking conduct at issue; it is not offered as a newly recognized protected class or as a finding that every report was correct. Different referral tasks, different GALs, and instances of GAL disagreement remain material. Plaintiff does not allege that Daswani participated in each matter.

### A. The enmeshment comparison: an evaluator's interpretation became a GAL's framework

In Plaintiff's case, Oppenheimer described him as "fused and meshed" with his child after he discussed their shared autism-spectrum traits and his fears about the child's safety. Her testimony also recounted statements concerning whether he could go on living if something happened to the child; the context is not reduced to an isolated adjective. Oppenheimer disclaimed a custody or parental-fitness assignment and left parenting inferences to the GAL and court. Apr. 25, 2022 Tr. 112–13, 126; Decl. ¶¶ 5–8.

The May 4 record supplies a concrete link: Daswani called Plaintiff's "over-identification" disturbing and described his messages as reading like suicide notes through the psychological evaluation's lens. Thus, the evaluator's interpretation did not remain an abstract clinical observation; the GAL used it to assess Plaintiff's communications and discuss safety restrictions. Daswani also referenced other therapists and uncertainty about future harm, so Plaintiff does not treat Oppenheimer as the sole source or the record as proof of every alleged private contact. May 4, 2022 Tr. 50–51 [also Doc. 76, Ex. A-3]; Decl. ¶¶ 7–8.

The Parent B materials identify the closely related "enmeshed" characterization in opposing counsel's closing, attributed there to Oppenheimer, and GAL testimony relaying delusional-or-dependent

impressions while stating that the evaluator had no diagnosis she could provide. These are different speakers and different source chains. The overlap is the relationship-based explanation used against a parent; the open question is its factual foundation and how it became court-facing advocacy. No identical enmeshment label is attributed to Parent A or Koura. Decl. ¶¶ 23–25.

**B. Parent A: markedly different assessments and a GAL's proposed litigation use**

The revised materials describe a multi-month, multi-method evaluation and written summary for the father, compared with one maternal session, no testing or child observation, and no maternal report before severe impressions reached the same GAL. Although the referral tasks differed, the father's summary reportedly declined parenting recommendations without meeting the other parent or children, while the later GAL note attributed serious parenting-incapacity conclusions to Oppenheimer without a child meeting. That is a specific within-case comparison, not an assumption that every referral requires identical methods. Decl. ¶¶ 13–14.

The hearing record attributes to Oppenheimer, through the GAL's notes, personality and delusional-disorder impressions, inability to rule out "psychopath," dismissive descriptions of the mother's abuse account and tears, and recommendations concerning medication and psychiatric evaluation. The note also contemplated a summary for a motion; the GAL explained that it did

not materialize after the proposed motion changed. The declaration identifies this recorded sequence separately from an uncorroborated appointment-day call alleged in an agency complaint. Decl. ¶¶ 15–18.

The declaration further describes withdrawal, differing explanations for it, a reported refund, the promised records transfer, and later demands for a court order to release the file. The question is what clinical limits were communicated, what the GAL relied on, and whether subsequent decision-makers could test the earlier impressions against a completed assessment. Consultation, withdrawal, or referral is not treated as wrongful by itself. Decl. ¶¶ 19–22.

**C. Parent B: care-seeking and contrary evidence reframed through the GAL and counsel**

The Parent B materials describe testing set aside as uninformative, adverse impressions relayed by the GAL, and no evaluator testimony or furnished report explaining them. They attribute to Oppenheimer, through the GAL, descriptions of prescribed treatment and inpatient care as "criminal" and of the mother as doctor-shopping. The reported gaps concern consultation with treating clinicians before those statements, not an assertion that no school or other professional contact occurred. Decl. ¶¶ 24–26.

Parent B's submitted diagnosis information, concern summaries, third-party factual material, and organized documentation are described as received;

Oppenheimer reportedly promised both to forward the concerns to the GAL and independently investigate. The held comparison materials do not show how the contrary material was addressed in the GAL's account. They also describe child observations under different custody circumstances and a GAL statement that continued supervision was unnecessary despite reported continuing restrictions. The particular concern is whether seeking care and reporting problems became reasons to discredit the parent without resolving the underlying evidence. Decl. ¶¶ 27–29.

The records-request dispute includes a subpoena demand, an invoice, and contested fee allocation. The summarized order made a report conditional on request and retainer replenishment and may limit file review until a report exists; missing production is not described as breach of an unconditional command. Opposing counsel's billing material and additional enmeshment language identify possible communication records, not proof by themselves of an improper private conference. Decl. ¶¶ 30–31.

**D. Koura: allegations that reporting abuse became evidence against the reporting parent**

In Koura v. Oppenheimer, DeKalb County Superior Court No. 24-CV-1900, the amended complaint alleges ignored abuse witnesses and contrary psychological evidence. Paragraph 19 specifically alleges that child-protection reports by doctors and teachers, as well as the mother, were characterized

collectively as a problem with the mother's relationship with the children. Other allegations concern the "pathological liar" label without an example, a disputed occult-account attribution, and refused corrections. These are identified allegations, not adjudicated facts. Am. Compl. ¶¶ 10–16, 19–20, 24–25, 27, 30 (filed Aug. 26, 2024); Decl. ¶¶ 34–35.

Koura also alleges continued supervision recommendations despite deterioration acknowledged in the evaluator's own later report and contrary expert evidence. Her pleading attributes to the GAL the view that supervision worsened the situation. It describes two written reports and live testimony, not the no-report/no-testimony route of Parents A and B. Koura therefore adds specific alleged omissions and persistence of restrictions, not proof that her GAL joined an unlawful agreement. The February 14, 2025 dismissal addressed the expert-affidavit pleading requirement, expressly not the asserted immunity issue. Am. Compl. ¶¶ 9, 16–17, 22–23, 27; Koura, Order at 1 n.1; Decl. ¶¶ 33–38.

### E. Discrediting language can preserve restrictions and impede scrutiny

Plaintiff's record adds disputes over the relayed choking allegation, his contrary restraint testimony, supplied homicide-suicide messages, reliance on Adkins's notes without interviewing her, and unexamined religious context. Viewed with the financial and access facts, the concern is not simply an

offensive adjective or an unfavorable opinion. It is that a characterization could discredit the person seeking review, support continued restrictions, and leave that person bearing further cost to challenge an explanation never fully supplied. That is the alleged mechanism; the further inference that participants used it for financial gain remains to be tested. Decl. ¶¶ 9–12, 41–47.

## V. MOTIVE DOES NOT REPLACE THE FUNCTION-SPECIFIC AND JOINT-ACTION REQUIREMENTS

Plaintiff's own case remains the necessary anchor. The existing proffer addresses confidential material, GAL and evaluator communications, criminal-investigation routing, and liberty-related conditions. [Doc. 77, Exs. A, C, D, J; Doc. 44 ¶¶ 31–48]. The additional descriptions sharpen the questions: who originated a characterization, what information its recipient possessed, what limits accompanied it, how it was used, and whether any participant performed an independently actionable function rather than merely providing protected testimony or a recommendation.

The protected function, rather than a title alone, controls the immunity inquiry. Forrester v. White, 484 U.S. 219, 227–29 (1988); Roland v. Phillips, 19 F.3d 552, 555 (11th Cir. 1994). Testimony, recommendations within a protected role, and protected preparation do not lose immunity merely because they are disputed, financially self-interested, or preceded trial. Rehberg v.

Paulk, 566 U.S. 356, 369–70 & n.1 (2012). Plaintiff must identify any independently actionable conduct, not relabel protected testimony as a conspiracy.

Ordinary professional communication, fee collection, similar outcomes, and official inattention do not establish a constitutional conspiracy. Dennis v. Sparks, 449 U.S. 24, 27–28 (1980), distinguishes merely using the courts from willful joint participation in challenged state action. The new comparison supplements—not replaces—the specific participation alleged in Document 77. A judge's uncritical reliance may help explain causation, but without more it does not establish agreement with a private actor's unlawful objective. Plaintiff seeks a more particularized pleading and, only if the action is properly reopened, appropriate discovery.

A financial objective does not negate intentional discriminatory means. Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 265–66 (1977), rejects a sole-or-dominant-purpose requirement for racial discrimination under equal protection. Plaintiff preserves his existing characteristic-based allegations and their applicable elements; he does not assume that this comparison proves intent or that identical standards govern all his theories.

Official carelessness causing unintended injury is distinct from a deliberate deprivation without required procedures. Daniels v. Williams, 474

U.S. 327, 328, 330–31, 334 (1986). Plaintiff challenges deliberate restrictions, alleged denials of meaningful process, and identified participation—not merely negligence. Describing an enabling condition as apathy does not eliminate the elements of a constitutional violation or an immunity defense.

Counsel-prepared findings remain the court's findings; authorship alone does not establish deficient adjudication. Anderson v. City of Bessemer City, 470 U.S. 564, 572–73 (1985). Plaintiff challenges the identified process and reliance on professional assertions, not a judge's failure personally to type an order. He does not represent that proposed and signed orders have been compared here.

## VI. DECLARATION-ONLY PRESENTATION AND LIMITED EVIDENTIARY USE

The declaration establishes Plaintiff's receipt and review of information and the sources for his present request. It identifies the revised summaries as summaries, not independent witnesses or substitutes for unreviewed originals. Knowledge that someone made a statement is distinct from knowledge that the underlying event occurred. Fed. R. Evid. 602, 801, 805. The Court is not asked to disregard Rules 1002–1004 when proof of a writing's contents is necessary.

No source exhibit or unredacted identity list is tendered, either publicly or privately to the Court. Plaintiff requests the separate privacy procedure before identifying disclosure. If a proposition requires underlying material for

authentication, admissibility, or a fair response, the Court may require it through an appropriate procedure or decline to rely on it. The declaration identifies sources and Plaintiff's expressly labeled inference; it is not an expert opinion, personal knowledge of another person's unexpressed motive, proof by propensity, or a claim to permanent secrecy.

## VII. THE FEE ISSUE HAS A SEPARATE, LIMITED PURPOSE

Documents 76 and 77 remain the basis for the earlier arguments. Material learned afterward cannot retroactively establish a reasonable prefiling inquiry. Baker v. Alderman, 158 F.3d 516, 524 (11th Cir. 1998); Peer v. Lewis, 606 F.3d 1306, 1311 (11th Cir. 2010). The declaration instead explains the specific sources behind Plaintiff's current, narrowed request for review and answers the suggestion that continued inquiry is necessarily fabricated or undertaken only to harass. It does not eliminate any independent defect in the claims.

## RELIEF REQUESTED

Plaintiff requests leave to submit the accompanying declaration for the limited purposes described, and to submit the separately tendered proposed supplemental fee response. He requests that Defendants receive an opportunity to respond; that the Court address the proposed privacy procedure before requiring identifying source material; and that the existing submissions be considered independently if supplementation is denied. He does not request

that absent source exhibits be deemed filed, that any allegation be accepted as an adjudicated fact, or that this procedural motion itself vacate the judgment.

Respectfully submitted this 9th day of September, 2026.

*/s/ Matthew Thomas Harvey*
**Matthew Thomas Harvey**
Plaintiff, pro se

c/o 501 North Slappey Boulevard #1112
Albany, Georgia 31701
Mharvey7744@gmail.com
(912) 346-5299